Brian M. Rothschild, USB #15316
Grace S. Pusavat, USB #15713
Michael R. Brown, USB #16007
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone:  801.532.1234
Facsimile:  801.536.6111
BRothschild@parsonsbehle.com
GPusavat@parsonsbehle.com
MBrown@parsonsbehle.com
ecf@parsonsbehle.com

*Proposed Attorneys for Sugarloaf Holdings*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>SUGARLOAF HOLDINGS, LLC.<br><br>Debtor. | Case No. 18-bk-27705<br><br>Chapter 11<br><br>Judge Kevin R. Anderson |

## DEBTOR'S APPLICATION FOR INTERIM AND FINAL ORDERS AUTHORIZING THE EMPLOYMENT AND RETENTION OF PARSONS BEHLE & LATIMER AS ATTORNEYS FOR THE DEBTOR AND FOR APPROVAL OF COMPENSATION PROCEDURES

Sugarloaf Holdings LLC, debtor and debtor-in-possession (the "**Debtor**" or "**Sugarloaf**")

in the above-captioned Chapter 11 case respectfully represents and sets forth as follows:

## I.
## SUMMARY OF RELIEF REQUESTED

1.      By this application (the "**Application**"), the Debtor requests entry of interim and

final orders, substantially in the form attached hereto as Exhibit A and Exhibit B, respectively,

under sections 327(a) and 328(a) of title 11 of the United States Code (the "**Bankruptcy Code**"),

authorizing the Debtor to employ and retain Parsons Behle & Latimer ("**Parsons Behle**" or the "**Firm**") as attorneys in the Debtor's chapter 11 case (this "**Case**").

2.      The statutory predicates for the relief sought herein are sections 105, 327(a), and 328(a) of the Bankruptcy Code and Rules 2004, 6003, and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## II.
## JURISDICTION

3.      This Court has jurisdiction to consider the relief requested in this Application under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b) and venue is proper in the District of Utah under 28 U.S.C. §§ 1408 and 1409.

## III.
## RELEVANT BACKGROUND

A.      **General**.

4.      On the date hereof (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under the Bankruptcy Code.  The Debtor continues in possession of its properties and is operating and managing its businesses as a debtor in possession under sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or examiner and a creditors' committee has not yet been appointed in this Case.

5.      The Debtor is a diversified and technologically advanced farming and ranching operation headquartered in Lehi, Utah with primary Debtor's farming and ranching operations are in the Millard County, Utah.  The Debtor's farming operations produce legumes, short grains, and animal feed.  Its ranching operations raise and sell beef cattle for market.  The Debtor is not highly leveraged, and has substantial and valuable real estate and equipment holdings.  The Debtor filed this chapter 11 Case primarily because of a complex and costly multi-party lawsuit relating to a single water right and aggressive adverse actions taken by the Debtor's primary secured creditor,

Bank of the West, on the ostensible basis that it felt its collateral is imperiled. The Debtor requires the breathing spell of the automatic stay to reorganize its operations, resolve the lawsuit, and pay its creditors.

6.      Further detail regarding the Debtor's businesses, operations, financial condition, and the facts and circumstances of this Case are found in The Declaration of David J. Gray in Support of the Debtor's Chapter 11 Petition and Requests for First-Day Relief (the "**First Day Declaration**"), and the Declaration of David J. Gray in Support of this Application (the "**Gray Declaration**"), which are incorporated herein in their entirety by this reference.

## IV.
## ARGUMENTS & AUTHORITIES

**A.      Retention of Parsons Behle.**

7.      The Debtor seeks authority under section sections 327(a) and 328(a) of the Bankruptcy Code to employ and retain Parsons Behle as attorneys in connection with its Case in accordance with the engagement agreement attached as Exhibit C hereto (the "**Engagement Agreement**"), which provides that Parsons Behle will perform the following services, among others as set forth in the Engagement Agreement (collectively, the "**Services**").[1]

    a.      advise the Debtor and take all necessary or appropriate actions at the Debtor's direction with respect to protecting and preserving the Debtor's estate, including the defense of any actions commenced against the Debtor, the negotiation of disputes in which the Debtor is involved, and the preparation of objections to claims filed against the Debtor's estate;

---

[1] To the extent of any conflict between this summary of the Engagement Agreement and the Engagement Agreement, the Engagement Agreement shall control.

3

b.      draft and develop all necessary or appropriate motions, applications, answers, orders, reports, and other papers in connection with the administration of the Debtor's estate on behalf of the Debtor, as debtor in possession;

c.      take all necessary or appropriate actions in connection with a plan of reorganization and related disclosure statement(s) and all related documents, and such further actions as may be required in connection with the administration of the Debtor's estate;

d.      take all necessary or appropriate actions in connection with the reorganization of the Debtor and its operations and all related actions and preparing such documentation as is necessary to accomplish the reorganization of the Debtor; and

e.      perform and advise the Debtor as to all other necessary legal services in connection with the prosecution of the Debtor's Case.

8.      Because of the extensive legal services required in this Case, the Debtor believes that the employment of Parsons Behle to provide the services described above and such other services as may be necessary for the Debtor is appropriate and in the best interests of the Debtor, the Debtor's estate, and its stakeholders.

