Brian M. Rothschild, USB #15316
Grace S. Pusavat, USB #15713
Michael R. Brown, USB #16007
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone:  801.532.1234
Facsimile:  801.536.6111
BRothschild@parsonsbehle.com
GPusavat@parsonsbehle.com
MBrown@parsonsbehle.com
ecf@parsonsbehle.com

*Proposed Attorneys for Sugarloaf Holdings, LLC*

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re: | Case No. 18-bk-27705 |
| SUGARLOAF HOLDINGS, LLC. | Chapter 11 |
| Debtor. | Judge Kevin R. Anderson |

### DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS UNDER 11 U.S.C. § 363 AUTHORIZING USE OF CASH COLLATERAL AND APPROVAL OF BUDGET

Sugarloaf Holdings, LLC, the above-captioned debtor and debtor-in-possession (the "**Debtor**"), hereby moves the Court (the "**Motion**") under Section 105, 363, 1107, and 1108 of Title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 6003 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 4001-2 of the Local Rules of Bankruptcy Practice for the District of Utah (the "**Local Rules**") for entry of interim and final orders (the "**Interim Order**" and "**Final Order**," respectively) authorizing the Debtor to use cash collateral.  This Motion is supported by the arguments and authorities set forth below, the *Declaration of David J. Gray in Support of the Debtor's Chapter 11 Petition and Requests for*

1

*First-Day Relief* (the "**First-Day Declaration**"), and the entire record before the Court in this Chapter 11 case (this "**Case**").

## I.
## SUMMARY OF RELIEF REQUESTED

1. The Debtor requests an order authorizing the use of cash collateral. The Debtor further requests that the Court schedule a hearing (the "**Final Hearing**") (Local Rule 4001-2(c)) to consider entry of the Final Order.

2. The statutory predicates for the relief sought herein are Section 105 and 363 of the Bankruptcy Code, Bankruptcy Rule 2002, 4001, 6004, 9014, and 9019, and Local Rule 4001-2.

## II.
## JURISDICTION

3. This Court has jurisdiction to consider the relief requested in this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b) and venue is proper in the District of Utah under 28 U.S.C. §§ 1408 and 1409.

## III.
## RELEVANT BACKGROUND

**A.** **General**.

4. On the date hereof (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under the Bankruptcy Code. The Debtor has continued in possession of its properties and is operating and managing its businesses as a debtor-in-possession under Section 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner and a creditors' committee has not yet been appointed in this Case.

1. The Debtor is a diversified and technologically advanced farming and ranching operation headquartered in Lehi, Utah with primary Debtor's farming and ranching operations in Millard County, Utah. The Debtor's farming operations produce legumes, small grains, and animal feed. Its ranching operations raise and sell beef cattle for market. The Debtor's operations

4846-1121-4711v6

span approximately 7,164.38 acres owned in fee simple, and more than 51,044.30 acres leased for grazing from the U.S. Bureau of Land Management ("**BLM**"), comprising nearly 80 square miles of agricultural operations, an area approximately the size of the Salt Lake Valley.  The Debtor is not highly leveraged, and has substantial and valuable real estate and equipment holdings.  The Debtor filed this chapter 11 Case primarily because of a few complex and costly multi-party lawsuits relating to a single water right (the "**Water Right Lawsuit**," as described in detail below) and aggressive adverse actions taken by the Debtor's primary secured creditor, Bank of the West ("**BOW**"), on the ostensible basis that it felt its collateral is imperiled.  The Debtor requires the breathing spell of the automatic stay to reorganize its operations, resolve the lawsuit, and pay its creditors.

5. Further detail regarding the Debtor's businesses, operations, financial condition, and the facts and circumstances of this Case are found in the First-Day Declaration, which is incorporated herein in its entirety by this reference.[1]

B.    **Facts Specific to this Motion**.

    1.    **Overview of Secured and Unsecured Debt of the Debtor**.

