Brian M. Rothschild, USB #15316
Grace S. Pusavat, USB #15713
Michael R. Brown, USB #16007
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone:  801.532.1234
Facsimile:  801.536.6111
BRothschild@parsonsbehle.com
GPusavat@parsonsbehle.com
MBrown@parsonsbehle.com
ecf@parsonsbehle.com

*Proposed Attorneys for Sugarloaf Holdings, LLC*

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| In re:<br><br>SUGARLOAF HOLDINGS, LLC.<br><br>Debtor. | Case No. 18-bk-27705<br><br>Chapter 11<br><br>Judge Kevin R. Anderson |

---

### DEBTOR'S MOTION FOR AN ORDER (1) AUTHORIZING BUT NOT REQUIRING THE DEBTOR TO PAY UTILITY PROVIDERS, (2) DETERMINING AND APPROVING ADEQUATE ASSURANCE OF PAYMENT FOR FUTURE UTILITY SERVICES, (3) PROHIBITING UTILITY PROVIDERS FROM DISCONNECTING OR REFUSING TO PROVIDE SERVICE, AND (4) GRANTING RELATED RELIEF

---

Sugarloaf Holdings, LLC, the above-captioned debtor and debtor-in-possession (the "**Debtor**" or "**Sugarloaf**") hereby moves the Court (the "**Motion**") under sections 105 and 366 of Title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 6003 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") for entry of interim and final orders (the "**Interim Order**" and "**Final Order**," respectively) (1) authorizing but not requiring

the Debtor to continue to pay pre-petition utility providers, (2) determining and approving adequate assurance of payment for future utility service, (3) prohibiting utility providers from disconnecting, discontinuing, or preventing access to utility service, and (4) granting related relief. This Motion is supported by the arguments and authorities set forth below, the *Declaration of David J. Gray in Support of the Debtor's Chapter 11 Petition and Requests for First-Day Relief* (the "**First-Day Declaration**"), and the entire record before the Court in this Chapter 11 case (this "**Case**").[1]

## I.
## SUMMARY OF RELIEF REQUESTED

1.      By this Motion, the Debtor requests entry of the Interim Order and Final Order substantially in the form attached as Exhibit A and Exhibit B hereto, respectively, (a) authorizing but not requiring the Debtor to continue to pay pre-petition utility providers, (b) determining and approving adequate assurance of payment for future utility service, (c) prohibiting utility providers from disconnecting or refusing to provide utility service to the Debtor, and (d) granting related relief.

2.      The statutory predicates for the relief sought herein are sections 105 and 366 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004.

## II.
## JURISDICTION

3.      This Court has jurisdiction to consider the relief requested in this Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b) and venue is proper in the District of Utah under 28 U.S.C. §§ 1408 and 1409.

---

[1] All capitalized terms not otherwise defined herein have the meanings given in the First Day Declaration.

2

**III.**
**RELEVANT BACKGROUND**

**A.    General.**

4.      On the date hereof (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under the Bankruptcy Code.  The Debtor continues in possession of its properties and is operating and managing its businesses as a debtor in possession under sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or examiner and a creditors' committee has not yet been appointed in this Case.

5.      The Debtor is a diversified and technologically advanced farming and ranching operation headquartered in Lehi, Utah with primary Debtor's farming and ranching operations are in the Millard County, Utah.  The Debtor's farming operations produce legumes, small grains, and animal feed.  Its ranching operations raise and sell beef cattle for market.  The Debtor is not highly leveraged, and has substantial and valuable real estate and equipment holdings.  The Debtor filed this chapter 11 Case primarily because of a few complex and costly multi-party lawsuits relating to a single water right and aggressive adverse actions taken by the Debtor's primary secured creditor, Bank of the West, on the ostensible basis that it felt its collateral is imperiled.  The Debtor requires the breathing spell of the automatic stay to reorganize its operations, resolve the lawsuit, and pay its creditors.

6.      Further detail regarding the Debtor's businesses, operations, financial condition, and the facts and circumstances of this Case are found in The First-Day Declaration.

**B.    Facts Specific to the Motion.**

7.      As set forth in the First-Day Declaration, in the ordinary course of business, the Debtor incurs expenses for electricity and other similar utility services provided by utility

providers (as such term is used in Bankruptcy Code Section 366, collectively, the "**Utility Providers**"), a list of which is attached as Exhibit C hereto (the "**Utility Service List**").[2]

8.      The Debtor pays for the Utility Providers to provide the utilities necessary for farming, including electricity and fuel.

9.      Uninterrupted utility services at the Debtor's farming and ranching operations is essential to the Debtor's ongoing operations and, therefore, to the success of this Case.  In the Debtor's farming and ranching business, uninterrupted electrical, water, and fuel supplies are crucial to maintain the Debtor's crops and livestock.  Indeed, any interruption of any of the Debtor's utility services, even for a brief period of time, would negatively affect the Debtor's operations and its ability to maintain its crops and livestock for the operations of its business.  It is therefore critical that utility services continue uninterrupted during this Case.

