Michael R. Johnson (7070)
David H. Leigh (9433)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, 14th Floor
Salt Lake City, UT 84111
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: mjohnson@rqn.com
Email: dleigh@rqn.com

*Attorneys for Flowell Electric Association*

IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| In re:<br><br>**SUGARLOAF HOLDINGS, LLC,**<br><br>Debtor. | **Bankruptcy Case No. 18-27705**<br><br>Chapter 11<br><br>Honorable Kevin R. Anderson<br><br>[Filed Electronically] |
|---|---|

**FLOWELL ELECTRIC ASSOCIATION'S RESPONSE AND PARTIAL OBJECTION TO DEBTOR'S MOTION FOR AN ORDER (1) AUTHORIZING BUT NOT REQUIRING THE DEBTOR TO PAY UTILITY PROVIDERS, (2) DETERMINING AND APPROVING ADEQUATE ASSURANCE OF PAYMENT FOR FUTURE UTILITY SERVICES, (3) PROHIBITING UTILITY PROVIDERS FROM DISCONNECTING OR REFUSING TO PROVIDE SERVICE, AND (4) GRANTING RELATED RELIEF, <u>AND WRITTEN REQUEST FOR ADDITIONAL ADEQUATE ASSURANCE TO THE EXTENT NECESSARY</u>**

Flowell Electric Association ("**Flowell**"), a creditor and party-in-interest in the above-entitled Chapter 11 case, through counsel, respectfully submits this response and partial objection to the *Debtor's Motion for an Order (1) Authorizing But Not Requiring the Debtor to Pay Utility Providers, (2) Determining and Approving Adequate Assurance of Payment for*

*Future Utility Services, (3) Prohibiting Utility Providers from Disconnecting or Refusing to Provide Service, and (4) Granting Related Relief* (the "**Utility Motion**").

## INTRODUCTION

The Utility Motion seeks various forms of relief against the Debtor's utility providers, including Flowell. In response to the Debtor's requested relief Flowell responds as follows:

1. Flowell objects to the Debtor's proposed adequate assurance payment for future electricity usage for the reasons set forth in Point II below;

2. Flowell does not object to the payment of all pre-petition amounts that are currently due and owing to it for the Debtor's electricity usage for the reasons set forth in Point IV below;

3. In addition, due to the nature of the Debtor's billing cycle, there is also an amount currently due and owing by the Debtor to Flowell for post-petition electricity usage by the Debtor. This amount should also be paid to Flowell; and

4. Finally, Flowell objects to the Debtor's request that Flowell be prohibited from disconnecting, discontinuing or refusing to provide electric service to the Debtor as being too broad for the reasons set forth in Point V below.

## RESPONSE TO THE DEBTOR'S BACKGROUND STATEMENT OF FACTS AND FLOWELL'S STATEMENT OF ADDITIONAL PERTINENT FACTS

As set forth in the Debtor's Utility Motion, Flowell provides electricity to the Debtor for use in its business operations. Flowell does not object to continuing to provide electricity to the Debtor so long as Flowell is paid in full for the electricity provided to the Debtor pre-petition and the Debtor provides adequate assurance of payment for electricity to be used in the future either in the form of a monthly payment in an amount that is satisfactory to Flowell, or by providing adequate assurance through the Electrical Infrastructure Deposit. The following additional facts are also pertinent to the Utility Motion:

1. Around the end of 2016 or the beginning of 2017, the Debtor spoke with Steve Barton, Flowell's operations manager, about Flowell providing the certain electrical infrastructure so that electricity could be provided to various points on the Debtor's property. [Declaration of Durand Robison at ¶3, which has been filed concurrently herewith.]

2. There were a number of different projects that were discussed between Flowell and the Debtor. [*Id.* at ¶4]

3. Flowell subsequently developed estimates to complete the different projects and discussed with and provided those estimates to the Debtor. The total estimate to complete all of the projects was approximately $245,000. [*Id.* at ¶5]

4. Durand Robison, Flowell's general manager, and Steve Barton met with David Gray, the Debtor's owner, a number of times as the projects and estimates were discussed and plans were made about how to complete the various projects discussed. [*Id.* at ¶6]

5. Mr. Gray decided on a priority order for the projects and the Debtor paid Flowell the sum of $85,947.88 as a pre-paid deposit to be applied as the first projects were being completed. [*Id.* at ¶ 7]

