**This order is SIGNED.**

Dated: April 2, 2019



*ar*

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF UTAH

| In re: | Bankruptcy Number: 18-27705 |
|---|---|
| SUGARLOAF HOLDINGS, LLC. | Chapter 11 |
| Debtor. | Hon. Kevin R. Anderson |

### MEMORANDUM DECISION ON FEE APPLICATION OF J. PHILIP COOK, LLC

The Debtor employed J. Philip Cook, LLC ("Cook") to provide appraisal services in connection with the final hearing on cash collateral. Unfortunately, Cook began billing for services on November 5, 2018, but the application to employ was filed on November 16, 2018. Between November 5 and November 15, Cook billed a total of $10,947.50. The Court subsequently approved Cook's employment, but with no mention as to its *nunc pro tunc* application.[1] The Debtor has now filed its application for compensation for Cook in the total amount of $33,457.50.[2]

The Court has reviewed the application and finds that all services were reasonable and necessary. However, the issue remains whether the Court can grant *nunc pro tunc* effect to the application to employ, and whether under Tenth Circuit law, Cook must be denied the $10,947.50 in compensation for services provided before the filing of its application to employ.

---

[1] Docket No. 62.
[2] Docket No. 77.

**I.    Analysis**

The Tenth Circuit takes a bright-line approach to this question, holding that unless and until a professional is employed under § 327, such professional is merely a "volunteer" to the estate.[3] While the bankruptcy court generally has some discretion to retroactively approve the employment of a professional, such an equitable remedy is appropriate "only in the most extraordinary circumstances."[4]

In determining whether the facts constitute extraordinary circumstances sufficient to support *nunc pro tunc* relief, bankruptcy courts in the Tenth Circuit have considered the factors articulated in the case of *In re Arkansas Co., Inc.*, 798 F.2d 645, 650 (3d Cir. 1986).[5] The first factor is whether the court would have approved the employment if it had been timely filed. This factor favors Cook because the Court did approve its employment. The second factor involves the following questions: (1) whether the applicant or some other person bore responsibility for applying for approval; (2) whether the applicant was under time pressure to begin service without approval; (3) the amount of delay after the applicant learned that initial approval had not been granted; and (4) the extent to which compensation to the applicant will prejudice innocent third parties. *Id*. The Court will consider these points.

1. <u>Whether the Applicant or Some Other Person Bore Responsibility for Applying for Approval</u>? Cook is not a lawyer but an appraiser. Therefore, the application needed to be filed by debtor's counsel. Nonetheless, Cook has provided appraisal services in other bankruptcy cases, and thus it is, or should be, familiar with the bankruptcy requirements for employment.[6] While

---

[3] *Mark J. Lazzo, P.A. v. Rose Hill Bank (In re Schupbach Investments, LLC)*, 808 F.3d 1215, 1219 (10th Cir. 2015).
[4] *Id*. at 1220.
[5] *See In re Novinda Corp.*, 2017 Bankr. LEXIS 1006, 2017 WL 1284715, at *2 (Bankr. D. Co.) and *In re Kearney*, 581 B.R. 644 (Bankr. D. N.M. 2018).
[6] Docket No. 113, Exhibit A (P. Cook Dep. Trans.) 15:6-16

there was confusion as to whether Cook was an employee of Berkeley Research Group ("Berkeley"), and thus covered by the application for employment of Berkeley filed on October 30, 2018, the Court finds that it was nonetheless Cook's responsibility to communicate with debtor's counsel and to verify that an application covering its employment had been timely filed before it began providing services to the debtor.

    2. <u>Whether the Applicant was Under Time Pressure to Begin Service Without Court Approval</u>. The initial hearing on the Debtor's motion to use cash collateral occurred on October 18, 2018. At the hearing, it was clear that there was a significant dispute between the Debtor and Bank of the West as to the value of the farm, and the need for expert appraisal testimony was discussed. The Court set a final, evidentiary hearing for November 20, 2018. This gave the Debtor approximately 33 days to prepare for the final hearing. Cook commenced appraisal services on November 5, 2019, or seventeen days after the initial hearing.