9.      It is necessary for the Debtor to employ attorneys under the terms set forth in the Engagement Agreement to render the foregoing professional services.  Parsons Behle has stated its desire and willingness to act in this case and render the necessary professional services as attorneys for the Debtor.

**B.      Parsons Behle's Qualifications.**

10.      The Debtor selected Parsons Behle for its sophisticated chapter 11 bankruptcy practice and considerable experience before the Bankruptcy Court for the District of Utah. After

4820-5330-1875v2

careful consideration, the Debtor selected Parsons Behle as an appropriate professional to employ in this situation.  (Gray Decl. ¶ 4.)

11.     Founded in 1882, Parsons Behle is a regional law firm of approximately 155 attorneys in seven offices in Utah, Idaho, Nevada, and Washington, D.C.  Parsons Behle is a general services firm with practices ranging from commercial litigation, intellectual property, environmental compliance, real estate, corporate, financial transactions, and reorganization and bankruptcy matters.  The attorneys in Parsons Behle's Bankruptcy and Chapter 11 Practice Group have extensive experience in representing debtors, trustees, creditors, committees of various constituencies, asset purchasers, and investors in both in- and out-of-court restructurings around the nation.  Parsons Behle's attorneys have represented debtors and creditors in numerous bankruptcy cases nationwide in a wide range of industries.  (Rothschild Decl. ¶ 4.)

12.     Parsons Behle's attorneys who will work on this matter are also well-qualified. Brian M. Rothschild is a shareholder in the Litigation and Bankruptcy Practice Groups.  Mr. Rothschild is a graduate of the University of Utah and earned his law degree at the University of Southern California Gould School of Law (Order of the Coif).  Prior to joining Parsons Behle in 2014, Brian was an associate in the Financial Restructuring group in the international AmLaw 100 firm Akin Gump Strauss Hauer & Feld LLP in Los Angeles, California, and also an associate at the highly respected bankruptcy boutique Peitzman Weg LLP in Los Angeles, California.  Mr. Rothschild has represented chapter 11 debtors, official and ad hoc committees of creditors and equity holders, and other parties in interest in chapter 11 proceedings in bankruptcy courts across the country.  (*Id.* ¶ 5.)

13.     Grace S. Pusavat is an associate in Parsons Behle's Litigation and Bankruptcy Practice Groups.  Ms. Pusavat is a 2015 graduate of the J. Reuben Clark Law School at Brigham Young University.  (*Id.* ¶ 6.)

4820-5330-1875v2

14.     Michael R. Brown is an associate in Parsons Behle's Litigation and Bankruptcy Practice Groups.  Mr. Brown is a 2016 graduate of the S.J. Quinney College of Law at the University of Utah. Prior to joining Parsons Behle, Mr. Brown served as law clerk to the Honorable Joel T. Marker, United States Bankruptcy Judge for the District of Utah.  (*Id.* ¶ 7.)

C.     **Disinterestedness of Parsons Behle Under Bankruptcy Rule 2014**.

15.     Parsons Behle gathered the names of the Debtor's known creditors, third party contractors, utilities, and all other persons on the Debtor's mailing matrix.  Parsons Behle caused the names of all of the foregoing to be run through its computerized conflict check system, and to be distributed by email to all attorneys at the firm for a standard conflict check.  (*Id.* ¶ 8.)

16.     For all "hits," Parsons Behle conducted additional research to determine the nature of the connection or representation involving such persons.  Parsons Behle determined that it has no connections with any of the foregoing parties except as follows:

| Person/Entity | Connection to Sugarloaf | Connection to Parsons Behle |
|---|---|---|
| Utah Department of Transportation | Adverse Party in Water Right Litigation | Parsons Behle does unrelated work for Utah Department of Transportation (UDOT) in the areas of eminent domain, permitting, and real estate<br>Parsons Behle received a written waiver from UDOT and Sugarloaf to represent Sugarloaf in the chapter 11 case |
| Flowell Electric Association, Inc | Utility, creditor, and debtor (holds deposit) | Parsons Behle represents Intermountain Power Agency (IPA) in various unrelated matters.  IPA sits on electrical cooperative boards that include Flowell. |

(*Id.* ¶ 9.)

17.     Based upon this procedure and other information obtained, neither Parsons Behle, its attorneys, provided services to the Debtor prior to providing services in connection with the

6

preparation and filing of the Debtor's chapter 11 case.  Parsons Behle does not represent any employee, officer, or owner of the Debtor, including any member, officer, or manager of the Debtor.  (*Id.* ¶ 10.)

18.     On approximately October 1, 2018, the Debtor contacted Parsons Behle to seek advice regarding a possible chapter 11 bankruptcy.  On October 1, 2018, Sugarloaf hired Parsons Behle to prepare its chapter 11 case for filing, and wired a payment of $35,000.00 to Parsons Behle, which, under the Engagement Agreement, is Parsons Behle's flat fee for preparing and filing the Case.  Since that time, Parsons Behle's attorneys, paralegals, and other professionals have diligently prepared the filings for this Case and advised the client on related issues.  (*Id.* ¶ 11.)

19.     As of the Petition Date, neither Parsons Behle nor any of its attorneys have a prepetition claim against the Debtor.  (*Id.*)

20.     The Debtor and Parsons Behle signed the Engagement Letter (attached as <u>Exhibit C</u> hereto) for services prior to and during the Case, subject to Court approval of this Application for post-petition services.  (*Id.* ¶ 12.)