6. As of the Petition Date, the Debtor had approximately $13,594,914 in total secured debt obligations and $2,106,231 in total general unsecured claims.

7. The Debtor's primary sources of first-lien secured funding are as follows:

    a.    <u>Bank of the West</u>.  BOW holds a first position Deed of Trust, secured by the Debtor's real property.  The current amount owed is approximately $9,565,400.

    b.    <u>Bank of the West</u>.  BOW holds a lien secured by the Debtor's "accounts, chattel paper, goods, inventory, equipment, farm products, instruments, investment property, documents, commercial tort claims, deposit accounts, letter-of-credit rights, general intangibles, supporting obligations, and

---

[1] All capitalized terms not otherwise defined herein have the meanings given in the First-Day Declaration.

4846-1121-4711v6

    records of, accession to and proceeds and products of the foregoing." The current amount owed is approximately $2,899,372.

8. In addition, the Debtor has also received additional secured financing as follows:

  a. <u>AGCO Finance LLC</u>. AGCO holds a lien secured by certain items of equipment. The amount owed is approximately $540,838.

  b. <u>Farm Credit Leasing Services Corp.</u> Farm Credit Leasing holds a lien secured by certain items of equipment. The amount owed is approximately $297,408.

  c. <u>John Deere</u>. John Deere holds a lien secured by titled vehicles and equipment. The amount owed is approximately $291,896.

9. In the ordinary course of its businesses, the Debtor incurs trade debt for goods and services, suppliers, and independent contractors.

  a. <u>Farm Operations and Labor</u> Among the Debtor's most urgent needs, is the requirement to prepare for future growing. The Debtor is currently facing an imperative need to plant and prepare future crops, the lifeblood of its operations.

  b. <u>Other Professional Services</u> The Debtor has necessary fees for legal representation. Additionally, the Debtor requires the use of professionals, including engineers.

**2.  Debtor's Cash Flow and Status.**

10. In November of 2016, Bank of the West ordered an appraisal of the Debtor's real property. BOW's appraisal estimated the value of the Debtor's property at $14,716,000. The Debtor believes this appraisal is extremely conservative, and that its property could be sold for substantially more. The Debtor owns additional personal property worth approximately $6,351,619. The total value of the Debtor's assets as of the petition date is $21,067,619. The Debtor's total liabilities are $15,716,413. The Debtor's total equity is <u>conservatively</u> $5,351,206—or 25.4%.

11. As of the Petition Date, the Debtor is in possession of a check for $568,359. The check represents proceeds from the sale of cattle and is made out to both the Debtor and BOW (the

"**Cattle Proceeds**"). The Debtor has minimal accounts receivable and little cash on hand. The Debtor requires the Cattle Proceeds immediately, as future revenues depend on planting and maintaining operations now. The Debtor believes, based on multiple past experiences, that if it were to deposit the Cattle Proceeds, BOW would sweep the account and leave the Debtor without cash or the ability to pay expenses until it was potentially too late. This would likely force the Debtor to liquidate, where it otherwise seeks to reorganize. The Debtor seeks an order from the Court requiring BOW to endorse the check, execute any documents required to release the Cattle Proceeds, and allow the funds to be deposited in the debtor-in-possession account.

12. Under the credit agreements with BOW, all cash in the Debtor's accounts is "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code (the "**Cash Collateral**"). Accordingly, the Debtor cannot use the cash in its bank accounts or the Cattle Proceeds without permission from BOW or Court approval under section 363(b)(2) of the Bankruptcy Code. BOW does not consent to the Debtor's use of Cash Collateral. Accordingly, by this Motion the Debtor is requesting authorization under section 363(b)(2) of the Bankruptcy Code to use Cash Collateral in the ordinary course of its business and to fund its chapter 11 case.