10.      Flowell Electric Association ("**Flowell**") required that the Debtor provide pre-paid funds in the amount of $85,947.88 (the "**Flowell Deposit**") in order to install new electrical service for the Debtor's 20 pivots and associated wells and infrastructure.  Flowell required the Debtor to pay the Flowell Deposit despite the fact that Flowell's publicly filed tariff with the State of Utah Public Utilities commission requires Flowell to fund new infrastructure to route power to new customers at its own expense.  The funds were remitted on September 11, 2017, with reservation of rights under Flowell's tariff.  Over the course of the winter, electrical service infrastructure was partially installed but not completed by Flowell.  The Debtor installed nearly 10 miles of its own infrastructure in reliance on Flowell providing utility service.  Nevertheless, Flowell only provided

---

[2] The Debtor has included all known Utility Providers; however, the Debtor reserves the right to supplement the Utility Service List, attached as Exhibit C hereto, to include any other Utility Provider that may have been unintentionally omitted. Additionally, the listing of an entity on the Utility Service List is not an admission that such entity is a utility within the meaning of Section 366 of the Bankruptcy Code, and the Debtor reserves the right to contest any such characterization in the future.

4846-8760-1784v2

electrical service to 8 of the Debtor's 20 pivots and only one of Sugarloaf multiple pumps that required a 3 phase connection. In addition, Flowell refused to electrify the connections to these 8 pivots until well after the irrigation season had ended. Even though Flowell installed the infrastructure, Flowell refused to connect the fuses on the service side of the transformers until well after surface irrigation season ended in the spring. Flowell refused to provide any explanation for its actions.

11.     Just after remitting to Flowell the funds in September 2017, Sugarloaf planted 2400 acres of winter wheat in reliance on Flowell turning on the power . Sugarloaf's farm experienced a historic drought over the winter of 2017-2018. Nevertheless, Flowell refused to electrify the pivots. Without electricity, Sugarloaf was not able to water its wheat crop at the critical time, and the entire wheat crop failed.

12.     Although Flowell refused to provide any explanation, the Debtor suspects that Flowell's actions are a result of individuals who are involved in the Water Right Lawsuits improperly using their positions to put pressure on the Debtor. One of the board members at Flowell, Leo Stott, is a plaintiff and counterclaim defendant in the Water Right Litigations. He installed a pivot across the street from Sugarloaf in the same time frame and was immediately supplied with power.

13.     The loss of the crop from the lack of power was nearly catastrophic. By this Motion, Sugarloaf requests that Flowell be prohibited from disconnecting, discontinuing, or refusing to provide electrical service to the Debtor.

14.     To the extent that the Debtor subsequently identifies additional providers of utility services, the Debtor hereby seeks authority to amend the Utility Service List to add or remove any Utility Provider. The Debtor will amend the Utility Service List by notifying the added Utility Provider in writing that the Debtor has added it to the Utility Service List. The Debtor further

5

requests that the Interim Order and Final Order apply to any such subsequently identified Utility Provider as provided in the Adequate Assurance Procedures, regardless of when each Utility Provider was added to the Utility Service List.  With respect to any subsequently identified Utility Provider, the Proposed Adequate Assurance shall be deemed adequate assurance of payment for any Utility Provider that does not make an Additional Assurance Request within 21 days of receiving a copy of the Interim Order, Final Order, or the Motion (each of which fully recite the Adequate Assurance Procedures).  The Debtor shall have the period specified in the proposed Adequate Assurance Procedures to seek to resolve any subsequently added Utility Provider's Additional Assurance Request by mutual agreement with the Utility Provider without further order of the Court or to schedule a Determination Hearing with the Court to determine the adequacy of assurance of payment with respect to such Utility Provider in accordance with such Adequate Assurance Procedures.

15.     The Debtor requests that all Utility Providers, including subsequently added Utility Providers, be prohibited from altering, refusing, or discontinuing utility services to the Debtor absent further order of the Court, and that the Utility Providers not prevent the Debtor from accessing utility services.

16.     The Debtor pays Utility Providers on a periodic basis based on each Utility Provider's billing cycle.  The Debtor has no defaults with the Utility Providers, and has a history of prompt and complete payment of all utilities.  The Debtor believes it is substantially current within one billing cycle with all of its Utility Providers.

17.     The Debtor submits that it would be administratively burdensome to segregate pre-petition amounts from post-Petition Date amounts owing to each Utility Provider on each account where the billing cycles do not coincide with the Petition Date (and most, if not all, will not). Accordingly, the Debtor requests that the Court authorize, but not require, the Debtor to pay all

pre-petition amounts owing to Utility Providers in the ordinary course of its business for administrative convenience and to ensure that the Utility Providers do not cease provision of the utility services as a result of non-payment.  In addition, failure to pay pre-petition amounts could result in Utility Providers requesting a higher Adequate Assurance Deposit or to take action to terminate utility services, resulting in a greater cost to the estate than if payments from the Debtor continued uninterrupted.