6. The other projects were to be completed at a later time. [*Id.* at ¶8]

7. During the course of the discussions between Flowell and the Debtor, Flowell made it clear that the Debtor would need to pay in advance for all of the electrical infrastructure work. That is why the $85,000 deposit was paid by the Debtor. [*Id.* at ¶9]

8. Flowell also made it clear to the Debtor that it would need to obtain certain easements to fully complete the requested electrical infrastructure on the first projects. Specifically, there was a powerline extension that required an easement from a neighboring landowner. [*Id.* at ¶10]

9. As such, Flowell provided David Gray with an easement form to be signed by the neighbor. Flowell also spoke with the neighbor to try to smooth the way for the easement to be granted. [*Id.* at ¶11]

10. Flowell began to work on the first projects and completed $47,190.57 of work in connection therewith. This amount was applied to the $85,947.88 Electrical Infrastructure Deposit leaving a remaining deposit of $38,757.31. A copy of the statement showing the jobs completed and the amount incurred to complete those jobs is attached hereto as Exhibit A. [*Id.* at ¶12]

11. As part of the work completed, Flowell electrified 8 of the Debtor's pivots around May 16, 2017. Notwithstanding, the Debtor had no water to put in the pivots that could be used for irrigation. [*Id.* at ¶13]

12. The Debtor has also been unable to procure the necessary easements so that the powerline could be placed where the Debtor wants it to run. Fuses cannot be installed where there is no completed powerline. [*Id.* at ¶14]

13. Flowell does not know why the easements have not been obtained, but in the last conversation that Durand Robison had with the neighbor who owned the property on which the easement was needed, Mr. Robison was told by the neighbor that Mr. Gray had not even contacted him. [*Id.* at ¶15]

14. Without the easements Flowell could not (and cannot) complete the powerline extension. [*Id.* at ¶16]

15. The Debtor also has not provided Flowell with any alternative plan to be implemented to solve the easement problem. Until the Debtor either procures the necessary easements from the neighbor or provides Flowell with a workable alternative plan, further work cannot be performed by Flowell to complete the first projects. [*Id.* at ¶17]

4

16.     Flowell also encountered some difficulty in completing the first projects because Mr. Gray was difficult to reach at times and these were complicated projects that required directions from the Debtor about line placement, motor size, etc. and Mr. Gray had some indecision about certain matters. [*Id.* at ¶18]

17.     In order for Flowell to have adequate assurance of payment for the Debtor's use of electricity provided by Flowell it needs the advance monthly payment of $2,500 during the pumping season that runs from April 1st through September 30th and the advance monthly payment of $500 for the rest of the year, i.e., October 1st through March 31st. [*Id.* at ¶19]

18.     Flowell denies that it did not complete the first projects because of the water rights litigation referenced by the Debtor in the Utility Motion or due to pressure from any individual, including anyone serving on its Board. The Debtor has been and will continue to be treated like any other customer by Flowell. [*Id.* at ¶20]

With the foregoing as background the Debtor has made several misstatements about Flowell in the Utility Motion that need to be addressed including the following:

1.     First, the Debtor contends that Flowell required the Debtor to pay Flowell a deposit despite the fact that Flowell's publicly filed tariff with the State of Utah Public Utilities commission requires Flowell to fund new infrastructure to route power to new customers at its own expense. The Debtor provides no support for this contention and does not even specifically identify the tariff to which the Debtor is referring. Flowell is aware of an old Rural Electric Administration tariff filed back in the 1950s but its policies long ago superseded that tariff. Indeed, Flowell has operated under the policy that its customers are responsible to pay for all lines and infrastructure services requested by its customers for at least the last thirty years. Flowell does not follow this tariff and is not aware of an electric cooperative anywhere that continues to follow the tariff.

2.  Second, the Debtor asserts that Flowell improperly failed to complete all of the electrical service infrastructure and only provided electrical service to 8 of the Debtor's 20 pivots and only one of the Debtor's multiple pumps that required a 3 phase connection. However, Flowell was unable to complete the powerline because the Debtor failed to obtain the necessary easements as noted above. Flowell cannot simply walk in and place a powerline on another person's property without the required easement. Thus, it is disingenuous for the Debtor to blame Flowell for not completing the first projects when this problem was of Debtor's own making.

3.  Third, the Debtor contends that Flowell refused to electrify the connection to the 8 pivots until well after the irrigation season had ended. Accordingly, Debtor argues that without the electricity it was not able to water its wheat crop at the critical time and its entire wheat crop failed. This is false. Flowell electrified those pivots around May 16, 2017 which is well within the watering season. More importantly, what the Debtor fails to disclose is that even if the pivots had been electrified earlier it had no water to put in the pivots for irrigation anyway. As such, Debtor's contention that its wheat crop failed because of Flowell's actions is wrong.