The Court is aware of some confusion as to whether Cook was an employee of Berkeley Research Group or a separate professional. Nonetheless, these issues were the responsibility of the various professionals to resolve, and they do not constitute "the most extraordinary circumstances" required by the Tenth Circuit. Further, the two and a half weeks between the initial hearing and the commencement of Cook's services was sufficient time to prepare and file an application to employ. Finally, the Court has not heard a compelling reason why the application to employ was not filed sooner or why Cook did not wait for the filing of the application before performing services.

Understandably, completing the appraisal before the final hearing put time pressure on the professionals. However, the filing of an application to employ is not a complex task, and Debtor's counsel has sufficient staff and resources to have accomplished this task without impairing their

ability to prepare for the final hearing on cash collateral. Thus, absent extraordinary evidence to the contrary, the Court finds that the thirty-three days before the initial and final hearing was a reasonable time to find an appraiser, file the application to employ the appraiser, and complete the appraisal. This factor, therefore, weighs against granting *nunc pro tunc* relief.

    3. How Much Delay was there After the Professional Learned that the Application had Not Been Filed? The application to employ was filed eleven days after Cook commenced its services. This is much shorter than the three and one-half months that existed in the *Schupbach* case.[7] Nonetheless, this factor is from the *Arkansas* case of the Third Circuit, and the language of *Schupbach* suggests a bright line approach that would likely minimize, or not include, this factor as a consideration of what constitutes extraordinary circumstances. Thus, the Court finds this factor to be inapplicable to the existence of exceptional circumstances.

    4. Would Granting *Nunc Pro Tunc* Relief Prejudice Third Parties? Again, the Court is not persuaded that the Tenth Circuit would give this factor much weight, as the focus of the Tenth Circuit is on the circumstances that caused the failure to timely file the application rather than the impact *nunc pro tunc* relief would have on other parties-in-interest. Yet, Bank of the West makes the inarguable point that by denying *nunc pro tunc* relief, it leaves the Debtor with more cash to fund its reorganization and frees up money that may ultimately benefit unsecured creditors. Thus, this factor, if anything, argues against granting *nunc pro tunc* relief.

    In summary, against the controlling constraints of the Tenth Circuit, the Court cannot find that Cook has established extraordinary or exceptional circumstances to support a grant of *nunc pro tunc* relief. Such a bright line test can be exceptionally harsh, but it has the virtue of providing an almost absolutely predicable outcome; namely, a professional cannot be compensated from

---

[7] *In re Schupbach Investments, LLC*, 808 F.3d at 1218.

assets of the estate for services rendered prior to the filing of an application to employ under § 327. From the perspective of the Tenth Circuit, the harshness of the rule is intentional and serves to ensure a professional's compliance with the employment requirements of the Bankruptcy Code.[8] Consequently, is less likely that Cook or debtor's counsel will allow this to happen again.

That being said, Cook's services were professional and helpful both to the Debtor and to the Court. If writing on a clean slate, the Court might rule otherwise, but that is not its prerogative. As noted by another court, "the extraordinary circumstances test is meant to counteract such sympathies, and prevent bankruptcy courts from granting relief based purely on 'claims of hardship due to work already performed.'"[9]

## II.   Conclusion

For the reasons stated above, of the $33,457.50 requested by Cook, the Court awards compensation in the amount of $22,510. However, the Court must deny Cook compensation of $10,947.50 for its services performed before the filing of its application to employ.

---

[8] *Id*. at 1220 citation omitted ("The prevailing approach is that a bankruptcy court should grant retroactive retention orders [only] in extraordinary or exceptional circumstances to deter attorneys and other professionals from general nonobservance of section 327.").

[9] *In re Novinda Corp.,* 2017 Bankr. LEXIS 1006, 2017 WL 1284715, at *2 (Bankr. D. Co.) citing to *In re Arkansas Co.*, 798 F.2d at 649.