21.     Neither Parsons Behle nor any of its attorneys have an interest materially adverse to the Debtor, and Parsons Behle is a disinterested person within the meaning of 11 U.S.C. § 101.  Neither Parsons Behle nor any shareholders or associates thereof, insofar as it is possible to ascertain using the methods described herein and in the Rothschild Declaration, have any connection with parties in interest with respect to the Debtor, except as described above. (*Id.* ¶ 13.)

22.     Parsons Behle will continue to monitor the Firm's connections with parties in interest and its disinterestedness.  If and when any other connections or issues pertaining to disinterestedness come to my attention, the Firm will promptly supplement its declaration as required by Bankruptcy Rule 2014.  (*Id.* ¶ 14.)

4820-5330-1875v2

23.     The Firm will continue to monitor its connections with parties in interest as the Case progresses.  If and when any other connections or issues pertaining to disinterestedness come to the Firm's attention, Parsons Behle will promptly supplement its disclosures as required by Bankruptcy Rule 2014.  (*Id.*)

**D.      Compensation and Compensation Procedures**

24.     In the Engagement Agreement, for post-petition date work, the Debtor agrees to retain the Firm, and the Firm agrees to provide services at its normal hourly rates and to reimburse it for its out-of-pocket expenses, third-party vendors, and customary charges.  These rates and charges are the same or less than charged for comparable work done for comparable clients. (Ex. C, Engagement Agreement.)

25.     The Firm's and each attorney's billing rates and charges are subject to annual review and adjustment.  As set forth in the Engagement Agreement, it is the policy of the Firm to bill the client for expenses such as electronic research through Westlaw, our online research vendor, facsimile charges, photocopying, internal document database management, internal messenger service, and other appropriate items which will be identified and charged as they are incurred.  Attached to the Engagement Agreement is a fee schedule setting forth the most commonly billed expenses.  These fees are also subject to adjustment from time to time.  (*Id.*)

26.     With respect to all amounts charged, billed to, or proposed to be charged and billed to the Debtor with respect to the Case, Parsons Behle's professionals have and will continue to charge the same rate that they ordinarily charge to other clients of the Firm without variation.  No agreements were made for variations to Parsons Behle's customary billing rates.  None of Parsons Behle's professionals included in this engagement will charge a higher rate in this case based on geographic location.  (Rothschild Decl. ¶ 17.)

4820-5330-1875v2

27.     The Firm has also discussed Parsons Behle's staffing on this Case.  The Debtor and the Firm anticipate that most of the time in this bankruptcy case will be billed primarily by three (3) lawyers:  Brian M. Rothschild, Grace S. Pusavat, and Michael R. Brown, whose billing rates are as follows:

      a.   Brian M. Rothschild (Shareholder); $295.00 per hour;

      b.   Grace S. Pusavat (Associate): $240.00 per hour.

      c.   Michael R. Brown (Associate): $230.00 per hour

(*Id.* ¶ 18.)  Senior bankruptcy partners, including Bruce H. White and J. Thomas Beckett may be consulted on an as-needed basis at their customary rates.  In addition to the lawyers named above, it may be necessary for other Parsons Behle professionals in other legal disciplines to provide services to the Debtor during the course of the Case.

28.     The Debtor requests that all fees and related costs and expenses incurred by the Debtor on account of services rendered by Parsons Behle in this Case be allowed and paid as administrative expenses of the estate under sections 328, 330(a), 331, 503(b), and 507(a)(1) of the Bankruptcy Code.  (*Id.* ¶ 18.)

29.     As required by the US Trustee Guidelines applicable to this chapter 11 Case, Parsons Behle will maintain contemporaneous records of its professionals' time in increments of 0.1 hours, and account for each time entry by the task codes prescribed by the United States Trustee in accordance with the Bankruptcy Code and the Guidelines established by the U.S. Trustee (the "***US Trustee Guidelines***").[2]  (Rothschild Decl. ¶ 18.)  The Debtor further requests it be authorized to pay Parsons Behle's invoices using the following procedures:

---

[2] Available at https://www.justice.gov/ust/fee-guidelines.

4820-5330-1875v2

a. Parsons Behle may prepare a monthly billing statement describing the services provided and the fees and costs incurred (the "**Monthly Statement**") during the prior month (the "**Compensation Period**"), and provide its Monthly Statement to (i) the Debtor; (ii) the Office of the United States Trustee for the District of Utah; and (iii) the Official Committee of Unsecured Creditors, if any, appointed in this Case (collectively, the "**Notice Parties**").

b. At the expiration of the 14-calendar day period (with no extra days for mailing), the Debtor will promptly pay 100% of the expenses and 80% of the fees that Parsons Behle requested in the Monthly Statement, except such fees or expenses as to which an objection has been served as provided in the following paragraph.

c. If any of the Notice Parties has an objection to the compensation or reimbursement sought in a particular Monthly Statement, that party must serve Parsons Behle and the other Notice Parties, so as to ensure receipt within 14 days of the mailing date of the particular Monthly Statement, a written "Notice of Objection to Fee Statement" setting forth the specific objection and the dollar amount in dispute. The objecting party and Parsons Behle shall seek to resolve the objection informally.

d. If the parties are unable to reach an agreement on the amount to be paid within one week of receipt of the objection, the objecting party must within three (3) business days file its objection with the Court and serve it upon Parsons Behle and the Notice Parties whereupon the Court will consider and determine the objection under section 331 of the Bankruptcy Code.