## IV.
## ARGUMENTS & AUTHORITIES

By this Motion, the Debtor seeks authority to use Cash Collateral. The Debtor's need to use Cash Collateral is immediate and critical. The funds are necessary to enable the Debtor to continue operations and to administer and preserve the value of its estate as a going concern. The ability of the Debtor to finance its operations, maintain business relationships, and otherwise finance its operations requires the availability of working capital from the Cash Collateral, the absence of which would immediately and irreparably harm the Debtor, its estate, its creditors, and equity holders, and the possibility for a successful administration of the Case.

4846-1121-4711v6

The Debtor is seeking immediate interim approval for its use of Cash Collateral to provide sufficient funds for working capital required to continue its business operations. In general terms, the Cash Collateral is to be used as follows: (a) to pay post-petition operating expenses of the Debtor incurred in the ordinary course of business; (b) to pay costs and expenses of administration of the Case, including payment of approved professional fees, (c) to pay other amounts as specified in the budget attached hereto as Exhibit C hereto (the "**Budget**"), and allowed by the Court, in each case, in amounts and categories consistent with the Budget.

The Debtor requests authorization to be deemed consistent with the Budget so long as the Debtor does not exceed the Budget by up to ten percent (10%) on average during any three-month period.

In support of the relief requested herein, the Debtor relies on this Motion, the First-Day Declaration, and all supporting pleadings and evidence filed therewith, and will be prepared to provide additional evidence at the Final Hearing, if required.

**A.      Legal Standard.**

  **1.      Bankruptcy Code Section 363(b)(1).**

13.      Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." In considering a proposed use of property outside of the ordinary course, courts look at whether the proposed use of the property is in the best interests of the estate based on the facts of the case. See *Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14, 19-20 (9th Cir. BAP 1988) (citing *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986)). This requires an examination of the "business justification" for the proposed use. *Walter*, 83 B.R. at 19 ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity

holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business . . . .").

14. A motion for cash collateral under § 363 additionally requires a debtor to show that the interests of lienholders are adequately protected,

> [d]ebtors have the burden of proof on the issue of adequate protection. In *O'Connor*, the Tenth Circuit wrote: 'The whole purpose in providing adequate protection for a creditor is to insure that the creditor receives the value for which the creditor bargained prebankruptcy.' In determining these values, the courts have considered 'adequate protection' a concept which is to be decided flexibly on the proverbial 'case-by-case' basis.' The existence of an equity cushion is, as the Ninth Circuit has stated, 'the classic form of protection for a secured debt.'

*In re Utah 7000, L.L.C.,* 2008 WL 2654919, at *3 (Bankr. D. Utah 2008) (J. Boulden) (quoting *In re O'Connor*, 808 F.2d 1393 (10th Cir. 1987).

> As stated in *O'Connor*, 'value is the linchpin of adequate protection, and since value is a function of many factual variables, it logically flows that adequate protection is a question of fact.' [C]ase law almost uniformly concludes that: (1) an equity cushion of twenty percent (20%) or more constitutes adequate protection; (2) an equity cushion of less than eleven percent (11%) is insufficient; and (3) a range of twelve percent (12%) to twenty percent (20%) has divided the Courts.

*Id.* at fn. 6.

15. BOW is adequately protected. The cushion of equity in the bank's collateral not only meets, but exceeds the threshold of 20%. The Debtor's 25.76% equity more than adequately protects the interests of BOW.

**2. Bankruptcy Code Section 105(a).**

16. Section 105(a) of the Bankruptcy Code provides that bankruptcy courts "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code.

**3. Local Rule 4001-2 – Interim and Final Relief**

17. Local Rule 4001-2(b) provides as follows:

      **Interim Relief.** When Financing Motions (including cash collateral requests) are filed with the court on or shortly after the date of the entry of the order for relief, the court may grant interim relief pending review by interested parties of the proposed financing arrangements to avoid immediate and irreparable harm to the estate. In the absence of extraordinary circumstances, the court will not approve interim financing orders that include any of the provisions in subsection (a)(1)(A) through (a)(1)(G) of this rule.