### IV.
### ARGUMENTS & AUTHORITIES

**A.    Proposed Adequate Assurance Procedures.**

Section 366 of the Bankruptcy Code provides that a utility provider may alter, refuse, or discontinue a Chapter 11 debtor's utility service if the utility does not receive from the debtor adequate "assurance of payment" within 30 days from the Petition Date.  11 U.S.C. § 366(b). Section 366(c)(1)(A) defines the phrase "adequate assurance of payment" to mean, among other things, a cash deposit.  11 U.S.C. § 366(c)(1)(A).  Accordingly, for all Utility Providers paid on billing cycles, the Debtor proposes that, upon request, it will provide a deposit to each requesting Utility Provider in an amount equal to two weeks' worth of utility service as calculated by the Debtor according to the last historical 52-week period (each, an "**Adequate Assurance Deposit**"); provided, however, that (a) a request for such deposit is made in writing no later than thirty (30) days after the Petition Date (the "**Request Deadline**"); and (b) such requesting Utility Provider does not already hold a deposit equal to or greater than the Adequate Assurance Deposit (which existing deposit shall be deemed to be the Adequate Assurance Deposit for purposes of this Motion).  All such Adequate Assurance Deposits shall be returned to the Debtor upon the earlier of (a) consensual termination of services between Utility Provider and the Debtor or (b) the

effective date of a confirmed Chapter 11 plan; (c) dismissal of the Case, or (d) agreement of the Utility Provider with the Debtor.

The Debtor intends to pay post-petition obligations owed to the Utility Providers in a timely manner. The Debtor expects that its cash flow from operations or from its substantial cash reserve will be sufficient to pay post-petition obligations related to its utility services.

The Debtor submits that the Adequate Assurance Deposit, in conjunction with the Debtor's demonstrated ability to pay for future utility services in the ordinary course of business (together, the "**Proposed Adequate Assurance**"), constitutes sufficient adequate assurance to the Utility Providers. If any Utility Provider believes additional assurance is required, that Utility Provider may request such assurance pursuant to the procedures set forth below.

As a condition of requesting and accepting an Adequate Assurance Deposit, and absent compliance with the Adequate Assurance Procedures (defined below), the requesting Utility Provider shall be deemed to have (a) stipulated that the Adequate Assurance Deposit constitutes adequate assurance of payment of such Utility Provider within the meaning of Section 366 of the Bankruptcy Code, and (b) waived any right to seek additional or different adequate assurance during the course of this Case. Likewise, any Utility Provider that does not request an Adequate Assurance Deposit by the Request Deadline and does not file an objection to the Motion or pursuant to the Adequate Assurance Procedures (as described below) shall be deemed to have adequate assurance that is satisfactory to it within the meaning of Section 366 of the Bankruptcy Code.

In light of the severe consequences to the Debtor and its operations of any interruption in services or inability to obtain utility services from the Utility Providers, but recognizing the right of the Utility Providers to evaluate the Proposed Adequate Assurance on a case-by-case basis, the

8

Debtor proposes that the Court approve and adopt the following procedures (the "**Adequate Assurance Procedures**").

a.   The Debtor will mail a notice of the hearing date and a copy of this motion to the Utility Providers on the Utility Service List so that notice of this Motion is received within 21 days of the Final Hearing.

b.   If a Utility Provider is not satisfied with the Proposed Adequate Assurance and seeks additional assurance of payment in the form of deposits, prepayments, or otherwise, it must serve a request (an "**Additional Assurance Request**") upon (i) proposed counsel for the Debtor, Parsons Behle & Latimer, 201 S. Main Street, Suite 1800, Salt Lake City, Utah, 84111, Attn: Brian Rothschild, (ii) the Office of the United States Trustee for the District of Utah, 405 South Main Street, Suite 300, Salt Lake City, Utah 84111, and (iii) the official committee of unsecured creditors, if any, formed in this Case (collectively, the "**Notice Parties**").

c.   Any Additional Assurance Request must (i) be made in writing, (ii) set forth the location(s) for which utility services are provided, (iii) include a summary of the Debtor's payment history relevant to the affected account(s), including any security deposits, (iv) certify the amount that is equal to one month of utility service it provides to the Debtor, calculated as a historical average over the past 12 months, and (v) explain why the Utility Provider believes the Debtor's Adequate Assurance Deposit is not sufficient adequate assurance of future payment.

d.   Upon the Debtor's receipt of any Additional Assurance Request at the addresses set forth in Subsection b. above, the Debtor shall have 14 days from the receipt of such Additional Assurance Request (the "**Resolution Period**") to negotiate with such Utility Provider to resolve such Utility Provider's request for additional assurance of payment.

e.   The Debtor may resolve any Additional Assurance Request by mutual agreement with the Utility Provider and without further order of the Court, and may, in connection with any such agreement, provide a Utility Provider with additional adequate assurance of future payment, including, without limitation, cash deposits, prepayments, and other forms of security, without further order of the Court if the Debtor believes such additional assurance is reasonable.