4.  Fourth, the Debtor asserts that Flowell refused to provide any explanation as to why it refused to electrify the pivots. That is not the case. The Debtor was aware from the beginning about the need to obtain the required easements and yet it failed to do so. Flowell even tried to facilitate the process of obtaining the easement from the neighbor but was informed that the Debtor had yet to even contact the neighbor. The Debtor is also aware of its delay in making decisions or making changes to those decisions that created further difficulty in completing the first projects.

5.  Fifth, the Debtor contends that Flowell's actions are the result of individuals who are involved in the Water Rights Lawsuits who improperly used their positions to put pressure on the Debtor. In the Utility Motion the Debtor specifically mentions Leo Stott who is a board

6

member at Flowell as a person who improperly used his board position to influence Flowell. The Debtor's accusation is not only speculative but completely unsupported by any facts or evidence whatsoever. Moreover, the allegation is just plain wrong and it should be rejected. The Debtor has been and will continue to be treated like any other Flowell customer.

6.      Sixth, the Debtor states it has no defaults with any of its utility providers (apparently including Flowell) and has a history of prompt and complete payment of all utilities. That is not the case, at least with respect to Flowell. The last statement sent by Flowell to the Debtor on or about September 30, 2018 reflected current charges of $2,239.74, past due charges of $9,866.88 and a late payment fee of $148.00, for a total amount due and owing of $12,254.82. Copies of the billings to the Debtor are attached hereto as Exhibit B. The Debtor also reflects in its Schedule E/F that it owes a pre-petition unsecured debt to Flowell in the amount of $22,269.50. [*See* Dkt. No. 28 at p. 15] Thus, the Debtor's assertion that it has no default to its utility providers and has a history of prompt and complete payment of its utility bills is wrong, at least as to Flowell, and is contradicted by the Debtor's own sworn Schedules and Statements which make clear that the Debtor is not current on its payments to Flowell.

## ARGUMENT

### I.    LEGAL STANDARD UNDER 11 U.S.C. § 366.

The Debtor mainly relies on 11 U.S.C. § 366 to support its requested relief against Flowell and the other utility providers. Sub-section (c)(2) thereof states that "[s]ubject to paragraphs (3) and (4), with respect to a case filed under chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility." The term "adequate assurance of payment can consist of six things: (a) a cash deposit; (b) a

7

letter of credit; (c) a certificate of deposit; (d) a surety bond; (e) a prepayment of utility consumption; or (f) another form of security that is mutually agreed on between the utility and the debtor or the trustee. *See* 11 U.S.C. § 366(c)(1)(A).

Because this is a chapter 11 case "Section 366(c)(2) alters the procedures applicable to the provision of adequate assurance by essentially requiring, in the first instance, that the debtor pay what the utility demands, unless the court orders otherwise." [*See* 3 *Collier on Bankruptcy* at § 366.03[2] at p. 366-8 (16th ed.); *In re Santa Clara Circuits West, Inc.*, 27 B.R. 680, 683 (Bankr. D. Utah 1982)]

## II. THE PROPOSED ADEQUATE ASSURANCE PAYMENT SUGGESTED BY THE DEBTOR IS INSUFFICIENT.

Flowell objects to the Debtor's proposed adequate assurance payment for the use of electricity provided by Flowell. The Debtor is proposing that no adequate assurance payments be made to Flowell because it is holding a deposit from the Debtor that currently amounts to approximately $38,750.00. The problem with the Debtor's proposal is the deposit was not paid to Flowell for the purpose of providing security for the Debtor's use of electricity. Rather, the deposit (hereinafter the "**Electrical Infrastructure Deposit**") was made for the purpose of paying for certain electrical infrastructure (i.e., the first projects) that would be provided by Flowell.

Notwithstanding the foregoing, if the Debtor desires to use the Electrical Infrastructure Deposit as adequate assurance for the payment of its electricity usage and has now decided to abandon the first projects, Flowell has no objection to such proposal so long as it's not required to build any further electrical infrastructure on the Debtor's property unless and until additional deposits are paid to Flowell by the Debtor to cover that work. This also assumes that the

8

Electrical Infrastructure Deposit maintains sufficient funds from which the power bills can be paid. Alternatively, the Debtor should make adequate assurance payments to Flowell in the monthly amount of $1,500 as calculated below.