10

e.  If no timely objection is filed with the Court, the Debtors will promptly pay 100% of the expenses and 80% of the fees that Parsons Behle requested in the Monthly Statement.

f.  Parsons Behle may periodically file applications for interim Court approval and allowance of compensation under 11 U.S.C § 331 (the "**Interim Fee Applications**").  Upon the approval of an Interim Fee Application by the Court, Parsons Behle shall be entitled to be paid 100 percent of the fees and expenses in all prior monthly statements.

g.  Neither the payment of, nor the failure to pay, in whole or in part, compensation and reimbursement as provided in these procedures, will bind any party in interest or this Court with respect to any Monthly Statement with respect to the final allowance of compensation and reimbursement of Parsons Behle in accordance with the foregoing procedures.

E.  **Interim and Final Relief**

30.  Under section 328(a) of the Bankruptcy Code, the Debtor may retain Parsons Behle on any reasonable terms and conditions.  The Debtor submits that the terms set forth in the Engagement Agreement charged by Parsons Behle to the Debtor and Parsons Behle's other clients on a daily basis in a competitive market are reasonable terms and conditions.

31.  Accordingly, it is reasonable, necessary, and appropriate for the Debtor to employ Parsons Behle as its attorneys under the terms set forth in the Engagement Agreement to render the foregoing professional services.  Parsons Behle has stated its desire and willingness to act in this case and render the necessary professional services as attorneys for the Debtor. Thus, the Debtor seeks immediate approval on an interim basis as set forth in the Interim Order to retain Parsons Behle immediately after an interim hearing is held as soon as possible after the Petition

11

Date.  Further, the Debtor requests final approval by entry of the Final Order after full notice and a hearing has been given to allow parties in interest to review and comment on the proposed retention of Parsons Behle on a final basis.

## V.
## NOTICE

32.     The Debtor has provided notice of this Application to (a) the Office of the United States Trustee for the District of Utah; (b) the entities listed on the List of Creditors Holding the 20 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); and (c) all ECF notice parties and parties who have requested notice on the Court's docket.  In light of the nature of the relief requested in this Application, the Debtor respectfully submits that no further notice is necessary.

33.     No prior application for the relief sought in this Application has been made to this or any other court in connection with this Chapter 11 case.

## VI.
## CONCLUSION

34.     For the reasons stated above, the Debtor requests that the Court grant the Application and enter the Interim Order lodged herewith and, after holding the Final Hearing, the Final Order.


October 15, 2018

Respectfully submitted,

/s/ Brian M. Rothschild

Brian M. Rothschild
Grace S. Pusavat
Michael R. Brown
**PARSONS BEHLE & LATIMER**
*Proposed Attorneys for Sugarloaf, Inc., Debtor and Debtor in Possession*

12

4820-5330-1875v2

## Exhibit A

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| In re:<br><br>SUGARLOAF HOLDINGS, LLC.<br><br>     Debtor. | Case No. 18-bk-27705<br><br>Chapter 11<br><br>Judge Kevin R. Anderson |

**INTERIM ORDER AUTHORIZING THE EMPLOYMENT AND
RETENTION OF PARSONS BEHLE & LATIMER AS
ATTORNEYS FOR THE DEBTOR**

Upon the application (the "**Application**")[1] filed by the above-captioned debtor and debtor-in-possession (the "**Debtor**") for entry of an interim order (this "**Interim Order**") under sections 327(a) and 328(a) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 2014 and 6003(a) of the Federal Rules of Bankruptcy Procedure authorizing the Debtor to retain and employ Parsons Behle & Latimer ("**Parsons Behle**" or the "**Firm**") as its attorneys to provide the services described in the Application, and upon the Court's consideration of the Rothschild Declaration and the First Day Declaration; and it appearing that this Court has jurisdiction to consider the Application under 28 U.S.C. §§ 157 and 1334; and it appearing that venue of this

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Application.

chapter 11 case and the Application in this district is proper under 28 U.S.C. §§ 1408 and 1409;

and it appearing that this matter is a core proceeding under 28 U.S.C. § 157(b); and it appearing

that proper and adequate notice of the Application has been given and that no other or further

notice is necessary; and after due deliberation thereon; and a hearing having been held to consider

the relief requested in the Application on an interim basis; and upon due deliberation on the

Application, the record of the hearing, and all of the proceedings heard before the Court; and any

objections to the Application having been withdrawn or overruled; and the Court having found

and determined that the relief sought in the Application is in the best interests of the Debtor, its

estate and creditors, and all parties in interest; and it appearing that attorneys at Parsons Behle who

will perform services on behalf of the Debtor in this chapter 11 case are duly qualified to practice

before this Court; and the Court finding, based on the advisements made in the Application and

the Rothschild Declaration that Parsons Behle does not represent any interest materially adverse

to the Debtor and/or the Debtor's estate with respect to the matters upon which it is to be engaged,

that it is a "disinterested person," as that term is defined in section 101(14) of the Bankruptcy Code

as modified by section 1107(b) of the Bankruptcy Code, that its employment is necessary and in

the best interests of the Debtor's estate, and sufficient cause appearing,

THEREFORE, IT IS HEREBY ORDERED THAT:

1.      The Application to employ Parsons Behle in this case is APPROVED under section

327(a) of the Bankruptcy Code, on an interim basis, pending the final hearing as set forth below.