18.    Local Rule 4001-2(c) provides as follows:

      A final order on a motion under subsection (a) of this Local Rule will be entered only after notice and a hearing under Fed.R.Bankr.P. 4001 and Local Rule 2002-1. Ordinarily, the final hearing should be held at least 14 days following the organizational meeting of the creditors' committee contemplated by §1102 of the Code.

19.    The Debtor believes that there is ample evidence that failure to obtain authorization to use Cash Collateral set forth in the Interim Order will result in immediate and irreparable harm to its estate, including loss of the Debtor's going-concern value and the loss of inventory. Accordingly, by this Motion, the Debtor requests (a) entry of the Interim Order, granting such relief on an Interim Basis and (b) that the Court schedule the Final Hearing to consider the relief requested in this Motion on a final basis.

## V.
## NOTICE

20.    The Debtor has provided notice of this Motion to: (a) the Office of the United States Trustee for the District of Utah; (b) the entities listed on the List of Creditors Holding the 20 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) all ECF notice parties or parties who have requested notice on the Court's docket; (d) the Debtor's pre-petition secured lenders, Bank of the West, AGCO Finance LLC, Farm Credit Leasing Services Corp., and John Deere. In light of the nature of the relief requested in this Motion, the Debtor respectfully submits that no further notice is necessary.

4846-1121-4711v6

# VI.
# CONCLUSION

21. For the reasons stated above, the Debtor requests that the Court grant the relief requested in this Motion and enter the Interim Order attached hereto as <u>Exhibit A</u> and, pursuant to Local Rule 4001-2(c), schedule the Final Hearing on the Local Order.

Dated: October 15, 2018         Respectfully submitted,

/s/ Brian M. Rothschild
Brian M. Rothschild
**PARSONS BEHLE & LATIMER**

*Proposed Attorneys for Sugarloaf Holdings, LLC*

# Exhibit A

# Proposed Interim Order

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re: | Case No. 18-bk-27705 |
| SUGARLOAF HOLDINGS, LLC, | Chapter 11 |
| Debtor, | Judge Kevin R. Anderson |

## INTERIM ORDER AUTHORIZING THE USE OF CASH COLLATERAL

This matter having come before the Court on the "Debtor's Motion for Interim and Final Orders Under 11 U.S.C. § 363 Authorizing Use of Cash Collateral" (the "**Motion**") filed by Sugarloaf Holdings, LLC (the "**Debtor**"); and Debtor having filed the Declaration of David J. Gray in Support of the Debtor's Chapter 11 Petition and Requests for First-Day Relief;

The Motion having come before the Court for a preliminary hearing on interim use of cash collateral on ▬▬▬▬▬; and

Brian M. Rothschild and Michael R. Brown of Parsons Behle & Latimer having appeared on behalf of the Debtor; ▬▬▬▬▬ having appeared on behalf of the Bank of the West and ▬▬▬▬▬ having appeared on behalf of the Office of the U.S. Trustee; and

For the reasons stated on the record and good cause appearing, it is ORDERED that

1. The Motion is granted to the limited extent specified in this Interim Order Authorizing Use of Cash Collateral (the "**Order**").

4846-1121-4711v6

2. The Debtor is authorized to use Cash Collateral on the terms and subject to the conditions set forth in this Order for the period from October 15, 2018 (the "**Petition Date**") through and including _____, 2018 solely for the purposes and in the amounts set forth in the budget for said period attached as Exhibit A hereto (the "**Budget**").

3. The Debtor shall not, without the Court's prior written consent or except as provided in this Order, expend Cash Collateral (a) for any purpose other than those specified in the Budget; or (b) in amounts in excess of the total amount of any line item in the Budget for the period from the Petition Date until _____. Provided, however, that the Debtor does not exceed the monthly budgeted amount up to 10% on average during any three-month period.