f.   If the Debtor determines that the Additional Assurance Request is not reasonable and cannot reach an alternative resolution with the Utility Provider during the Resolution Period, the Debtor, during or immediately after the Resolution Period, will request a hearing before the Court to determine the adequacy of assurances of payment with respect to a particular Utility Provider (the "**Determination Hearing**") pursuant to Section 366(c)(3) of the Bankruptcy Code.

g. Pending resolution of any such Determination Hearing, the Utility Provider filing such Additional Assurance Request shall be prohibited from altering, refusing, or discontinuing service to the Debtor on account of unpaid charges for pre-petition services or on account of any objections to the Proposed Adequate Assurance.

h. With respect to any Utility Provider that received notice of the Motion at least 21 days before the Final Hearing, the Proposed Adequate Assurance shall be deemed adequate assurance of payment for any Utility Provider that does not make an Additional Assurance Request within 14 days prior to the Final Hearing and does not timely objection to the Motion.  With respect to any subsequently identified Utility Provider, the Proposed Adequate Assurance shall be deemed adequate assurance of payment for any Utility Provider that does not make an Additional Assurance Request within 21 days of receiving a copy of the Interim Order, Final Order, or the Motion.

i. The Utility Providers are forbidden to alter, refuse, or discontinue service on account of any pre-petition charges, or require additional assurance of payment other than the Proposed Adequate Assurance except through the Adequate Assurance Procedures.

## B. The Utility Providers Are Adequately Assured of Payment for Future Services.

Uninterrupted utility service is critical for the success of the Debtor's Case.  Section 366(c)(2) of the Bankruptcy Code provides that a utility provider may discontinue its services to a debtor if the debtor has not furnished adequate assurance of payment within 30 days after the petition date.  *See* 11 U.S.C. § 366(c)(2).  Congress enacted Section 366 of the Bankruptcy Code to protect debtors from utility service cutoffs upon a bankruptcy filing while providing utility companies with adequate assurance that the debtors will pay for post-petition services.  *See* H.R. Rep. No. 95-595, at 350 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6306.  Accordingly, Section 366 of the Bankruptcy Code protects debtors by prohibiting utilities from altering, refusing, or discontinuing services to a debtor solely on account of unpaid pre-petition amounts for a period of 30 days after a Chapter 11 filing.  At the same time, it protects utilities by permitting them to alter, refuse, or discontinue service after 30 days if the debtor has not furnished "adequate assurance" of payment in a form "satisfactory" to the utility.

10

Section 366(c) of the Bankruptcy Code also specifies the factors that a bankruptcy court may consider when determining whether an adequate assurance payment is, in fact, adequate. Specifically, courts no longer may consider (a) the absence of a security deposit before a debtor's petition date, (b) a debtor's history of timely payments, or (c) the availability of an administrative expense priority when determining the amount of a deposit. Notwithstanding these changes, Congress did not intend to abrogate the bankruptcy court's ability to determine the amount of adequate assurance necessary or change the fundamental requirement that assurance of payment must simply be "adequate." *See, e.g., In re DBSI, Inc.*, 405 B.R. 698, 708 (Bankr. D. Del. 2009) ("[g]enerally, adequate assurance is considered to be something less than an absolute guarantee. The particular facts and circumstances of each case are evaluated and taken into consideration to determine what constitutes adequate assurance") (quotation marks omitted); *Steinebach v. Tucson Elec. Power Co. (In re Steinebach)*, 303 B.R. 634, 641 (Bankr. D. Ariz. 2004) ("a utility is only entitled to adequate assurance of payment. Adequate assurance of payment is not, however, absolute assurance.").

Thus, while Section 366(c) of the Bankruptcy Code limits the factors a court can consider when determining whether a debtor has provided adequate assurance of payment, it does not limit the court's ability to determine the amount of payment necessary, if any, to provide such adequate assurance. Instead, Section 366(c) of the Bankruptcy Code gives courts discretion in determining the amount of payment necessary for adequate assurance that they previously had under Section 366(b) of the Bankruptcy Code. *Compare* 11 U.S.C. § 366(b) ("On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.") *with* 11 U.S.C. § 366(c)(3)(a) ("On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2).").

In addition, it is well established that Section 366(b) of the Bankruptcy Code permits a bankruptcy court to find that no adequate assurance payment at all is necessary to provide a utility with adequate assurance of payment. *See Va. Elec. & Power Co. v. Caldor, Inc. -N. Y.*, 117 F.3d 646, 650 (2d Cir. 1997) ("Even assuming that other security should be interpreted narrowly, . . . bankruptcy court's authority to modify the level of the deposit or other security provided for under § 366(b), includes the power to require no deposit or other security where none is necessary to provide a utility supplier with adequate assurance of payment.") (citations omitted). This principle may be applicable in cases where the debtor has made pre-petition deposits or prepayments for services that utilities ultimately will render post-petition. *See also* 11 U.S.C. § 366(c)(1)(A)(v) (recognizing a prepayment for post-petition services as adequate assurance). Accordingly, even after the 2005 revisions to Section 366 of the Bankruptcy Code, courts continue to have discretion to determine the amount of adequate assurance payments and, where appropriate, to determine that no such payment is necessary.