### III. TO THE EXTENT NECESSARY FLOWELL HEREBY MAKES AN ADDITIONAL ASSURANCE REQUEST PURSUANT TO THE TERMS OF THE UTILITY MOTION.

To the extent the Debtor does not agree that the Electrical Infrastructure Deposit can be used for adequate assurance, subject to the condition that Flowell no longer has any obligation to finish the infrastructure projects discussed unless further deposits are made to complete those projects, then Flowell hereby makes an "Additional Assurance Request" under the terms of the Utility Motion. The additional assurance is needed because the Debtor will not be making any adequate assurance payments to Flowell which is not satisfactory to it. Pursuant to the instructions in the Utility Motion:

(i) the request is in writing;

(ii) the location of the property to which the request applies is known to the Debtor and is the property covered by the billings that are attached as Exhibit B hereto;

(iii) with respect to the Debtor's current payment history as of September 30, 2018 the Debtor owed Flowell current charges of $2,239.74, past due charges of $9,866.88 and a late payment fee of $148.00, for a total amount due and owing of $12,254.82. *See* Exhibit B. The Debtor also reflects in its Schedule E/F that it owes a pre-petition unsecured debt to Flowell in the amount of $22,269.50.

(iv) the amount of the monthly adequate assurance payment is $1,500. This amount is calculated by adding the estimated $2,500 amount of electricity usage that will be needed during the pumping season, i.e. April 1st through September 30th, together with the estimated $500 amount of electricity usage that will be needed during the non-pumping season, i.e. October 1st

9

through March 31st. These amounts total $18,000 and that figure divided by twelve months is $1,500.

(v) the reason why the monthly adequate assurance payments will be needed is explained above.

### IV. FLOWELL DOES NOT OBJECT TO THE PAYMENT OF ALL PRE-PETITION AMOUNTS THAT ARE CURRENTLY DUE AND OWING TO IT FOR ELECTRICITY USAGE.

The Debtor also "requests that the Court authorize, but not require, the Debtor to pay all pre-petition amounts owing to Utility Providers in the ordinary course of its business for administrative convenience and to ensure that the Utility Providers do not cease provision of the utility services as a result of non-payment." [Utility Motion at pp. 6-7] Flowell has no objection to the payment of all pre-petition amounts that are currently due and owing to it for electrical usage by the Debtor and, in fact, requests that the Debtor specifically be ordered to make those payments. As of September 25, 2018 that sum amounted to $12,254.82 with an additional sum due and owing for electricity usage from September 26th through the October 14, 2018, which is the day prior to the petition date. Since Flowell is currently holding the remaining Electrical Infrastructure Deposit it makes sense that such payment come from that deposit if the Debtor is agreeable to that.

Further, due to the nature of the Debtor's billing cycle there is also a post-petition amount due and owing to Flowell for electrical usage from the October 15th petition date through the end of the current billing cycle. This amount should also be paid to Flowell. It likewise makes sense for this amount to be paid from the Electrical Infrastructure Deposit.

V. **FLOWELL OBJECTS TO THE DEBTOR'S REQUEST THAT FLOWELL BE PROHIBITED FROM DISCONNECTING, DISCONTINUING, OR REFUSING TO PROVIDE ELECTRICAL SERVICE TO THE DEBTOR.**

Finally, Flowell objects to the Debtor's request that Flowell be prohibited from disconnecting, discontinuing or refusing to provide electric service to the Debtor. Such requested relief is too broad. Flowell should be permitted to discontinue providing electricity to the Debtor if it fails to make any required monthly adequate assurance payment (assuming it does not provide adequate assurance in the form of the Electrical Infrastructure Deposit subject to the condition set forth above) or if it ever becomes delinquent in the sums due and owing to Flowell for future electrical usage. Flowell should also be given the option to file a motion with the bankruptcy court, to be heard on shortened time and limited notice, requesting that it no longer need to provide electricity to the Debtor should it decide not to pay the pre-petition amounts due and owing to Flowell for electricity usage.

## CONCLUSION

Based on the foregoing, Flowell respectfully requests that the Court grant the motion in part and deny the motion in part based on the additional facts and points made herein.

DATED this 6th day of November, 2018.

RAY QUINNEY & NEBEKER P.C.