2.      Parsons Behle shall apply for compensation and reimbursement of costs pursuant

to sections 330 and 331 of the Bankruptcy Code, as set forth in its Engagement Agreement with

the Debtor for services rendered and costs incurred on behalf of the Debtor.

3.      Any objection to the Application must be filed in the Court and served on counsel

to the Debtor so that such objection is received no later than _____, at ____ p.m. (Prevailing

2

4820-5330-1875v2

**Utah Time)** (the "**Objection Deadline**").  If any party in interest files an objection, the Court will hold a hearing on the relief sought in the Application on a final basis on ⬛⬛⬛⬛⬛, **at** ⬛⬛ **p.m. (Prevailing Utah Time)** (the "**Final Hearing**") at the United States Bankruptcy Court, Judge Kevin R. Anderson, U.S. Courthouse, 350 South Main Street, Courtroom 376, Salt Lake City, Utah 84101.  If no objections are filed to the Application, this Court may enter a Final Order on the Application without holding the Final Hearing.

4.      Any objections or responses to entry of the proposed Final Order shall be filed on or before seven business days before the Final Hearing and served on the Debtor and its proposed counsel.  In the event no objections are timely received, the Court may enter the Final Order without holding the Final Hearing.

5.      Entry of this Interim Order is without prejudice to the rights of any party in interest to interpose an objection to the Application, and any such objection will be considered on a *de novo* basis at the Final Hearing.

6.      This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

**[END OF DOCUMENT]**

3

4820-5330-1875v2

## Exhibit B

## Proposed Final Order

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| In re: | Case No. 18-bk-27705 |
| SUGARLOAF HOLDINGS, LLC. | Chapter 11 |
| Debtor. | Judge Kevin R. Anderson |

**FINAL ORDER AUTHORIZING THE EMPLOYMENT AND
RETENTION OF PARSONS BEHLE & LATIMER AS
ATTORNEYS FOR THE DEBTOR**

Upon the application (the "**Application**")[1] filed by the above-captioned debtor and debtor-in-possession (the "**Debtor**") for entry of a final order (this "**Final Order**") under sections 327(a) and 328(a) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 2014 and 6003(a) of the Federal Rules of Bankruptcy Procedure authorizing the Debtor to retain and employ Parsons Behle & Latimer ("**Parsons Behle**") as its attorneys to provide the services described in the Application, and upon the Court's consideration of the Rothschild Declaration and the First Day Declaration; and it appearing that this Court has jurisdiction to consider the Application under 28 U.S.C. §§ 157 and 1334; and it appearing that venue of this chapter 11 case and the Application in this district is proper under 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Application.

core proceeding under 28 U.S.C. § 157(b); and it appearing that proper and adequate notice of the

Application has been given and that no other or further notice is necessary; and after due

deliberation thereon; and a hearing having been held to consider the relief requested in the

Application; and upon due deliberation on the Application, the record of the interim hearing and

the final hearing, and all of the proceedings heard before the Court; and any objections to the

Application having been withdrawn or overruled; and the Court having found and determined that

the relief sought in the Application is in the best interests of the Debtor, its estate and creditors,

and all parties in interest; and it appearing that the attorneys at Parsons Behle who will perform

services on behalf of the Debtor in this chapter 11 case are duly qualified to practice before this

Court; and the Court finding, based on the advisements made in the Application and the Rothschild

Declaration that Parsons Behle does not represent any interest materially adverse to the Debtor

and/or the Debtor's estate with respect to the matters upon which it is to be engaged, that it is a

"disinterested person," as that term is defined in section 101(14) of the Bankruptcy Code as

modified by section 1107(b) of the Bankruptcy Code, that its employment is necessary and in the

best interests of the Debtor's estate, and sufficient cause appearing,

THEREFORE, IT IS HEREBY ORDERED THAT:

1.      The Application to employ Parsons Behle in this case is APPROVED in its entirety

on a final basis under section 327(a) of the Bankruptcy Code.

2.      Parsons Behle shall apply for compensation and reimbursement of costs under

sections 330 and 331 of the Bankruptcy Code, as set forth in its Engagement Agreement with the

Debtor for services rendered and costs incurred on behalf of the Debtor.

3.      Subject to this Court's entry of any order establishing different compensation

procedures, The Debtor further requests it be authorized to pay Parsons Behle's invoices using the

following procedures:

4820-5330-1875v2

a.   Parsons Behle may prepare a monthly billing statement describing the services provided and the fees and costs incurred (the "**Monthly Statement**") during the prior month (the "**Compensation Period**"), and provide its Monthly Statement to (i) the Debtor; (ii) the Office of the United States Trustee for the District of Utah; and (iii) the Official Committee of Unsecured Creditors, if any, appointed in this Case (collectively, the "**Notice Parties**").

b.   At the expiration of the 14-calendar day period (with no extra days for mailing), the Debtor will promptly pay 100% of the expenses and 80% of the fees that Parsons Behle requested in the Monthly Statement, except such fees or expenses as to which an objection has been served as provided in the following paragraph.

c.   If any of the Notice Parties has an objection to the compensation or reimbursement sought in a particular Monthly Statement, that party must serve Parsons Behle and the other Notice Parties, so as to ensure receipt within 14 days of the mailing date of the particular Monthly Statement, a written "Notice of Objection to Fee Statement" setting forth the specific objection and the dollar amount in dispute. The objecting party and Parsons Behle shall seek to resolve the objection informally.

d.   If the parties are unable to reach an agreement on the amount to be paid within one week of receipt of the objection, the objecting party must within three (3) business days file its objection with the Court and serve it upon Parsons Behle and the Notice Parties whereupon the Court will consider and determine the objection under section 331 of the Bankruptcy Code.