4. The Debtor's authorization to use Cash Collateral under this Order shall terminate on _____, unless extended by an order of the Court.

5. The Debtor is authorized to retain and deposit funds in its possession.

6. Bank of the West shall endorse the check in the Debtor's possession (the "**Cattle Proceeds**"), execute any and all necessary documents to release the Cattle Proceeds, and allow the funds to be deposited into the debtor-in-possession account.

7. Upon request, the Debtor shall provide Bank of the West, the U.S. Trustee and any other party in interest who requests a written report, a copy of a written report comparing the amounts projected in the Budget to the actual receipts and expenditures for that period.

8. The final hearing on the Debtor's motion shall be held in the above-entitled Court on _____, at _____ (Prevailing Utah Time) (the "**Final Hearing**") at the United States Bankruptcy Court, Judge Kevin R. Anderson, U.S. Courthouse, 350 South Main Street, Courtroom 376, Salt Lake City, Utah 84101.

4846-1121-4711v6

    **9.**    This order is effective as of the date of the hearing.

-------------------------------------------------*end of document*-----------------------------------------------

4846-1121-4711v6

**Exhibit B**

**Proposed Final Order**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| In re: | Case No. 18-bk-27705 |
|---|---|
| SUGARLOAF HOLDINGS LLC, | Chapter 11 |
| Debtor, | Judge Kevin R. Anderson |

## FINAL ORDER AUTHORIZING THE USE OF CASH COLLATERAL

This matter came before the Court on _____, 2018 at ____ a.m. (MT) for final hearing on the motion for authority to use cash collateral (the "**Motion**") filed by debtor and debtor-in-possession Sugarloaf Holdings, LLC (the "**Debtor**"). Appearances of counsel and of other parties-in-interest were made on the record at the hearing.

Based on the evidence received by the Court and/or adduced at the preliminary and final hearings on the Motion, considering the representations and statements of counsel, and the Court having made findings of fact and conclusions of law on the record of the hearing, which findings and conclusions are incorporated into this Order by reference, the Court hereby **FINDS AND CONCLUDES** as follows:

      A.    the Court has jurisdiction under 28 U.S.C. §§ 157 and 1334;

      B.    this is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (M) and (O);

      C.    no examiner or trustee has been appointed in this case;

4846-1121-4711v6

D. notice of the Motion, and of both the preliminary and final hearings thereon, was and is, given the circumstances, adequate and proper within the meaning of 11 U.S.C. § 102(1) and Federal Rule of Bankruptcy Procedure 4001(b);

F. the expenses identified on the budget attached as Exhibit A hereto (the "**Budget**") are actual and necessary costs and expenses of preserving the Debtor's chapter 11 bankruptcy estate;

G. to the extent that Bank of the West has an interest in the Debtor's cash and/or other assets of the Debtor which will result in cash proceeds (collectively, the "**Cash Collateral**"), then Bank of the West is adequately protected by an equity cushion; and

H. the Court stated additional findings of fact and conclusions of law on the record during the hearings on the Motion, which findings and conclusions are incorporated herein by reference.

**WHEREFORE**, based upon the Motion, the foregoing findings and conclusions and other matters of record, and good cause appearing, it hereby is **ORDERED** as follows:

1. The Motion is **GRANTED**, as more particularly described below.

2. The Debtor is authorized to use and spend Cash Collateral to pay expenses as consistent with and identified on the Budget to the extent of the amounts reflected on the Budget, through the period ending _____. The Debtor may exceed the amounts budgeted by up to ten percent (10%) on average during any three-month period. Further, savings in prior periods may be carried forward to permit greater expenditures in later periods.

3. The authority to use cash collateral under this Order may be modified by further order of the Court. In this regard, subject to such notice as is appropriate under the

4846-1121-4711v6

circumstances, the Debtor shall have the right to request authority to pay expenses not contemplated under the current Budget.