Courts also have recognized that, in determining the requisite level of adequate assurance, bankruptcy courts should "focus upon the need of the utility for assurance, and to require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources." *Va. Elec. & Power Co.*, 117 F.3d at 650 (emphasis in original) (citations omitted); *see also In re Penn Cent. Transp. Co.*, 467 F.2d 100, 103-04 (3d Cir. 1972) (affirming bankruptcy court's ruling that no utility deposits were necessary where such deposits likely would "jeopardize the continuing operation of the [debtor] merely to give further security to suppliers who already are reasonably protected"). Accordingly, demands by a Utility Provider for a guarantee of payment should be refused when the Debtor's specific circumstances already afford adequate assurance of payment.

The Debtor submits that the Proposed Adequate Assurance, and the Adequate Assurance Procedures provide more than adequate assurance of future payment. Furthermore, the Debtor expects that funds from its operations will be sufficient to pay operating costs, including utility costs, as such costs come due.  Moreover, the Debtor has a powerful incentive to stay current on utility obligations because of its reliance on utility services for the operation of its business.

Furthermore, a loss of any one of the utility services and the inevitable disruption to its operations would endanger the Debtor's reorganization.  These factors, which the Court may (and should) consider when determining the amount of any adequate assurance payments, justify a finding that the Proposed Adequate Assurance and the Adequate Assurance Procedures assure the Utility Providers of future payment.

Courts in this and other jurisdictions have approved relief similar to the relief requested by this Motion. *See, e.g., In re VidAngel, Inc.*, 17-29073 (Bankr. D. Utah, doc. 38, October 27, 2017 (interim), November 20, 2017 (final); *In re Vector Arms., Corp.* No. 15-23109 (Bankr. D. Utah. February 19, 2015 (interim), Marcy 12, 2015 (final); *In re Marion Energy Inc.*, Case No. 14-31632 (Bankr. D. Utah, Dec. 1, 2014); *see also In re Amicus Wind Down Corp. (f/k/a Friendly Ice Cream Corp.)*, Case No. 11-13167 (Bankr. D. Del. Oct. 24, 2011) (deeming utilities adequately assured where the debtor established a segregated account containing the aggregate estimated cost for two weeks of utility service); *In re Neb. Book Co.*, No. 11-12005 (Bankr. D. Del. July 21, 2011) (same); *In re L.A.  Dodgers LLC*, No. 11-12010 (Bankr. D. Del. July 19, 2011) (same); *In re Ambassadors Int'l, Inc.*, No. 11-11002 (Bankr. D. Del. Apr. 26, 2011) (same).[3]

---

[3]  Because of the voluminous nature of the orders cited herein, the cited orders are not attached to the Motion.  Copies of these orders are available on request of the Debtor's counsel.

Moreover, if a Utility Provider disagrees with the Debtor's proposed Adequate Assurance, the Adequate Assurance Procedures will enable the parties to negotiate and, if necessary, seek Court intervention without jeopardizing the Debtor's continuing operations.

C.    **The Proposed Adequate Assurance Procedures Are Appropriate.**

The Court has authority to approve the Adequate Assurance Procedures under Section 105(a) of the Bankruptcy Code, which provides that the Court "may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The purpose of Section 105(a) of the Bankruptcy Code is "to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction." 2 COLLIER ON BANKRUPTCY ¶ 105.01 (Alan N. Resnick & Henry J. Sommer, eds. 16th ed. rev. 2014) at 105–6.

The Adequate Assurance Procedures are necessary in this Case. If the Adequate Assurance Procedures are not approved, a Utility Provider could blindside the Debtor by unilaterally deciding on or after the 30th day following the Petition Date that it is not adequately protected and discontinuing service or making an exorbitant demand for payment to continue service. Discontinuation of utility service could shut down operations and damage the Debtor's business, assets, inventory, and employees, resulting in significant harm to the Debtor's business operations that would jeopardize the Debtor's chances of executing a successful reorganization.

## WAIVER OF BANKRUPTCY RULES 6004(A) AND 6004(H)

Given the nature and urgency of the relief requested herein, the Debtor respectfully requests a waiver of (a) the notice requirements under Bankruptcy Rule 6004(a) and (b) the 14-day stay under Bankruptcy Rule 6004(h), to the extent either rule is applicable to avoid irreparable harm to the Debtor and its business.

## DEBTOR'S RESERVATION OF RIGHTS

Nothing in this Motion should be construed as (a) an admission as to the validity or priority of any claim against the Debtor, (b) a waiver of the Debtor's rights to dispute any claims, or (c) an approval or assumption of any agreement, contract, or lease, under Section 365 of the Bankruptcy Code.  Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtor's rights to dispute such claim subsequently.

No prior motion for the relief requested herein has been made to this or any other court.