/s/ Michael R. Johnson
Michael R. Johnson
*Attorneys for Flowell Electric Association*

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2018, a true and correct copy of the foregoing **FLOWELL ELECTRIC'S RESPONSE AND PARTIAL OBJECTION TO DEBTOR'S MOTION FOR AN ORDER (1) AUTHORIZING BUT NOT REQUIRING THE DEBTOR TO PAY UTILITY PROVIDERS, (2) DETERMINING AND APPROVING ADEQUATE ASSURANCE OF PAYMENT FOR FUTURE UTILITY SERVICES, (3) PROHIBITING UTILITY PROVIDERS FROM DISCONNECTING OR REFUSING TO PROVIDE SERVICE, AND (4) GRANTING RELATED RELIEF, AND WRITTEN REQUEST FOR ADDITIONAL ADEQUATE ASSURANCE TO THE EXTENT NECESSARY** was electronically filed and therefore served via ECF upon the following electronic filing users in this case:

- **David P. Billings**   dbillings@fabianvancott.com, jwinger@fabianvancott.com; mdewitt@fabianvancott.com
- **Michael Ronald Brown**   mbrown@parsonsbehle.com
- **P. Matthew Cox**   bankruptcy_pmc@scmlaw.com
- **John T. Morgan tr**   john.t.morgan@usdoj.gov, James.Gee@usdoj.gov; Lindsey.Huston@usdoj.gov;Suzanne.Verhaal@usdoj.gov
- **Grace S. Pusavat**   gpusavat@parsonsbehle.com
- **Brian M. Rothschild**   brothschild@parsonsbehle.com, ecf@parsonsbehle.com
- **Gerald H. Suniville**   gsuniville@fabianvancott.com, nnelson@fabianvancott.com
- **United States Trustee**   USTPRegion19.SK.ECF@usdoj.gov

/s/ Dianne Burton

1471429

# "Exhibit A"

## SUGARLOAF HOLDINGS - JOBS
### ACCOUNT # 10850

| DATE | JOB # | DESCRIPTION | LABOR | MATERIAL | TRUCKS | FEES | TOTAL |
|---|---|---|---|---|---|---|---|
| SEPT-NOV | 281/107 | INSTALL POLE & CUTOUTS | 663.70 | 1543.96 | 625.45 | $ | 2,833.11 |
| SEPT-NOV | 282/107 | 3-PH TAP/PIVOT BY RUSHTON | 3503.34 | 7569.43 | 2605.25 | (100 HP /17281/107) | 15,478.02 |
| JAN | 17281/107 | SR 100 100 HP WELL SERVICE | 1273.60 | 2485.50 | 850.47 | 1800.00 $ | 11,209.57 |
| JAN | 170511 | PIVOT WEST OF W. STARLEY | 2175.48 | 4406.76 | 1058.77 | 6600.00 $ | 8,841.01 |
| FEB | 17282/107 | 3-PH NORTH OF HARWARDS | 2511.38 | 4303.62 | 1905.23 | 1200.00 $ | 8,820.23 |
| | | | | | | 100.00 $ | |
| MAY | | MATERIAL ONLY | | 8.63 | | $ | 8.63 |

| TOTAL APPLIED TO CREDIT | $ 47,190.57 |
|---|---|

# "Exhibit B"



**FLOWELL ELECTRIC ASSOCIATION**

495 N 3200 W
Fillmore UT 84631-5126

Office Hours: Monday - Thursday 8:00 a.m. - 4:30 p.m.
Friday 8:00 a.m. - 2:00 p.m.
Phone: (435) 743-6214
To View & Pay Your Bill Online Visit
www.flowellelectric.com

209 1 SP 0.470
SUGAR LOAF HOLDINGS LLC          5 209
1471 N 900 W                     C-1 P-3
LEHI UT 84043-1098

| | |
|---|---|
| Statement Date | 09/30/2018 |
| Account Number | |
| Payment Due | 10/22/2018 |

**Account Balance Summary**

| | |
|---|---|
| Previous Balance | 9,866.88 |
| Payment | 0.00 |
| Late Payment Fee | 148.00 |
| Past Due Balance - Due Immediately | 10,014.88 |
| Current Charges | 2,239.74 |
| Total Due | 12,254.62 |

| Meter No. | Services From | To | Days | Readings Previous | Present | Meter Multiplier | kWh Usage | Service Address |
|---|---|---|---|---|---|---|---|---|
| 99-709-506 | 08/30/18 | 09/25/18 | 26 | 8155 | 8155 | 1 | 0 | 4200 N 3200 W STOCK WELL |