3

e.  If no timely objection is filed with the Court, the Debtors will promptly pay 100% of the expenses and 80% of the fees that Parsons Behle requested in the Monthly Statement.

f.  Parsons Behle may periodically file applications for interim Court approval and allowance of compensation under 11 U.S.C § 331 (the "**Interim Fee Applications**").  Upon the approval of an Interim Fee Application by the Court, Parsons Behle shall be entitled to be paid 100 percent of the fees and expenses in all prior monthly statements.

g.  Neither the payment of, nor the failure to pay, in whole or in part, compensation and reimbursement as provided in these procedures, will bind any party in interest or this Court with respect to any Monthly Statement with respect to the final allowance of compensation and reimbursement of Parsons Behle in accordance with the foregoing procedures.

4.  This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

**[END OF DOCUMENT]**

4

4820-5330-1875v2

## Exhibit C

**Engagement Letter**



**PARSONS BEHLE & LATIMER**

201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Main  801.532.1234
Fax  801.536.6111

A Professional
Law Corporation

Brian M. Rothschild
Attorney at Law
Direct  801.536.6762
BRothschild@parsonsbehle.com

October 1, 2018

c/o David Gray, Managing Member
Sugarloaf Holdings, LLC
1471 N 900 W
Lehi, UT 84043

**Re:    Scope and Terms of Representation by Parsons Behle & Latimer**

Dear David:

Thank you for allowing Parsons Behle & Latimer the opportunity to represent Sugarloaf Holdings, LLC ("Sugarloaf," "you," or the "client') in the preparation and filing of Sugarloaf's chapter 11 case and, if approved by the Bankruptcy Court, and as chapter 11 bankruptcy counsel (the "matter").  It is the policy of the firm to send a letter confirming the firm's engagement.  This letter will serve that purpose.

I.    Scope of Work

It is my understanding that we will represent Sugarloaf, and no other person or entity, in the matter.  Unless instructed otherwise, we will work directly with David Gray, Managing Member, and will take our instructions from him on this matter.

II.    Agreement as to Fees and Costs

All work for preparation of the chapter 11 case will be undertaken for a flat fee of $35,000.00, payable in advance prior to any work being performed, and due upon execution of this letter.  This fee will be earned, in full, upon filing of the chapter 11 case.  This fee will include reimbursement to the firm for the $1,717.00 chapter 11 filing fee payable to the Court, postage, copying, and other expenses incurred relating to the work on the filing.  In the event that Sugarloaf instructs the firm not to file its chapter 11 case, any work performed in preparation for the case or any other work performed at Sugarloaf's request will be charged at our customary rates, and the $35,000.00 will be treated as a retainer from which the firm may deduct its unpaid fees.

Post-petition work on this matter will be billed at our customary rates.  I will be primarily responsible for this matter.  My current billing rate is $295 per hour.  Michael Brown will assist in

4825-4318-7570v1

c/o David Gray, Managing Member
Sugarloaf Holdings, LLC
October 1, 2018
Page Two


the matter. His billing rate is $230 per hour. It is our policy to use other lawyers and staff members, including paralegals and project assistants, with lower billing rates whenever appropriate in order to provide more efficient and cost-effective services to the client. Grace Pusavat will also assist, and her rate is $240 per hour. Our paralegal rates range from $125 to $175 per hour, and our project assistants bill at $90 per hour. Please be advised that the firm's rates may be increased from time-to-time, and by execution of this engagement letter, you agree to pay the increased rates when they are increased.

Any retainer (including the $35,000.00 flat fee that will become a retainer if no chapter 11 case is filed) will be placed in trust and will be held in trust until the completion of our representation on the matter (unless the $35,000.00 is earned upon filing as the flat fee), at which time it will be applied against any open invoices and any remaining balance in trust will then be returned to you. The retainer may also be applied, at our discretion, toward invoices not paid when due. If the retainer is so applied, you agree to replenish the retainer to the agreed upon level upon request. Provided all outstanding invoices have been paid, any unapplied retainer will be returned to you upon completion of this engagement.

Statements for services rendered will be mailed to you monthly. You agree to carefully read all statements and to promptly notify Parsons Behle & Latimer of any claimed errors or discrepancies in the billings within fifteen (15) days from the time the statement is received. In the event you fail to do so it will be presumed that you agree with the correctness, accuracy and fairness of any statement. All sums billed are due and payable upon receipt of the statement except as otherwise provided in the preceding paragraph.