      4.      Entry of this Order and its dissemination according to ordinary Court noticing procedures shall constitute adequate and appropriate notice of the Continued Hearing. No further or additional notice of the Continued Hearing need by filed with the Court or served on parties-in-interest.

      5.      Notwithstanding anything to the contrary herein, nothing herein shall be deemed to grant extraordinary relief under Local Rule 4001-2, including without limitation the relief specifically listed in subsections (a)(1)(A) through (a)(1)(G) of Local Rule 4001-2.

      6.      This order is effective as of _____, when the Court's oral ruling was announced in open court at the conclusion of the hearing on the Motion.

-------------------------------------------------end of document-------------------------------------------------

**Exhibit C**

**Budget**

4846-1121-4711v6

**Sugarloaf Budget (Statement of Cash Flows)**
Pro-Forma

| | 2018 Oct | 2018 Nov | 2018 Dec | 2018 4QTD | 2019 Jan | 2019 Feb | 2019 Mar | 2019 Apr | 2019 May | 2019 June |
|---|---|---|---|---|---|---|---|---|---|---|
| **Revenue** | | | | | | | | | | |
| Stocker Sales | | | | $ - | | | $ 435,000 | | | $ 2,160,000 |
| Hay Sales | | | | $ - | | | | | | $ 16,000 |
| Pature Lease | $ 16,000 | $ 16,000 | $ 16,000 | $ 48,000 | $ 16,000 | $ 16,000 | $ 16,000 | $ 16,000 | $ 16,000 | |
| Total Revenue | $ 16,000 | $ 16,000 | $ 16,000 | $ 48,000 | $ 16,000 | $ 16,000 | $ 451,000 | $ 16,000 | $ 16,000 | $ 2,176,000 |
| **Expense** | | | | | | | | | | |
| Farming (fuel/pwr, Seed, Fertilizer, Supplies) | $ 75,000 | | $ 50,000 | $ 275,000 | $ 150,000 | | $ 200,000 | | | $ 566,400 |
| Yearling Stock Purchases | | $ 200,000 | | $ 200,000 | | | | | | |
| Labor | $ 57,197.88 | $ 9,533 | $ 9,533 | $ 76,264 | $ 16,000 | $ 16,000 | $ 24,000 | $ 16,000 | $ 16,000 | $ 24,000 |
| Insurance | $ 5,000 | $ 5,000 | $ 5,000 | $ 15,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 |
| Ranch Fuel | $ 2,400 | $ 2,400 | $ 2,400 | $ 7,200 | $ 2,400 | $ 2,400 | $ 2,400 | $ 2,400 | $ 2,400 | $ 2,400 |
| U.S. Trustee Fees | $ 300 | $ 300 | $ 300 | $ 900 | $ 300 | $ 300 | $ 300 | $ 300 | $ 300 | $ 300 |
| Debtor's Counsel | $ 30,000 | $ 10,000 | $ 10,000 | $ 50,000 | $ 10,000 | $ 10,000 | $ 10,000 | $ 10,000 | $ 10,000 | $ 10,000 |
| Engineers/constructors | $ 500 | $ 500 | $ 500 | $ 1,500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 |
| Bank Payments | | | | $ - | | | | | | $ 593,675.94 |
| Total Expense | $ 170,398 | $ 227,733 | $ 77,733 | $ 625,864 | $ 184,200 | $ 34,200 | $ 242,200 | $ 34,200 | $ 34,200 | $ 1,202,276 |
| | $ 625,838 | | | | | | | | | |
| Net Income | $ (154,398) | $ (211,733) | $ (61,733) | $ (577,864) | $ (168,200) | $ (18,200) | $ 208,800 | $ (18,200) | $ (18,200) | $ 973,724 |
| Cash on Hand | $ 471,440 | $ 259,707 | $ 197,974 | $ 197,974 | $ 29,774 | $ 11,574 | $ 220,374 | $ 202,174 | $ 183,974 | $ 183,974 |