## V.
## NOTICE

The Debtor has provided notice of this Motion to (a) the Office of the United States Trustee for the District of Utah; (b) the entities listed on the List of Creditors Holding the 20 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) all ECF notice parties and parties who have requested notice on the Court's docket; and (d) the Utility Providers listed on Exhibit C.  In light of the nature of the relief requested in this Motion, the Debtor respectfully submits that no further notice is necessary.

## VI.
## CONCLUSION

For the reasons stated above, the Debtor requests that the Court grant the Motion and enter the Interim Order lodged herewith and, after holding the Final Hearing, the Final Order.

October 15, 2018

Respectfully submitted,

/s/ Brian M. Rothschild

Brian M. Rothschild
J. Thomas Beckett
PARSONS BEHLE & LATIMER
*Proposed Attorneys for Sugarloaf Holdings, LLC*

15

4846-8760-1784v2

## Exhibit A

**Proposed Interim Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re: | Case No. 18-bk-27705 |
| SUGARLOAF, LLC. | Chapter 11 |
| Debtor, | Judge Kevin R. Anderson |

**ORDER GRANTING, ON AN INTERIM BASIS,
DEBTOR'S MOTION FOR AN ORDER
(1) AUTHORIZING BUT NOT REQUIRING THE
DEBTOR TO PAY UTILITY PROVIDERS,
(2) DETERMINING AND APPROVING ADEQUATE
ASSURANCE OF PAYMENT FOR FUTURE UTILITY
SERVICES, (3) PROHIBITING UTILITY PROVIDERS
FROM DISCONNECTING OR REFUSING TO PROVIDE
SERVICE, AND (4) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**")[1] filed by the above-captioned debtor and debtor-in-possession (the "**Debtor**") under Section 105 and 366 of Title 11 of the United States Code (the "**Bankruptcy Code**") for entry of interim and final orders (the "**Interim Order**" and "**Final Order**," respectively) (1) authorizing but not requiring the Debtor to continue to pay pre-petition utility providers, (2) determining and approving adequate assurance of payment for future utility service, (3) prohibiting utility providers from disconnecting or refusing to provide utility service to the Debtor, and (4) granting related relief; all as more fully described in the Motion; and the

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Court, having reviewed the Motion and having heard the statements of counsel in support of the relief requested in the Motion at the hearing before the Court (the "**Hearing**"), finds that the Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334, that this is a core matter under 28 U.S.C. § 157(b)(2), that notice of the Motion and the Hearing were sufficient under the circumstances and that no further notice need be given; and the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein and that such relief is necessary to avoid immediate and irreparable harm to the Debtor's estate,

THEREFORE, IT IS HEREBY ORDERED THAT:

1.     The Motion is GRANTED on an interim basis to the extent provided herein pending the hearing on the Final Order granting the Motion.

2.     Utility Providers are hereby prohibited on an interim basis pending the final hearing from disconnecting, discontinuing, preventing access or refusing to provide utility services to the Debtor.

3.     Any objection to the Motion must be filed in the Court and served on counsel to the Debtor so that such objection is received no later than _____, at _____ (**Prevailing Utah Time**) (the "**Objection Deadline**").  If any party in interest files an objection, the Court will hold a hearing on the relief sought in the Motion on a final basis on _____, at _____( (**Prevailing Utah Time**) (the "**Final Hearing**") at the United States Bankruptcy Court, Judge Kevin R. Anderson, U.S. Courthouse, 350 South Main Street, Courtroom 376, Salt Lake City, Utah 84101. If no objections are filed to the Motion, this Court may enter a Final Order on the Motion without holding the Final Hearing.

4.     Entry of this Interim Order is without prejudice to the rights of any party in interest to interpose an objection to the Motion, and any such objection will be considered on a *de novo* basis at the final hearing.

2

5.      In the interim, the Debtor is authorized and empowered to take all actions necessary to implement the relief granted in this Interim Order.

6.      The Debtor is authorized but not required to continue to pay Utility Providers in the ordinary course of its business including, in its business judgment, on account of amounts due from the pre-petition period.

7.      The Debtor are hereby authorized, but not required, to pay the Adequate Assurance Deposit to Utility Providers that request the Adequate Assurance Deposit as provided in the following procedures (the "**Adequate Assurance Procedures**"), which are approved in their entirety on an interim basis pending the final hearing:

(a)     The Debtor will mail a notice of the hearing date and a copy of this motion to the Utility Providers on the Utility Service List so that notice of this Motion is received within 21 days of the Final Hearing.

(b)     If a Utility Provider is not satisfied with the Proposed Adequate Assurance and seeks additional assurance of payment in the form of deposits, prepayments, or otherwise, it must serve a request (an "**Additional Assurance Request**") upon (i) proposed counsel for the Debtor, Parsons Behle & Latimer, 201 S. Main Street, Suite 1800, Salt Lake City, Utah, 84111, Attn: Brian Rothschild (ii) the Office of the United States Trustee for the District of Utah, 405 South Main Street, Suite 300, Salt Lake City, Utah 84111, and (iii) the official committee of unsecured creditors, if any, formed in this Case (collectively, the "**Notice Parties**").