**kWh Usage History**

**Current Service Detail**

| | |
|---|---|
| Facilities/Service Charge | 18.00 |
| Utah State Commercial Tax | 0.85 |
| Millard County Tax | 0.23 |
| **Total Electric Charges** | **19.08** |
| **Total Current Charges** | **19.08** |

1.5% INTEREST WILL BE CHARGED ON ALL PAST DUE BALANCES

| PERIOD ENDING | 9/2017 | 9/2018 |
|---|---|---|
| Avg Daily Temp | 71 | 73 |
| Avg Daily kWh | 0 | 0 |
| Avg Daily Cost | $.64 | $.73 |

**KEEP**

**SEND**   Please do not staple or paperclip.

SUGAR LOAF HOLDINGS LLC
1471 N 900 W
LEHI UT 84043-1098

| Account Number | |
|---|---|
| Total Due 10/22/2018 | 12,254.62 |

PLEASE PRINT CHANGE OF ADDRESS OR PHONE # ON BACK OF REMITTANCE STUB.

> Pay your bill online at www.flowellelectric.com
> Pay by Phone toll-free number (844) 425-4305.
> Flowell Electric Online Account Portal gives you account access 24/7.

Flowell Electric Association
495 N 3200 W
Fillmore UT 84631-5126          4



4702000000105000122546200124384409262018 0

Page 3 of 6

### Meter 82-087-473 — (S) CLAYS 61001

| Meter No. | Services From | To | Days | Readings Previous | Present | Meter Multiplier | kWh Usage | Service Address |
|---|---|---|---|---|---|---|---|---|
| 82-087-473 | 08/30/18 | 09/25/18 | 26 | 49398 | 73012 | 1 | 23614 | (S) CLAYS 61001 |

**Current Service Detail**

| | | |
|---|---:|---:|
| Facilities/Service Charge | | 40.00 |
| Energy Charge | 7,935 kWh @ 0.1075 | 853.01 |
| Energy Charge | 15,679 kWh @ 0.0595 | 932.90 |
| **Total Electric Charges** | | **1,825.91** |
| **Total Current Charges** | | **1,825.91** |

1.5% INTEREST WILL BE CHARGED ON ALL PAST DUE BALANCES



**kWh Usage History**

| PERIOD ENDING | 9/2017 | 9/2018 |
|---|---|---|
| Avg Daily Temp | 71 | 73 |
| Avg Daily kWh | 0 | 908 |
| Avg Daily Cost | $.00 | $70.23 |

---

### Meter 67-027-015 — ANDERSON STOCK WELL

| Meter No. | Services From | To | Days | Readings Previous | Present | Meter Multiplier | kWh Usage | Service Address |
|---|---|---|---|---|---|---|---|---|
| 67-027-015 | 08/30/18 | 09/25/18 | 26 | 91588 | 91588 | 1 | 0 | ANDERSON STOCK WELL |

**kWh Usage History**

| PERIOD ENDING | 9/2017 | 9/2018 |
|---|---|---|
| Avg Daily Temp | 71 | 73 |
| Avg Daily kWh | 0 | 0 |
| Avg Daily Cost | $.64 | $.73 |

**Current Service Detail**

| | |
|---|---:|
| Facilities/Service Charge | 18.00 |
| Utah State Commercial Tax | 0.85 |
| Millard County Tax | 0.23 |
| **Total Electric Charges** | **19.08** |
| **Total Current Charges** | **19.08** |

1.5% INTEREST WILL BE CHARGED ON ALL PAST DUE BALANCES

---

### Meter 22-071-351 — ANDERSON HOME

| Meter No. | Services From | To | Days | Readings Previous | Present | Meter Multiplier | kWh Usage | Service Address |
|---|---|---|---|---|---|---|---|---|
| 22-071-351 | 08/30/18 | 09/25/18 | 26 | 37339 | 37511 | 1 | 172 | ANDERSON HOME |



**kWh Usage History**

| PERIOD ENDING | 9/2017 | 9/2018 |
|---|---|---|
| Avg Daily Temp | 71 | 73 |
| Avg Daily kWh | 5 | 7 |
| Avg Daily Cost | $1.55 | $2.56 |

**Current Service Detail**

| | | |
|---|---:|---:|
| Facilities/Service Charge | | 23.00 |
| Energy Charge | 172 kWh @ 0.0750 | 12.90 |
| Utah State Residential Tax | | 1.07 |
| Millard County Tax | | 0.67 |
| **Total Electric Charges** | | **37.64** |
| 200 Watt Area Lights | | 17.75 |
| Garbage Residential | | 11.25 |
| **Total Other Charges/Credits** | | **29.00** |
| **Total Current Charges** | | **66.64** |