It is the policy of the firm to bill the client for expenses such as electronic research through Westlaw, our online research vendor, facsimile charges, photocopying, internal document database management, internal messenger service, and other appropriate items which will be identified and charged as they are incurred. Enclosed is a fee schedule setting forth the most commonly billed expenses. These fees may be increased from time-to-time, and by execution of this engagement letter, you agree to pay the increased fees if and when they are increased.

Our firm also bills the client for any payments that may be required to third parties, including but not limited to long distance charges, postage expenses, transportation costs, travel related expenses, filing fees, service of process fees, outside messenger fees, expert witness or consultant fees, outside copy charges, or electronic discovery vendor charges. Unless instructed otherwise, we will utilize our preferred vendor Novitex for electronic discovery. The cost of these expenses will be passed through to the client. By execution of this engagement letter, you agree to pay the actual cost incurred by the firm for these items.

c/o David Gray, Managing Member
Sugarloaf Holdings, LLC
October 1, 2018
Page Three


Parsons Behle & Latimer will not perform new work for any client who has an account receivable of 90 days or older.  Further, Parsons Behle & Latimer reserves the right to terminate the attorney client relationship for any reasons deemed appropriate under the Utah Rules of Professional Responsibility or the Utah Standards of Professionalism and Civility.

III.    Conflicts of Interest

A review of our records indicates that we have no current conflict of interest associated with undertaking this representation.  If we determine in the future that any conflict of interest exists, it may preclude our further representation.  Obviously, we will do whatever we can in that event to assist you in obtaining new counsel.  Similarly, if in the future you become aware of any facts that suggest a conflict of interest exists, please call it to our attention promptly.

Given the limited engagement described in Section 1 of this letter (entitled "Scope of Work"), our law firm needs to take precautions allowed by the applicable Rules of Professional Conduct to protect the ability of our many lawyers to continue serving their existing and future clients on future, unrelated matters. Our retention in this matter is based on our mutual understanding that you hereby waive all future conflicts arising out of any matter, including a litigation matter, which is not substantially related to the proposed engagement. Such matters could include work for Utah Department of Transportation, work for Intermountain Power Agency, and work for institutional creditors that may have a claim against Sugarloaf. Further, the waiver would only apply in situations where we can staff the adverse matter with lawyers who have not worked on your matter and where we can also erect a confidentiality screen to prevent the lawyers working on the adverse matter from gaining access to any confidential information you may provide to the firm during the course of your matter. Because of these restrictions, we are confident that, even if we were to undertake a representation adverse to you in an unrelated matter, there would be no impairment to our ability to continue to provide you with competent and diligent representation in your matter.

Although you may revoke this waiver as to future matters at any time, such revocation will not affect any matters undertaken by the firm prior to receipt of notice of the revocation of the waiver. Under that scenario, to the extent allowed by the applicable Rules of Professional Conduct, you would consent to us withdrawing from representing you if that is necessary for us to continue representing other clients, and we would assist you in transferring your matter to other counsel. Should you have any questions about our request for this limited waiver of future conflicts, we invite and encourage you to seek legal advice on this matter from independent counsel of your choosing.

c/o David Gray, Managing Member
Sugarloaf Holdings, LLC
October 1, 2018
Page Four

IV.     Notification to Your Insurer

It is my understanding that we have not been retained or engaged to advise you on insurance
related issues. I strongly recommend that you immediately determine whether you have any
insurance policies whatsoever, whether primary or excess, which may potentially provide
insurance coverage and/or a legal defense for this matter, even if you consider the possibility to be
remote. I encourage you to immediately notify all such insurers of this matter, provide each such
insurer with a copy of all of the communications relative to this claim, and suggest that you review
the "Conditions" of your insurance policies which typically prescribe the manner and substantive
requirements for notifying and tendering matters to insurers for investigation, indemnity and a
defense of this claim. Most often, liability policies require immediate notice of litigation. Failure
to timely notify your insurers of claims, potential claims or litigation could result in your insurer
denying a defense and/or coverage based upon late notice, even if the matter might otherwise be
covered. An honest mistake by an insured regarding whether or not a given policy affords
coverage or a defense may not be considered sufficient to excuse or justify failing to timely or
properly notify its insurer of litigation as required by the conditions of a given policy.
Consequently, it is best to notify an insurer if there is any possibility of coverage. Again, I wish
to confirm that determining the identity of your insurers, if any, or the extent or scope of your
insurance coverage, and/or notifying your insurers is not currently within the scope of our
representation.

V.      Preservation of Documents and Information

As this matter is extremely likely to result in a court filing, Sugarloaf is under an obligation
not to alter, destroy, dispose of, or otherwise tamper with any evidence that may be relevant or
admissible as evidence, or any evidence or information that is reasonably likely to lead to the
discovery of admissible evidence in this matter, and to take reasonable steps to preserve and protect
such evidence. This obligation extends not only to hard copy documentation, but also to
electronically stored information including, but not limited to, emails, attachments, computer
printouts, computer tapes, and electronic memory devices containing any documents,
spreadsheets, summaries, etc. In the event any emails, documents, or any other data containing
information regarding such claims and defenses reside on the hard drives of any computers owned,
used, accessed, or maintained by Sugarloaf or its employees, agents or representatives, you are
also under an obligation to collect and preserve that evidence as well.