(c)     Any Additional Assurance Request must (i) be made in writing, (ii) set forth the location(s) for which utility services are provided, (iii) include a summary of the Debtor's payment history relevant to the affected account(s), including any security deposits, (iv) certify the amount that is equal to one month of utility service it provides to the Debtor, calculated as a historical average over the past 12 months, and (v) explain why the Utility Provider believes the Debtor's Adequate Assurance Deposit is not sufficient adequate assurance of future payment.

(d)     Upon the Debtor's receipt of any Additional Assurance Request at the addresses set forth in Subsection b. above, the Debtor shall have 14 days from the receipt of such Additional Assurance Request (the "**Resolution Period**") to negotiate with such Utility Provider to resolve such Utility Provider's request for additional assurance of payment.

(e)     The Debtor may resolve any Additional Assurance Request by mutual agreement with the Utility Provider and without further order of the Court, and may, in connection with any such agreement, provide a Utility Provider with additional

3

adequate assurance of future payment, including, without limitation, cash deposits, prepayments, and other forms of security, without further order of the Court if the Debtor believes such additional assurance is reasonable.

(f) If the Debtor determines that the Additional Assurance Request is not reasonable and cannot reach an alternative resolution with the Utility Provider during the Resolution Period, the Debtor, during or immediately after the Resolution Period, will request a hearing before the Court to determine the adequacy of assurances of payment with respect to a particular Utility Provider (the "**Determination Hearing**") under Section 366(c)(3) of the Bankruptcy Code.

(g) Pending resolution of any such Determination Hearing, the Utility Provider filing such Additional Assurance Request shall be prohibited from altering, refusing, or discontinuing service to the Debtor on account of unpaid charges for pre-petition services or on account of any objections to the Proposed Adequate Assurance.

(h) With respect to any Utility Provider that received notice of the Motion at least 21 days before the Final Hearing, the Proposed Adequate Assurance shall be deemed adequate assurance of payment for any Utility Provider that does not make an Additional Assurance Request within 14 days prior to the Final Hearing and does not timely objection to the Motion.  With respect to any subsequently identified Utility Provider, the Proposed Adequate Assurance shall be deemed adequate assurance of payment for any Utility Provider that does not make an Additional Assurance Request within 21 days of receiving a copy of the Interim Order, Final Order, or the Motion.

(i) The Utility Providers are forbidden to alter, refuse, or discontinue service on account of any pre-petition charges, or require additional assurance of payment other than the Proposed Adequate Assurance except through the Adequate Assurance Procedures.

8. This Order applies to any subsequently identified Utility Provider, regardless of when each Utility Provider was added to the Utility Service List.

9. The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the pre-petition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtor's designation of any particular check or electronic payment request as being approved by this Order.

4

10.     The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

11.     Rule 6003 of the Bankruptcy Rules has been satisfied to the extent applicable.

12.     Notwithstanding Bankruptcy Rules 6004, 7062, or 9014, the terms and conditions of this Order shall be immediately effective upon its entry.

13.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

**[END OF DOCUMENT]**

4846-8760-1784v2

**Exhibit B**

**Proposed Final Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re: | Case No. 18-bk-27705 |
| SUGARLOAF, LLC. | Chapter 11 |
| Debtor, | Judge Kevin R. Anderson |

## FINAL ORDER GRANTING DEBTOR'S MOTION FOR AN ORDER (1) AUTHORIZING BUT NOT REQUIRING THE DEBTOR TO PAY UTILITY PROVIDERS, (2) DETERMINING AND APPROVING ADEQUATE ASSURANCE OF PAYMENT FOR FUTURE UTILITY SERVICES, (3) PROHIBITING UTILITY PROVIDERS FROM DISCONNECTING OR REFUSING TO PROVIDE SERVICE, AND (4) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[1] filed by the above-captioned debtor and debtor-in-possession (the "**Debtor**") seeking entry of an order under Section 105 and 366 of Title 11 of the United States Code (the "**Bankruptcy Code**") for entry of interim and final orders (the "**Interim Order**" and "**Final Order**," respectively) (1) authorizing but not requiring the Debtor to continue to pay pre-petition utility providers, (2) determining and approving adequate assurance of payment for future utility service, (3) prohibiting utility providers from disconnecting or refusing to provide utility service to the Debtor, and (4) granting related relief, all as more fully set forth in the Motion; and the Court, having reviewed the Motion and having heard the statements of counsel in support

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

of the relief requested in the Motion at the hearing before the Court (the "**Hearing**"), finds that the Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334, that this is a core matter under 28 U.S.C. § 157(b)(2), that notice of the Motion and the Hearing were sufficient under the circumstances and that no further notice need be given; and the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein and that such relief is necessary to avoid immediate and irreparable harm to the Debtor's estate,

THEREFORE, IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED as provided herein on a final basis.

2.      Utility Providers are hereby prohibited on a final basis from disconnecting, discontinuing, preventing access or refusing to provide utility services to the Debtor.

3.      The Debtor is authorized, but not required, to continue to pay Utility Providers in the ordinary course of its business including, in its business judgment, on account of amounts due from the pre-petition period.