1.5% INTEREST WILL BE CHARGED ON ALL PAST DUE BALANCES





| Meter No. | Services From | To | Days | Readings Previous | Present | Meter Multiplier | kWh Usage | Service Address |
|---|---|---|---|---|---|---|---|---|
| 22-071-352 | 08/30/18 | 09/25/18 | 26 | 9548 | 9548 | 1 | 0 | SR 100 QUANSET BLDG 84001 |

**Current Service Detail**

| | |
|---|---|
| Facilities/Service Charge | 23.00 |
| Utah State Residential Tax | 0.46 |
| Millard County Tax | 0.29 |
| Total Electric Charges | 23.75 |
| Total Current Charges | 23.75 |

1.5% INTEREST WILL BE CHARGED ON ALL PAST DUE BALANCES

**kWh Usage History**

| PERIOD ENDING | 9/2017 | 9/2018 |
|---|---|---|
| Avg Daily Temp | 71 | 73 |
| Avg Daily kWh | 0 | 0 |
| Avg Daily Cost | $.77 | $.91 |

---

| Meter No. | Services From | To | Days | Readings Previous | Present | Meter Multiplier | kWh Usage | Service Address |
|---|---|---|---|---|---|---|---|---|
| 81-956-929 | 08/30/18 | 09/25/18 | 26 | 0 | 0 | 1 | 0 | SR 100 STOCK WELL |

**kWh Usage History**

| PERIOD ENDING | 9/2017 | 9/2018 |
|---|---|---|
| Avg Daily Temp | 71 | 73 |
| Avg Daily kWh | 0 | 0 |
| Avg Daily Cost | $.77 | $.91 |

**Current Service Detail**

| | |
|---|---|
| Facilities/Service Charge | 23.00 |
| Utah State Residential Tax | 0.46 |
| Millard County Tax | 0.29 |
| Total Electric Charges | 23.75 |
| Total Current Charges | 23.75 |

1.5% INTEREST WILL BE CHARGED ON ALL PAST DUE BALANCES

---

| Meter No. | Services From | To | Days | Readings Previous | Present | Meter Multiplier | kWh Usage | Service Address |
|---|---|---|---|---|---|---|---|---|
| 17-912-565 | 08/30/18 | 09/25/18 | 26 | 38295 | 38295 | 1 | 0 | PAHVANT QUANSET |



| PERIOD ENDING | 9/2017 | 9/2018 |
|---|---|---|
| Avg Daily Temp | 71 | 73 |
| Avg Daily kWh | 24 | 0 |
| Avg Daily Cost | $.73 | $.73 |

**Current Service Detail**

| | |
|---|---|
| Facilities/Service Charge | 18.00 |
| Utah State Commercial Tax | 0.85 |
| Millard County Tax | 0.23 |
| Total Electric Charges | 19.08 |
| Total Current Charges | 19.08 |

1.5% INTEREST WILL BE CHARGED ON ALL PAST DUE BALANCES

Page 5 of 6

| Meter No. | Services From | Services To | Days | Readings Previous | Readings Present | Meter Multiplier | kWh Usage | Service Address |
|---|---|---|---|---|---|---|---|---|
| 89-516-772 | 08/30/18 | 09/25/18 | 26 | 38450 | 39118 | 1 | 668 | MITCHELL |

**kWh Usage History**

| PERIOD ENDING | 9/2017 | 9/2018 |
|---|---|---|
| Avg Daily Temp | 71 | 73 |
| Avg Daily kWh | 35 | 26 |
| Avg Daily Cost | $2.92 | $2.44 |

**Current Service Detail**

| | | |
|---|---|---|
| Facilities/Service Charge | | 18.00 |
| Energy Charge | 668 kWh @ 0.0625 | 41.75 |
| Utah State Commercial Tax | | 2.81 |
| Millard County Tax | | 0.75 |
| **Total Electric Charges** | | **63.31** |
| **Total Current Charges** | | **63.31** |

1.5% INTEREST WILL BE CHARGED ON ALL PAST DUE BALANCES

| Meter No. | Services From | Services To | Days | Readings Previous | Readings Present | Meter Multiplier | kWh Usage | Service Address |
|---|---|---|---|---|---|---|---|---|
| 92-508-055 | 08/30/18 | 09/25/18 | 26 | 73727 | 73728 | 1 | 1 | PAHVANT /Scales |