VI.     Communication

Correspondence, records, copies of agreements and any other relevant documents will be
forwarded to you unless instructed otherwise. All files pertaining to you in the progress of any

c/o David Gray, Managing Member
Sugarloaf Holdings, LLC
October 1, 2018
Page Five

given matter are open for your inspection at any reasonable time. I will keep you informed
regarding the status of any matter in which you are involved, but you should feel free to call me any
time with questions or concerns. Please understand, however, that we cannot and do not guarantee
the outcome of this matter, as the litigation process necessarily involves risk and uncertainty.

Your communications with the Firm are confidential and generally protected by the
attorney-client privilege, provided reasonable steps are taken to maintain the confidentiality of
those communications. However, email and text messages may not be secure forms of
communication unless encrypted or other privacy safeguards are in place. The Firm's email
system is capable of receiving and transmitting encrypted email via the Transport Layer Security
(TLS) protocol. If you wish to communicate with the Firm via this encryption protocol, please
advise so that we may ensure that the protocol is in place. Please feel free to call if you desire
further information on encryption in order to make a fully informed decision.

All documents, records or files, including any electronic documents, emails, records or
files, created, stored or that otherwise come into the firm's possession during the course of this
matter are subject to the firm's document retention and destruction policy. Accordingly, such
documents, records or files are subject to destruction eight years after the conclusion of the matter,
unless (i) you request possession of such documents, records or files before the documents are
scheduled to be destroyed or (ii) you request that such documents, records or files be destroyed
earlier.

The firm adheres to the Utah Standards of Professionalism and Civility, a copy of which is
attached. Accordingly, we reserve the right to grant accommodations to other counsel in all
matters not directly affecting the merits of the case or prejudicing your substantive rights (e.g.,
scheduling, continuances, extensions, etc.). *See* Standard No. 14.

VII.    Confirmation of Agreement

If the foregoing accurately reflects your understanding regarding representation by Parsons
Behle & Latimer on your behalf, please sign the enclosed copy of this letter and return the same
to the undersigned at the address indicated above. This agreement will not take effect and the Firm
will have no obligation to provide legal services, until you return a signed copy of the letter and
[if applicable] pays the initial retainer agreed upon. A copy of this letter is enclosed for you to
acknowledge the terms of this engagement.

Thank you again for retaining us in this matter. If you have any questions, please feel free
to call me at 801.536.6762.

c/o David Gray, Managing Member
Sugarloaf Holdings, LLC
October 1, 2018
Page Six

Sincerely,

**PARSONS BEHLE & LATIMER**

Brian M. Rothschild
Attorney at Law

BMR:cmg

The foregoing letter has been reviewed and the terms herein agreed to by me this ___ day of October 2018.

RECEIVED, ACCEPTED AND AGREED:

David Gray
Managing Member
Sugarloaf Holdings, LLC

**PARSONS BEHLE & LATIMER**

## Parsons Behle & Latimer Cost Schedule (2018)

### General Administrative

| | | |
|---|---|---|
| Photocopies | $0.15 | per page |
| Oversized copies | $1.00 | per page |
| Color copies | $0.80 | per page |
| Blowback printing | $0.10 | page |
| Facsimiles | $0.15 | per page |
| Binding | $1.00 | per presentation/brief |
| Binders (varies by size) | $4.00 - 30.00 | each |
| Messenger service (varies by zone) | $7.50 - 40.00 | each |
| Return check fee | $25.00 | each |
| Wire Fee | $30.00 | per transaction |

### Practice Support

| | | |
|---|---|---|
| CD copying | $10.00 | each |
| DVD copying | $25.00 | each |
| USB Drive | $25.00 | each |
| External Hard Drive | $125.00 | each |
| Scanning paper documents for case management system | $0.15 | per page |
| Color scanning for case management system | $0.75 | per page |
| Optical character recognition of imaged documents for case management system | $0.02 | per page |
| Electronic bates numbering of imaged documents for case management system | $0.02 | per page |
| Electronic designation endorsements for each document | $0.02 | per page |
| Native Processing for Ipro Eclipse | $30.00 | per GB |
| Production from Ipro Eclipse | $350.00 | per GB / $0.030 per page |
| Image Printing from database B/W | $0.10 | per page |
| Image Printing form database Color | $0.75 | per page |
| Creation of searchable PDF documents for production from case management system | $0.03 | per page |
| External user login for case management system (for use by experts, in-house teams, or outside co-counsel) | $125.00 | per login |

### Electronic Research (Westlaw)

| | | |
|---|---|---|
| Searches | $200.00 | per search (all included databases) |
| Key Cite | No charge | |
| FIND transactions (cases, statutes, articles) | No charge | |
| All document displays | No charge | |
| Printing, emailing or downloading (including reporter images) | No charge | |
| Briefs or other pleadings or orders | No charge | |

4825-4318-7570v1

| | |
|---|---|
| Secondary sources (treatises, ALR, AmJur 2d, CJS, Restatements, Law Reviews) within contract | No charge |
| Excluded content (treatises, premium content) | Standard Westlaw Retail Rates |

**Miscellaneous**

| | | |
|---|---|---|
| Trademark Search | $100.00 | each |
| Exhibit Preparation | $40.00 | each |
| Downloaded documents from online court dockets | $2.50 | document |
| Technical setup up / courtroom technology setup | $55.00 | per hour |