4.      The Debtor are hereby authorized, but not required, to pay the Adequate Assurance Deposit to Utility Providers that request the Adequate Assurance Deposit as provided in the following procedures (the "**Adequate Assurance Procedures**"), which are approved in their entirety on a final basis:

(a)     If a Utility Provider is not satisfied with the Proposed Adequate Assurance and seeks additional assurance of payment in the form of deposits, prepayments, or otherwise, it must serve a request (an "**Additional Assurance Request**") upon (i) proposed counsel for the Debtor, Parsons Behle & Latimer, 201 S. Main Street, Suite 1800, Salt Lake City, Utah, 84111, Attn: Brian Rothschild, (ii) the Office of the United States Trustee for the District of Utah, 405 South Main Street, Suite 300, Salt Lake City, Utah 84111, and (iii) the official committee of unsecured creditors, if any, formed in this Case (collectively, the "**Notice Parties**").

(b)     Any Additional Assurance Request must (i) be made in writing, (ii) set forth the location(s) for which utility services are provided, (iii) include a summary of the Debtor's payment history relevant to the affected account(s), including any security deposits, (iv) certify the amount that is equal to one month of utility service it provides to the Debtor, calculated as a historical average over the past 12 months, and (v) explain why the Utility Provider believes the Debtor's Adequate Assurance Deposit is not sufficient adequate assurance of future payment.

2

(c)   Upon the Debtor's receipt of any Additional Assurance Request at the addresses set forth in Subsection a. above, the Debtor shall have 14 days from the receipt of such Additional Assurance Request (the "**Resolution Period**") to negotiate with such Utility Provider to resolve such Utility Provider's request for additional assurance of payment.

(d)   The Debtor may resolve any Additional Assurance Request by mutual agreement with the Utility Provider and without further order of the Court, and may, in connection with any such agreement, provide a Utility Provider with additional adequate assurance of future payment, including, without limitation, cash deposits, prepayments, and other forms of security, without further order of the Court if the Debtor believes such additional assurance is reasonable.

(e)   If the Debtor determines that the Additional Assurance Request is not reasonable and cannot reach an alternative resolution with the Utility Provider during the Resolution Period, the Debtor, during or immediately after the Resolution Period, will request a hearing before the Court to determine the adequacy of assurances of payment with respect to a particular Utility Provider (the "**Determination Hearing**") under Section 366(c)(3) of the Bankruptcy Code.

(f)   Pending resolution of any such Determination Hearing, the Utility Provider filing such Additional Assurance Request shall be prohibited from altering, refusing, or discontinuing service to the Debtor on account of unpaid charges for pre-petition services or on account of any objections to the Proposed Adequate Assurance.

(g)   With respect to any Utility Provider that received notice of the Motion at least 21 days before the Final Hearing, the Proposed Adequate Assurance shall be deemed adequate assurance of payment for any Utility Provider that does not make an Additional Assurance Request within 14 days prior to the Final Hearing and does not timely objection to the Motion.  With respect to any subsequently identified Utility Provider, the Proposed Adequate Assurance shall be deemed adequate assurance of payment for any Utility Provider that does not make an Additional Assurance Request within 21 days of receiving a copy of the Interim Order, Final Order, or the Motion.

(h)   The Utility Providers are forbidden to alter, refuse, or discontinue service on account of any pre-petition charges, or require additional assurance of payment other than the Proposed Adequate Assurance except through the Adequate Assurance Procedures.

5.    This Order applies to any subsequently identified Utility Provider, regardless of when each Utility Provider was added to the Utility Service List.

6.    The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the pre-petition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests

when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtor's designation of any particular check or electronic payment request as being approved by this Order.

7.      Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of Bankruptcy Rule 6004(a) and the Local Bankruptcy Rules are satisfied by such notice.

8.      The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

9.      Notwithstanding Bankruptcy Rules 6004(h), 7062, or 9014, the terms and conditions of this Order shall be immediately effective upon its entry.

10.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

**[END OF DOCUMENT]**

4846-8760-1784v2

## EXHIBIT C

## Utility Service List

| Vendor Name | Address | Service | Amount Due |
|---|---|---|---|
| ROCKY MOUNTAIN POWER | PO Box 26000 Portland, OR 97255 | Electric | $286.77 |
| FLOWELL ELECTRIC ASSOCIATION | 495 North 3200 West Fillmore, UT 84631 | Electric | Pre-paid deposit: $85,947.88<br><br>Currently due: $12,254.62 |
| HOLT WASTE | 210 W 300 N St. Fillmore, UT 84631 | Waste Disposal | $38/month |
| CARDWELL DISTRIBUTORS | 8137 South State Street Midvale, UT 84047 | Fueling Services | $3,332.47 |
| LAKE PHILGAS | 70 North 400 East Delta, UT 84624 | Propane Supplier | $925.52 |
| LBiSat | 10288 South Jordan Gateway Sandy, UT 84321 | Satellite Communication and Internet Provider | - |