**kWh Usage History**

| PERIOD ENDING | 9/2017 | 9/2018 |
|---|---|---|
| Avg Daily Temp | 71 | 73 |
| Avg Daily kWh | 1 | 0 |
| Avg Daily Cost | $.72 | $.74 |

**Current Service Detail**

| | | |
|---|---|---|
| Facilities/Service Charge | | 18.00 |
| Energy Charge | 1 kWh @ 0.0625 | 0.06 |
| Utah State Commercial Tax | | 0.85 |
| Millard County Tax | | 0.23 |
| **Total Electric Charges** | | **19.14** |
| **Total Current Charges** | | **19.14** |

1.5% INTEREST WILL BE CHARGED ON ALL PAST DUE BALANCES

| Meter No. | Services From | Services To | Days | Readings Previous | Readings Present | Meter Multiplier | kWh Usage | Service Address |
|---|---|---|---|---|---|---|---|---|
| 74-088-424 | 08/30/18 | 09/25/18 | 26 | 0 | 0 | 1 | 0 | PIVOT SERV RUSHTON |

**kWh Usage History**

| PERIOD ENDING | 9/2017 | 9/2018 |
|---|---|---|
| Avg Daily Temp | 71 | 73 |
| Avg Daily kWh | 0 | 0 |
| Avg Daily Cost | $.00 | $1.54 |

**Current Service Detail**

| | |
|---|---|
| Facilities/Service Charge | 40.00 |
| **Total Electric Charges** | **40.00** |
| **Total Current Charges** | **40.00** |

1.5% INTEREST WILL BE CHARGED ON ALL PAST DUE BALANCES

| Meter No. | Services From | Services To | Days | Readings Previous | Readings Present | Meter Multiplier | kWh Usage | Service Address |
|---|---|---|---|---|---|---|---|---|
| 75-718-903 | 08/30/18 | 09/25/18 | 26 | 0 | 0 | 1 | 0 | SR 100 75 HP PIVOT SERVICE |

**kWh Usage History**

| PERIOD ENDING | 9/2017 | 9/2018 |
|---|---|---|
| Avg Daily Temp | 71 | 73 |
| Avg Daily kWh | 0 | 0 |
| Avg Daily Cost | $.00 | $1.54 |

**Current Service Detail**

| | |
|---|---|
| Facilities/Service Charge | 40.00 |
| **Total Electric Charges** | **40.00** |
| **Total Current Charges** | **40.00** |

1.5% INTEREST WILL BE CHARGED ON ALL PAST DUE BALANCES



| Meter No. | Services From | To | Days | Readings Previous | Present | Meter Multiplier | kWh Usage | Service Address |
|---|---|---|---|---|---|---|---|---|
| 75-718-902 | 08/30/18 | 09/25/18 | 26 | 0 | 0 | 1 | 0 | 3700 N 2600 W PIVOT STAND |

**kWh Usage History**

| PERIOD ENDING | 9/2017 | 9/2018 |
|---|---|---|
| Avg Daily Temp | 71 | 73 |
| Avg Daily kWh | 0 | 0 |
| Avg Daily Cost | $.00 | $1.54 |

**Current Service Detail**

| | |
|---|---|
| Facilities/Service Charge | 40.00 |
| Total Electric Charges | 40.00 |
| Total Current Charges | 40.00 |

1.5% INTEREST WILL BE CHARGED ON ALL PAST DUE BALANCES

| Meter No. | Services From | To | Days | Readings Previous | Present | Meter Multiplier | kWh Usage | Service Address |
|---|---|---|---|---|---|---|---|---|
| 75-718-895 | 08/30/18 | 09/25/18 | 26 | 1 | 1 | 1 | 0 | 4200 N 3200 W SR 100 PIVOT SERVICE |

**kWh Usage History**

Previous Year | Current Year

| PERIOD ENDING | 9/2017 | 9/2018 |
|---|---|---|
| Avg Daily Temp | 71 | 73 |
| Avg Daily kWh | 0 | 0 |
| Avg Daily Cost | $.00 | $1.54 |

**Current Service Detail**

| | |
|---|---|
| Facilities/Service Charge | 40.00 |
| Total Electric Charges | 40.00 |
| Total Current Charges | 40.00 |

1.5% INTEREST WILL BE CHARGED ON ALL PAST DUE BALANCES