Brian M. Rothschild, USB #15316
Grace S. Pusavat, USB #15713
Michael R. Brown, USB #16007
Parsons Behle & Latimer
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone:  801.532.1234
Facsimile:  801.536.6111
BRothschild@parsonsbehle.com
GPusavat@parsonsbehle.com
MBrown@parsonsbehle.com
ecf@parsonsbehle.com

*Attorneys for Sugarloaf Holdings, LLC*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| In re: | Case No. 18-27705 |
|---|---|
| SUGARLOAF HOLDINGS, LLC, | Chapter 11 |
| Debtor. | Judge Kevin R. Anderson |

## DEBTOR SUGARLOAF HOLDINGS, LLC'S DISCLOSURE
## STATEMENT IN SUPPORT OF CHAPTER 11 PLAN

This disclosure statement (the "**Disclosure Statement**")[1] is filed in support of the Chapter 11 Plan of Sugarloaf Holdings, LLC (the "**Plan**"), which has been filed with this Disclosure Statement in the Chapter 11 case of Sugarloaf Holdings, LLC (the "**Debtor**" or "**Sugarloaf**") currently pending in the United States Bankruptcy Court for the District of Utah (the "**Bankruptcy Court**" or "**Court**").

---

[1] This Disclosure Statement and the documents accompanying it contain a number of defined terms, which are denoted with capital letters.  Please refer to Article II of the Plan for a complete listing and definitions of the capitalized terms used herein.

If you have a Claim against the Debtor, you should read this Disclosure Statement and the Plan carefully. The Debtor urges all holders of Claims in Impaired Classes entitled to vote on the Plan who receive voting ballots ("**Ballots**") to accept the Plan. This Disclosure Statement, the Plan, and the related materials delivered together herewith are being furnished by the Debtor to holders of Impaired Claims entitled to vote on the Plan under 11 U.S.C. § 1125 in connection with the solicitation by the Debtor of votes to accept or reject the Plan (and the transactions contemplated thereby), as described herein.

**YOU MAY OBJECT TO THE ADEQUACY OF THE DISCLOSURES MADE IN THIS DOCUMENT.** A hearing on the adequacy of the Disclosure statement is set for September 17, 2019, at 10:00 a.m. at the United States Bankruptcy Court, 350 South Main Street, Salt Lake City, UT 84101, Courtroom 376. If you wish to object to the adequacy of the disclosures, you must do so by August 9, 2019.

**YOU MAY ALSO OBJECT TO CONFIRMATION OF THE PROPOSED PLAN.** A hearing on confirmation of the Plan is scheduled for [**TBD**] at the United States Bankruptcy Court, 350 South Main Street, Salt Lake City, UT 84101, Courtroom 376. If you wish to object to the Plan, you must do so by [**TBD**].

**YOUR RIGHTS MAY BE AFFECTED BY THIS DISCLOSURE STATEMENT AND THE PLAN.** You should consider discussing these documents with your attorney.

4832-7517-6339v5

## TABLE OF CONTENTS

ARTICLE 1 INTRODUCTION AND SUMMARY OF PLAN AND CONFIRMATION
PROCESS ...................................................................................................1

    A.    Summary of Treatment under the Plan. ...............................................1

    B.    Disclosure Statement Approval and Confirmation Process. ....................2

    C.    Recommendation to Support the Plan. ................................................3

    D.    Qualifications and Risk Factors. .......................................................3

    E.    General Overview of Chapter 11. ......................................................6

    F.    Classification and Treatment of Claims and Equity Interests Generally ................6

    G.    Good Faith Solicitation under Section 1125. .......................................8

    H.    Confirmation Requirements; Effect of Confirmation. ...........................9

    I.    Sources of Information. ..................................................................10

ARTICLE 2 BACKGROUND OF THE DEBTOR .......................................................11

    A.    Filing of the Debtor's Chapter 11 Cases. ..........................................11

    B.    Nature of the Debtor's Business. .....................................................11

    C.    Events Leading to Chapter 11 Case. .................................................11

    D.    Debtor's Assets. ..........................................................................12

        1.    Real Property and Associated Water Rights .............................12

        2.    Equipment ........................................................................12

        3.    Inventory ..........................................................................13

    E.    Debtor's Liabilities. .....................................................................13

        1.    Water Right Lawsuit ..........................................................13

        2.    Administrative Expenses. ....................................................13

    F.    Current and Historical Financial Conditions. .....................................14

    G.    Debtor's Progress During the Bankruptcy Case. .................................14

        1.    Debtor's Professionals. .......................................................14

ARTICLE 3 RISK FACTORS ...............................................................................15

    A.    Risks Related to Projections and Estimates. ......................................15

    B.    Risk of Nonconfirmation of the Plan. ..............................................16

    C.    Risk of Nonoccurrence of Effective Date of the Plan. ..........................16

ARTICLE 4 CONFIRMATION OF THE PLAN ........................................................16

    A.    Voting Procedures and Requirements ...............................................16

    B.    Acceptance ..................................................................................20

4832-7517-6339v5

C.    Confirmation of the Plan. .......................................................................20

    1.    The Best Interests Test. .................................................................21

    2.    Feasibility. .....................................................................................22

D.    Non-Acceptance and Cramdown. ..........................................................22

    1.    The Plan is Fair and Equitable. ...................................................23

    2.    No Unfair Discrimination. ............................................................24

E.    Confirmation Hearing. ............................................................................24

ARTICLE 5 ALTERNATIVES TO CONFIRMATION OF THE PLAN ...................................25

A.    Liquidation under Chapter 7. .................................................................25

B.    Alternative Plan. .....................................................................................25

ARTICLE 6 CERTAIN FEDERAL INCOME TAX CONSEQUENCES ...................................26

ARTICLE 7 SECURITIES LAWS CONSEQUENCES OF PLAN ...........................................26

ARTICLE 8 CONCLUSION AND RECOMMENDATION ........................................................26

4832-7517-6339v5

# ARTICLE 1
## INTRODUCTION AND SUMMARY OF PLAN AND CONFIRMATION PROCESS

The following introduction and summary is qualified in its entirety by, and should be read in conjunction with, the more detailed information appearing elsewhere in this Disclosure Statement or otherwise referenced herein.  Unless otherwise stated herein, references to "Section" or "§" are to Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "**Bankruptcy Code**").

## A.    Summary of Treatment under the Plan.

By the Plan the Debtor proposes to (a) pay its unclassified administrative priority claims in full; (b) pay Bank of the West in full over time under section 1129(b)(2)(A)(i) of the Bankruptcy Code; (c) pay in full over time its secured creditor, AgCo; (d) pay all general unsecured claims over time; and (e) voluntarily subordinate its insider general unsecured claim so that this claim will not receive any payment until all others are paid in full.  The treatment of Claims and Equity Interests in each class is summarized as follows:

| Class | Type of Allowed Claim or Equity Interest | Impairment/Voting | Recovery/Treatment |
|-------|------------------------------------------|-------------------|--------------------|
| 1 | **First-lien secured: Bank of West** | Impaired<br><br>Entitled to Vote | • Pay in full<br>• Term 7 years<br>• Interest at 6%<br>• Annual payments on 25-year amortization schedule<br>• Retains Security Interests |
| 2 | **Secured Creditor: AgCo** | Impaired<br><br>Entitled to Vote | • Pay in full<br>• Term 5.5 years<br>• Interest at 6%<br>• Annual payments on 5.5-year amortization schedule<br>• Retains Security Interests |

1

| 3 | **All General Unsecured Claims** | Impaired<br><br>Entitled to Vote | • Pay in full<br>• Term 4 years<br>• Interest at Federal Judgment Rate<br>• Semiannual payments on 4-year amortization schedule |
| 4 | **Insider General Unsecured Claim** | Impaired<br><br>Entitled to Vote but insider class | • Insider Claim<br>• Voluntarily subordinated<br>• No payments until all others are paid in full<br>• Will retain note |
| 5 | **Equity Interests in the Debtor** | Unimpaired<br><br>Not entitled to vote | • Unaffected |

All holders of Claims must refer to the Plan for definitive information regarding their precise treatment. Indeed, the Plan provides that, in the event of any inconsistency between it and this Disclosure Statement, the terms of the Plan shall prevail.

**B.      Disclosure Statement Approval and Confirmation Process.**

At a hearing on September 17, 2019, at 10:00 a.m., the Bankruptcy Court will determine whether this Disclosure Statement contains "adequate information" within the meaning of section 1125 of the Bankruptcy Code, which defines "adequate information" as "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan . . . ."

The Bankruptcy Court has scheduled a hearing to consider confirmation of the Plan under section 1129 of the Bankruptcy Code ("**Confirmation**") on [**TBD**] (the "**Confirmation Hearing**"). The Confirmation Hearing may be adjourned from time to time without further

2

notice other than by announcement in the Bankruptcy Court on the scheduled date. Any

objections to Confirmation of the Plan must be in writing and must be filed with the Clerk of

the Bankruptcy Court and served as set forth in a separate notice of hearing provided no later

than [**TBD**]. Rule 3007 of the Federal Rules of Bankruptcy Procedure governs the form of

any such objection.

## C.     <u>Recommendation to Support the Plan.</u>

**THE DEBTOR URGES ALL HOLDERS OF CLAIMS AGAINST THE
DEBTOR TO VOTE FOR THE PLAN.**

As explained in more detail below, the Debtor believes that (1) the Plan provides the

best possible result for the holders of Claims against the Debtor, (2) with respect to each Impaired

Class of Claims, the Distributions under the Plan are greater than the amounts that would be

received if the Debtor were to liquidate under Chapter 7 of the Bankruptcy Code, and

(3) acceptance of the Plan is in the best interest of holders of Claims.

In arriving at its conclusions, the Debtor considered (1) the limited alternatives available

to the Debtor to restructure its debts, (2) the liquidation value of the Debtor's assets, and (3) the

rights, in both payment and security position, of the Debtor's Creditors.

## D.     <u>Qualifications and Risk Factors.</u>

The projected financial information contained herein has not been the subject of an

audit. Subsequent to the date hereof, there can be no assurance (a) that the information and

representations contained herein will continue to be materially accurate, or (b) that this

Disclosure Statement contains all material information.

All holders of Claims and Interests should read and consider carefully the matters

described in the Plan and Disclosure Statement as a whole, including the Risk Factors

described in 0 of this Disclosure Statement.  In making a decision to support or object to the Plan, each creditor must rely on its own examination of the Debtor as described in this Disclosure Statement and the terms of the Plan, including the merits and risks involved.  In addition, Confirmation and consummation of the Plan are subject to conditions precedent that could lead to delays in consummation of the Plan.  There can be no assurance that each of these conditions precedent will be satisfied or waived (as provided in the Plan) or that the Plan will be consummated.

This Disclosure Statement has not yet been approved by order of the Bankruptcy Court as containing adequate information of a kind and in sufficient detail to enable holders of Claims to make an informed judgment with respect to voting to accept or reject the Plan.  However, once approved, the Bankruptcy Court's approval of this Disclosure Statement will not constitute a recommendation or determination by the Bankruptcy Court with respect to the merits of the Plan.

With the exception of historical information, some matters discussed herein, including the projections and valuation analysis described herein are "forward looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995.  Such forward-looking statements are subject to risks, uncertainties, and other factors that could cause actual results to differ materially from future results expressed or implied by such forward-looking statements.

No party is authorized by the Debtor to give any information or make any representations with respect to the Plan other than those in this Disclosure Statement.  No representation or information concerning the Debtor, its future business operations, or the value of its assets has been authorized by the Debtor other than as set forth herein.  Any

4

information or representation given to obtain your acceptance or rejection of the Plan that is different from or inconsistent with the information or representations contained herein and in the Plan should not be relied upon.

This Disclosure Statement has been prepared in accordance with section 1125 of the Bankruptcy Code and not in accordance with federal or state securities laws or other applicable non-bankruptcy law.  Entities holding or trading in or otherwise purchasing, selling, or transferring Claims against the Debtor should evaluate this Disclosure Statement only in light of the purpose for which it was prepared.

This Disclosure Statement has not been approved or disapproved by the Securities and Exchange Commission or by any state securities commission or similar public, governmental, or regulatory authority, and neither such commissions nor any such authority has passed upon the accuracy or adequacy of the statements contained herein.

This Disclosure Statement shall neither be admissible in any other proceeding involving the Debtor or any other party nor be construed to be providing any legal, business, financial, or tax advice.  Each holder of a Claim or Equity Interest should, therefore, consult with its own legal, business, financial, and tax advisors as to any such matters concerning the solicitation, the Plan, or the transactions contemplated thereby.

This Disclosure Statement incorporates by reference the Debtor's Schedules of Assets and Liabilities and Statement of Financial Affairs, as are or may be amended, filed in the chapter 11 case.  Documents filed in this chapter 11 case are publicly available at: http://www.utb.uscourts. gov.

### E.    General Overview of Chapter 11.

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. Generally, under chapter 11, the Debtor is authorized to reorganize its businesses for the benefit of itself and stakeholders.   Formulation of a reorganization plan is the principal objective of chapter 11.  In general, a plan (a) divides claims and equity interests into separate classes, (b) specifies the property or treatment that each class is to receive under the plan, and (c) contains other provisions necessary to the implementation of the plan and reorganization of the Debtor.

In this case, chapter 11 does not require each holder of a Claim or Equity Interest to vote in favor of the Plan in order for the Bankruptcy Court to confirm the Plan.  However, if one class is Impaired, the Plan must be accepted by the holders of at least one class of Claims that is Impaired without considering the votes of "insiders" within the meaning of the Bankruptcy Code.  Distributions to be made under the Plan will be made after Confirmation of the Plan, on the Effective Date, or as soon thereafter as is practicable, or at such other time or times specified in the Plan.

### F.    Classification and Treatment of Claims and Equity Interests Generally

Section 1123(a)(1) of the Bankruptcy Code requires the Plan to classify all Claims (other than Administrative Expenses, Administrative Operating Expenses, and Priority Tax Claims) and Equity Interests.  Section 1122 of the Bankruptcy Code provides that, except for certain Claims classified for administrative convenience, the Plan may place a Claim or Equity Interest in a particular Class only if such Claim or Equity Interest is substantially similar to the other Claims or Equity Interests of such Class.  The Debtor believes that it has classified all Claims and Equity Interests in compliance with the provisions of section 1122 in "**Classes of**

6

**Claims**." If a Claim or Equity Interest holder challenges such classification of Claims or Equity Interests and the Bankruptcy Court finds that a different classification is required for the Plan to be confirmed, the Debtor, to the extent permitted by the Bankruptcy Court, intends to make such reasonable modifications to the classification of Claims or Equity Interests under the Plan to provide for whatever classification might be required by the Bankruptcy Court for Confirmation.

Except to the extent that such modification of classification adversely affects the treatment of a holder of a Claim or Equity Interest and requires solicitation (or resolicitation), acceptance of the Plan by any holder of a Claim or Equity Interest pursuant to this solicitation will be deemed to be a consent to the Plan's treatment of such holder of a Claim or Equity Interest regardless of the Class to which such holder of a Claim or Equity Interest is ultimately deemed to belong.

The Bankruptcy Code also requires that the Plan provide the same treatment for each Claim or Equity Interest in a particular Class unless the holder of a particular Claim or Equity Interest agrees to a less favorable treatment of its Claim or Equity Interest. The Debtor believes that the Plan complies with this standard. If the Bankruptcy Court finds that the Plan does not comply with this standard, it could deny Confirmation of the Plan if the holders of Claims or Equity Interests affected do not consent to the treatment afforded them under the Plan.

In accordance with the Bankruptcy Code, Administrative Expenses and Priority Tax Claims are not classified into Classes. The Plan also provides that expenses incurred by the Debtor during the Case will be paid in full and specifies the treatment proposed for the Claims and Equity Interests in each Class.

4832-7517-6339v5

**G.**   **Good Faith Solicitation under Section 1125.**

The Plan provides that the Debtor, upon Confirmation of the Plan, shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and that the Debtor (and its affiliates, agents, managers, officers, employees, members, advisors, and attorneys) have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer, issuance, sale, and purchase of the securities offered and sold under the Plan, and therefore is not, and on account of such offer, issuance, sale, solicitation, and/or purchase will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer, issuance, sale, or purchase of the securities offered and sold under the Plan.

The Debtor believes that the Plan treats the respective Classes of Claims and Equity Interests fairly and equitably in observance of the absolute priority rule of section 1129(b)(2) of the Bankruptcy Code.  The Debtor believes that the Plan provides each creditor and Equity Interest holder with at least as much, if not more, as it would receive if the Debtor's assets were liquidated under chapter 7 of the Bankruptcy Code.

The Plan is based upon the Debtor's analysis of all Claims asserted or known as of the date hereof and an evaluation of the relative merits of potential conflicting Claims.  The Debtor believes that the overview in the Disclosure Statement of what holders of Claims and Equity Interests will receive under the Plan will be helpful in your consideration of whether you wish to accept or reject the Plan.  Again, this summary does not purport to be complete and should only be relied upon for voting purposes when read in conjunction with the Plan and this Disclosure Statement in their entirety.

8

## H.    Confirmation Requirements; Effect of Confirmation.

The Bankruptcy Code defines acceptance of a plan by an impaired class of claims as acceptance by holders of at least two-thirds in dollar amount, and more than one-half in number, of the claims of that class that actually cast ballots.  The vote of a Creditor may be disregarded if the Bankruptcy Court determines, after notice and hearing, that the acceptance or rejection was not solicited or procured in good faith.  A "Yes" vote will indicate your acceptance of the Plan, while a "No" vote will indicate your rejection of the Plan.  The Debtor urges all parties-in-interest entitled to vote on the Plan to vote "Yes" to accept the Plan.

In addition to this voting requirement, section 1129 of the Bankruptcy Code requires that each holder of a claim that does not consent must receive at least as much value on account of its claim as it would receive in a liquidation under chapter 7 of the Bankruptcy Code.

Confirmation will make the Plan binding upon the Debtor, holders of Claims against and Equity Interests in the Debtor, and all other parties in interest regardless of whether they have accepted the Plan, and such holders of Claims and Equity Interests will be prohibited from receiving payment from, or seeking recourse against, any assets that are distributed to other holders of Claims or Equity Interests under the confirmed Plan.  In addition, Confirmation will serve to enjoin holders of Claims or Equity Interests from taking a wide variety of actions on account of any debt, Claim, liability, Equity Interest, or right that arose prior to the Confirmation Date.  For example, confirmation of the Plan will enjoin holders of Claims and Equity Interests from seeking to enforce Claims against and Equity Interests in the Debtor, whether or not a proof of Claim based on such debt is filed or deemed filed, whether or not such Claim is Allowed, and whether or not the holder of such Claim has accepted the Plan.

9

The implementation of the Plan involves certain risks.  For a discussion of these risks, see certain "Risk Factors" discussed in Article 3 0of this Disclosure Statement.

## I.    Sources of Information.

Except as otherwise expressly indicated, the portions of this Disclosure Statement describing the Debtor, its businesses, properties, management, and the Plan have been prepared from information furnished by the Debtor.

The statements contained in this Disclosure Statement are made as of the date hereof unless another time is specified, and neither the delivery of this Disclosure Statement nor any exchange of rights made in connection with it shall, under any circumstances, create an implication that there has been no change in the facts set forth herein since the date of this Disclosure Statement.

No statements concerning the Debtor, the value of its Estate, or the value of any benefit offered to any creditor or Equity Interest holder in connection with the Plan should be relied on other than as set forth in this Disclosure Statement.  In arriving at a decision, parties should not rely on any representation or inducement made to secure their acceptance or rejection that is contrary to information contained in this Disclosure Statement.  Any such additional representations or inducements should be reported immediately to counsel for the Debtor at **PARSONS BEHLE & LATIMER**, Attn: Brian M. Rothschild 201 S. Main Street, Suite 1800, Salt Lake City, UT 84111, Telephone: (801) 532-1234, BRothschild@parsonsbehle.com.

4832-7517-6339v5

## ARTICLE 2
## BACKGROUND OF THE DEBTOR

A.     **Filing of the Debtor's Chapter 11 Cases.**

On October 15, 2018 (the "**Petition Date**"), the Debtor filed a voluntary chapter

petition under the Bankruptcy Code.  The Debtor continues to operate its business and manage

its property as a debtor-in-possession under sections 1107 and 1108 of the Bankruptcy Code.

No trustee or examiner has been appointed in this case.  No committee of unsecured

creditors or other official committee has been appointed in this case.

B.     **Nature of the Debtor's Business.**

The Debtor is a diversified and technologically advanced farming and ranching

operation headquartered in Lehi, Utah with Debtor's primary farming and ranching operations

in Millard County, Utah.  The Debtor's farming operations produce legumes, short grains, and

animal feed.  Its ranching operations raise and sell beef cattle for market.  The Debtor has

substantial and valuable real estate and equipment.

A further detailed description of the Debtor, its business, and certain of the facts and

circumstances supporting the chapter 11 case are set forth in the "*Declaration of David J.

Gray in Support of First Day Motions*" (Dkt. 9; the "**First Day Declaration**" attached as

Exhibit 1 hereto) that was filed in this case on October 15, 2018 and is incorporated herein by

this reference.

C.     **Events Leading to Chapter 11 Case.**

The Debtor filed this chapter 11 Case primarily because of a complex and costly multi-

party lawsuit relating to a single water right and adverse actions taken by the Debtor's primary

secured creditor, Bank of the West, on the basis that it felt its collateral was imperiled.  The

Debtor sought bankruptcy to reorganize its operations, resolve the lawsuit, and pay its creditors.

**D.**   **Debtor's Assets.**

Sugarloaf's agricultural operations span 7,164.38 acres in Millard County, Utah. Sugarloaf has made heavy investments in agricultural technology.  The technology includes automatic irrigation technology including soil and water sensors that provide real time data to the operator, "wi-fi" controlled start and stop capability, and new efficient pivot sprinklers. The Debtor's technology allows it to sustain agricultural operations with very few employees, which reduces labor costs.  Some seasonal employees or third-party contracts are required at certain times of the year such for certain tasks such as crop harvests or transporting cattle to stockyards for auction.

**1.**   **Real Property and Associated Water Rights**

Sugarloaf's primary valuable assets are its real property and associated water rights, which were appraised in 2017 by appraisers hired by its primary secured creditor Bank of the West.  The 2017 Appraisal Report, Exhibit A to the First Day Declaration at Dkt. 9, found a market value of the property as of May 1-3, 2017 to be $14,716,000.  At a hearing on December 7, 2019, the Court found that Sugarloaf's real property and pivot systems (discussed below) had a value of $15,230,800.

**2.**   **Equipment**

As of the Petition Date, Sugarloaf's second most valuable asset is its farming equipment, including tractors, trailers, trucks, farm implements, and advanced irrigation equipment, which has an aggregate value of approximately $5.5 million.  One piece in particular, Sugarloaf's 19 2017 Zimmatic Pivots, have a value of approximately $4.0 million,

12

and could be sold for more than that amount today because of the increase in steel prices due to the recent imposition by the United States of tariffs on imported steel.

### 3.    Inventory

As of the Petition Date, Sugarloaf had inventory including (1) vaccines, feed, wheat hay, and alfalfa hay valued at approximately $179,000; (2) accounts receivable in the approximate amount of $38,000; and (3) proceeds of the sale of substantially all of its remaining beef cattle in the amount of $587,838.40.  (*See* First Day Declaration, Ex. 1.)

### E.    Debtor's Liabilities.

### 1.    Water Right Lawsuit

In late August 2017, Sugarloaf received notice from the Utah Division of Water Rights that there was a competing claim to title of one of Sugarloaf's water rights and that Sugarloaf would need to seek resolution with the competing party in the courts.  The water right at issue is water right 67-1752, which it had acquired in 2013.  Sugarloaf filed the Water Right Lawsuit suit to protect its rights.  Shortly thereafter, Sugarloaf's neighbors brought suit against Sugarloaf to forfeit the same water right for nonuse.  Sugarloaf owes its attorneys, Kirton McConkie, more than $257,000 in connection with the Water Right Lawsuit.

### 2.    Administrative Expenses.

The Debtor is responsible for paying unclassified Claims entitled to priority as Administrative Expenses of its chapter 11 case, including any Claim arising from the administration of the Debtor's chapter 11 case as provided in section 503 of the Bankruptcy Code that is entitled to priority under section 507(a)(1) of the Bankruptcy Code, including, without limitation, (a) fees and expenses of the Debtor's professionals allowed pursuant to an order of the Bankruptcy Court, and (b) all fees and charges of the U.S. Trustee assessed against

13

the Debtor's estate pursuant to 28 U.S.C. § 1930. The total unpaid amount of these fees and expenses will be approximately $116,436 as of the Confirmation Date.

**F.      Current and Historical Financial Conditions.**

The Debtor has filed monthly operating reports with the Court since the Petition Date. The most recent monthly reports are attached as Exhibit 2. The Debtor also filed its Statement of Financial Affairs and Schedules of Assets and Liabilities on the docket, which are hereby incorporated by reference.

**G.      Debtor's Progress During the Bankruptcy Case.**

The Debtor made good use of the "breathing spell" afforded by the automatic stay of section 362(a) of the Bankruptcy Code to reorganize its affairs. Sugarloaf's operations are profitable and provide sufficient cash flow to meet all of its obligations on a current basis when it is allowed to use its free cash.

**1.      Debtor's Professionals.**

During the chapter 11 case, the Debtor engaged the following professionals to assist it in its chapter 11 case and related matters as follows:

| Professional | Role |
| --- | --- |
| Parsons Behle & Latimer | Chapter 11 Attorneys |
| J. Phillip Cook, LLC | Forensic Real Estate Professional |
| Paul Shields and Berkeley Research Group | Financial Advisors |
| Dwyane Assay and Squire & Company, PC | Public Accountants |

14

## ARTICLE 3
## RISK FACTORS

Holders of Claims should read and consider carefully the factors set forth below, as well as the other information set forth in this Disclosure Statement (and the documents delivered together herewith and/or incorporated by reference herein), prior to voting to accept or reject the Plan.

**A.**    **Risks Related to Projections and Estimates.**

This Disclosure Statement and the materials incorporated by reference herein include "forward looking statements" as defined in section 27A of the Securities Act of 1933 and section 21E of the Securities Exchange Act of 1934.  All statements other than statements of historical facts included in this Disclosure Statement and the incorporated materials regarding the Debtor's financial position, business strategies, plans, and objectives of management, including, but not limited to, words such as "anticipates," "expects," "estimates," "believes," and "likely," are forward-looking statements.  The Debtor believes that its current views and expectations are based on reasonable assumptions; however, there are significant risks and uncertainties that could significantly affect expected results.  Important factors that could cause actual results to differ materially from those in the forward-looking statements ("**Cautionary Statements**") are disclosed throughout this Disclosure Statement.  All subsequent written and oral forward-looking statements attributable to the Debtor, or persons acting on its behalf, are expressly qualified in their entirety by the Cautionary Statements.  The Debtor does not intend to update or otherwise revise the forward-looking statements contained herein to reflect events or circumstances arising after the date hereof or to reflect the occurrence of unanticipated events.

4832-7517-6339v5

B.      **Risk of Nonconfirmation of the Plan.**

The Plan might not be confirmed by the Bankruptcy Court if it finds that the Plan fails to meet any of the requirements of the Bankruptcy Code, including those identified below. Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation and requires, among other things, that the Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor, and that the value of distributions to dissenting creditors not be less than the value of distributions such creditors would receive if the Debtor is liquidated under chapter 7 of the Bankruptcy Code.  The Debtor believes that the Plan satisfies all requirements for Confirmation under the Bankruptcy Code. There can be no assurance, however, that the Bankruptcy Court will also conclude that the requirements for Confirmation of the Plan have been satisfied.

C.      **Risk of Nonoccurrence of Effective Date of the Plan.**

Even if the Plan is Confirmed, the Effective Date for the Plan may not occur.  The Plan sets forth conditions to the occurrence of the Effective Date of the Plan, which may not be satisfied by the Effective Date.  The Debtor believes that it will satisfy all requirements for consummation required under the Plan.   There can be no assurance, however, that the Bankruptcy Court will also conclude that the requirements for consummation of the Plan have been satisfied.

**ARTICLE 4**
**CONFIRMATION OF THE PLAN**

A.      **Voting Procedures and Requirements**

The Debtor is providing copies of this Disclosure Statement and Ballots to all known holders of Impaired Claims who are entitled to vote on the Plan.

16

Pursuant to the provisions of the Bankruptcy Code, only Classes of Claims that are Impaired under the terms and provisions of the Plan and entitled to receive a Distribution thereunder are entitled to vote to accept or reject the Plan. Accordingly, Classes of Claims that are Unimpaired under the terms and provision of the Plan are not entitled to vote on the Plan. In addition, Classes of Claims or Interests that are not entitled to a Distribution under the terms and provisions of the Plan are deemed to have rejected the Plan and are not entitled to vote to accept or reject the Plan.

The following voting procedures (the "**Voting Procedures**") have been established with respect to the amount and classification of Claims and Interests, and the determination of the validity of Ballots submitted, for voting purposes:

1.      Unless otherwise provided in the Tabulation Rules (described below), a Claim will be deemed temporarily allowed for voting purposes in an amount equal to (a) if a proof of Claim has not been timely filed, the amount of such Claim as set forth in the Schedules or (b) the amount of such Claim as set forth in a timely filed proof of Claim.

2.      If a Claim is deemed Allowed in accordance with the Plan, such Claim will be temporarily allowed for voting purposes in the deemed Allowed amount set forth in the Plan.

3.      If a Claim for which a proof of Claim has been timely filed is marked in whole or in part in the Schedules as contingent, unliquidated, and/or disputed, such portion of the Claim that is marked as contingent, unliquidated, or disputed will be temporarily allowed for voting purposes in the amount of $1.00.

4.      If a Claim has been estimated or otherwise allowed for voting purposes by order of the Court, such Claim will be temporarily allowed for voting purposes in the amount so estimated or allowed by the Court.

4832-7517-6339v5

5.      If a Creditor casts more than one Ballot voting the same Claim before the voting deadline, the last dated Ballot received before the voting deadline will be deemed to reflect the voter's intent and thus will supersede any prior Ballots.

6.      Creditors will be required to vote all of their Claims within a particular Class under the Plan either to accept or reject the Plan and may not split their vote. A Ballot (or a group of Ballots within a Plan Class received from a single Creditor) that partially rejects and partially accepts the Plan will not be counted.

In addition, the following tabulation procedures (the "**Tabulation Rules**") have been established for the tabulation of Ballots:

1.      If a holder of a Claim identifies a claim amount on its Ballot that is less than the amount otherwise calculated in accordance with these Tabulation Rules, the Voting Procedures, and/or the Schedules, the Claim will be temporarily allowed for voting purposes in the lesser amount identified on such Ballot.

2.      Ballots that are otherwise validly executed but do not indicate either acceptance or rejection of the Plan will not be counted.

3.      The Debtor will not accept Ballots by e-mail or facsimile transmission.

4.      Only Ballots that are timely received with signatures will be counted. Unsigned Ballots will not be counted.

5.      Ballots postmarked prior to the voting deadline, but received after the voting deadline, will not be counted.

6.      Ballots that are illegible, or contain insufficient information to permit the identification of the Creditor, will not be counted.

4832-7517-6339v5

7.      If a Creditor simultaneously casts inconsistent duplicate Ballots with respect to the same Claim, such Ballots will not be counted.

8.      Unless otherwise ordered by the Court, questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawal of Ballots shall be determined by the Debtor with the assistance of its counsel, which determination shall be final and binding.

IN ORDER TO BE COUNTED, EXCEPT TO THE EXTENT THE DEBTOR SO DETERMINES OR AS PERMITTED BY THE BANKRUPTCY COURT PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 3018, BALLOTS MUST BE SIGNED AND RETURNED SO THAT THEY ARE ACTUALLY RECEIVED NO LATER THAN 4:00 P.M. (PREVAILING MOUNTAIN TIME) ON OCTOBER 10, 2019, AT THE FOLLOWING ADDRESS:

> **PARSONS BEHLE & LATIMER**
> Attn: Brian Rothschild
> 201 S. Main Street Suite 1800
> Salt Lake City, UT 84111

Please follow the directions contained on the Ballot carefully.  As mentioned above, if your Ballot is not signed and returned as described, it will not be counted.  If your Ballot is damaged or lost, or if you do not receive a Ballot, you may request a replacement by addressing a written request to the foregoing counsel for the Debtor at the address set forth above or by e-mailing Debtor's counsel at brothschild@parsonsbehle.com

The process of soliciting acceptance of the Plan must be fair and open without outside influence in the form of representations, inducements, or duress of any kind.  To the extent that you believe solicitation of your vote from any party is being sought outside of the judicially-

approved and statutorily-defined disclosure requirements and Voting Procedures, please contact Debtor's counsel.

## B.   <u>Acceptance</u>

Acceptance of the Plan requires that each Impaired Class of Claims or Interests (as classified therein) accepts the Plan, with certain exceptions discussed below.  Classes of Claims and Interests that are not Impaired under the Plan are deemed to have accepted the Plan. Acceptances of the Plan are being solicited only from those persons who hold Claims or Interests in an Impaired Class.  The Bankruptcy Code defines acceptance of the Plan by a Class of Claims as acceptance by the holders of at least two-thirds (2/3) in dollar amount and a majority in number of Claims of that Class; provided, however, only votes of holders of Claims that actually vote to accept or reject the Plan are counted.

## C.   <u>Confirmation of the Plan.</u>

Section 1129 of the Bankruptcy Code requires the Bankruptcy Court to make a series of determinations concerning the Plan, including, without limitation, (a) that the Plan has classified Claims and Equity Interests in a permissible manner; (b) that the contents of the Plan complies with the technical requirements of the Bankruptcy Code; (c) that the Debtor has proposed the Plan in good faith; and (d) that the Debtor has made disclosures concerning the Plan that are adequate and include information concerning all payments made or promised in connection with the Plan or otherwise.  The Debtor believes that all of these conditions have been or will be met with respect to the Plan.

The Bankruptcy Court must make independent findings respecting the Plan's feasibility and whether the Plan is in the best interests of holders of Claims and Equity Interests.

4832-7517-6339v5

1.     **The Best Interests Test.**

Whether or not the Plan is accepted by each Impaired Class of Claims entitled to vote on the Plan, in order to confirm the Plan, the Bankruptcy Court must independently determine, pursuant to section 1129(a)(7) of the Bankruptcy Code, that the Plan is in the best interests of each holder of an Impaired Claim or Equity Interest that has not voted to accept the Plan. This requirement is satisfied if the Plan provides each non-accepting holder of a Claim or Equity Interest in such Impaired Class a recovery on account of such holder's Claim or Equity Interest that has a value, as of the Effective Date, at least equal to the value of the distribution each such holder would receive in a liquidation of the Debtor under chapter 7 of the Bankruptcy Code.

To determine the value that holders of Impaired Claims and Equity Interests would receive if the Debtor was liquidated under chapter 7, the Bankruptcy Court must determine the aggregate dollar amount that would be generated if the Debtor's bankruptcy case were converted to chapter 7 and a chapter 7 trustee liquidated the Debtor's assets (the "**Liquidation Value**"). The Liquidation Value would consist of the net proceeds from the disposition of the Debtor's assets, augmented by cash held by the Debtor, and reduced by certain increased costs and claims that arise in chapter 7 that do not arise in chapter 11. Attached hereto as <u>Exhibit 3</u> is a liquidation analysis (the "**Liquidation Analysis**") showing amounts available to be distributed to holders of Allowed Claims. The Debtor believes that the Plan provides recoveries to holders of Allowed Claims and Equity Interests (other than Priority Claims) that are not less than – and likely far greater than – the recoveries to holders of Claims and Equity Interests in a chapter 7 liquidation. Thus, the Debtor believes that section 1129(a)(7) of the Bankruptcy Code is satisfied.

## 2.      Feasibility.

Even if the Plan is accepted by each Class of Claims voting on the Plan, and even if the

Bankruptcy Court determines that the Plan satisfies the "best interests" test, the Bankruptcy

Code requires that, in order for the Plan to be confirmed by the Bankruptcy Court, the Debtor

must demonstrate that consummation of the Plan is not likely to be followed by liquidation or

further financial reorganization of the Debtor.  For purposes of determining whether the Plan

meets this requirement, the Debtor has analyzed its ability to meet its obligations under the

Plan and determined that the Debtor will be able to make all payments contemplated by the

Plan.

## D.      <u>Non-Acceptance and Cramdown.</u>

Pursuant to Section 1129(b) of the Bankruptcy Code, the Bankruptcy Court may confirm

the Plan even if each Impaired Class does not accept the Plan.  This procedure is commonly

referred to as a "cramdown."  Section 1129(b) provides that upon request of the proponent of the

Plan, the Bankruptcy Court shall confirm the Plan despite the lack of acceptance by an Impaired

Class or Classes if the Bankruptcy Court finds that (1) the Plan does not discriminate unfairly with

respect to each non-accepting Impaired Class, (2) the Plan is "fair and equitable" with respect to

each non-accepting Impaired Class, (3) at least one Impaired Class has accepted the Plan (without

counting acceptances by insiders), and (4) the Plan satisfies the requirements set forth in Section

1129(a) other than Section 1129(a)(8).   In general, Section 1129(b) permits Confirmation

notwithstanding non-acceptance by an Impaired Class if that Class and all junior Classes are

treated in accordance with the "absolute priority" rule, which requires that the dissenting Class be

paid in full before a junior Class may receive anything under the Plan.

22

### 1.    The Plan is Fair and Equitable.

The Bankruptcy Code establishes different "fair and equitable" tests for holders of Secured Claims, Unsecured Claims, and Interests.  As to the dissenting Class, the test sets different standards, depending on the type of Claims or Interests in such Class.

#### (i)    *Secured Claims.*

With respect to a Class of Secured Claims that does not accept the Plan, the Debtor must demonstrate to the Bankruptcy Court that either (i) the holders of such Secured Claims will retain the liens securing such Claims and will receive on account of such Claim deferred Cash payments totaling at least the Allowed amount of such Claim, of a value, as of the Effective Date, of at least the value of such holder's interest in such property or (ii) the holders of such Claims will realize the indubitable equivalent of such Claims under the Plan.

#### (ii)    *General Unsecured Claims.*

With respect to a Class of General Unsecured Claims that does not accept the Plan, the Debtor must demonstrate to the Bankruptcy Court that either (i) each holder of a General Unsecured Claim of the dissenting Class receives or retains under the Plan property of a value equal to the Allowed amount of its General Unsecured Claim or (ii) the holders of Claims or Interests that are junior to the Claims of the holders of such General Unsecured Claims will not receive or retain any property under the Plan.

#### (iii)    *Interests.*

With respect to a Class of Interests that does not accept the Plan, the Debtor must demonstrate to the Bankruptcy Court that (i) each holder of an Interest of the dissenting Class receives or retains, on account of such Interest, property of a value equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such Interest or (ii) the holders

23

4832-7517-6339v5

of any Interest that is junior to the Interests of such Class will not receive or retain any property under the Plan.

The Debtor believes that the Plan is fair and equitable with respect to each Class treated therein.

### 2.      No Unfair Discrimination.

A Chapter 11 plan "does not discriminate unfairly" with respect to a non-accepting class if the value of the Cash and securities to be distributed to the non-accepting class is equal or otherwise fair when compared to the value of distributions to other classes whose legal rights are the same as those of the non-accepting class. Since all similarly situated holders of Claims or Interests are classified together and all Claims or Interests in a given Class are treated identically, the Debtor believes the Plan does not unfairly discriminate against any Class.

### E.      Confirmation Hearing.

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a confirmation hearing. Section 1128(b) provides that any party in interest may appear and be heard with respect to, or object to, confirmation of a plan. Notice of the Confirmation Hearing will be provided to all holders of Claims and Equity Interests and other parties in interest (the "**Confirmation Notice**"). The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement of the adjourned date made at the Confirmation Hearing or any adjournment thereof. Objections to Confirmation of the Plan must be made in writing, specifying in detail the name and address of the person or Entity objecting, the grounds for the objection, and the nature and amount of the Claim or Equity Interest held by the objector. Objections must be filed with the Bankruptcy Court, together with proof of service, and served upon the parties so designated in the

24

Confirmation Notice, on or before the time and date designated in the Confirmation Notice as being the last date for serving and filing objections to Confirmation of the Plan.  Objections to Confirmation of the Plan are governed by Federal Rule of Bankruptcy Procedure 9014 and the Local Rules of the Bankruptcy Court.

## ARTICLE 5
## ALTERNATIVES TO CONFIRMATION OF THE PLAN

If the Bankruptcy Court does not confirm the Plan, or the Debtor does not consummate the Plan, the alternatives to the Plan include (a) conversion and liquidation of the Debtor under chapter 7 of the Bankruptcy Code, (b) an alternative Plan under chapter 11 of the Bankruptcy Code; or (c) dismissal of the Debtor's chapter 11 case.

**A.**    **Liquidation under Chapter 7.**

If the Plan cannot be confirmed or consummated, this case may be converted to a case under chapter 7 of the Bankruptcy Code.  In that event, a trustee would be appointed to liquidate the assets of the Debtor for distribution to holders of Claims and Equity Interests in accordance with the priorities established by the Bankruptcy Code.  As more fully demonstrated in the Liquidation Analysis attached as Exhibit 3, the liquidation value of the Debtor would not exceed $14,173,978.  Consequently, the Debtor believes that Confirmation of the Plan will provide the holders of Claims and Equity Interests a substantially greater recovery than a liquidation under chapter 7 of the Bankruptcy Code.

Accordingly, the Debtor recommends that all parties in interest support the Plan.

**B.**    **Alternative Plan.**

If the Plan is not confirmed, or if the Debtor's exclusive period in which to file a plan has expired, any other party in interest may be entitled to file a different plan.  The Debtor

25

believes that the Plan provides holders of Claims and Equity Interests with the greatest value possible under the circumstances.  Furthermore, the Debtor believes that any subsequently proposed plan would likely provide less favorable treatment than that to be afforded by the Plan and would further delay the payment of distributions.

**ARTICLE 6**
**CERTAIN FEDERAL INCOME TAX CONSEQUENCES**

The Plan provides for payment or reinstatement of Claims.  The payments may have tax implications for the Debtor, its Equity Interest holders, and for the holders of Claims, including income imputed for cancellation of debt or losses.  Holders of Claims and Equity Interests should consult their own tax advisors regarding the tax consequences of the treatment of the Claims and Equity Interests under the Plan.  No part of this Disclosure Statement, the Plan, or any other communication from the Debtor is or can be construed as tax advice for any purpose.

**ARTICLE 7**
**SECURITIES LAWS CONSEQUENCES OF PLAN**

The Plan provides for payment or reinstatement of Claims.  No new securities will be issued under the Plan.  Holders of Equity Interests should consult their own advisors regarding any securities law consequences of the treatment of their Equity Interests under the Plan.

**ARTICLE 8**
**CONCLUSION AND RECOMMENDATION**

The Debtor believes that Confirmation of the Plan in the best interests of all holders of Claims and Equity Interests.  The Plan provides a substantially greater recovery than a liquidation under chapter 7.  The Debtor recommends all parties in interest to support and vote in favor of the Plan.

4832-7517-6339v5

Respectfully submitted,

July 8, 2019

/s/ David J. Gray
David Gray
Manager of the Debtor
*Plan Proponent*
(signed with permission)

/s/ Brian M. Rothschild
Brian M. Rothschild
**PARSONS BEHLE & LATIMER**
*Attorneys for the Debtor*

27

4832-7517-6339v5

**LIST OF EXHIBITS**

| Exhibit 1 | First Day Declaration of David Gray |
|-----------|-------------------------------------|
| Exhibit 2 | Monthly Operating Reports |
| Exhibit 3 | Liquidation Analysis and Schedules of Assets and Liabilities |

1

**EXHIBIT 1**

4832-7517-6339v5

Brian M. Rothschild, USB #15316
Grace S. Pusavat, USB #15713
Michael R. Brown, USB #16007
**Parsons Behle & Latimer**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
BRothschild@parsonsbehle.com
GPusavat@parsonsbehle.com
MBrown@parsonsbehle.com
ecf@parsonsbehle.com

*Proposed Attorneys for Sugarloaf Holdings, LLC*

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

---

| In re: | Case No. 18-bk-27705 |
|---|---|
| SUGARLOAF HOLDINGS, LLC. | Chapter 11 |
| Debtor. | Judge Kevin R. Anderson |

---

### DECLARATION OF DAVID J. GRAY IN SUPPORT OF DEBTOR'S APPLICATION FOR INTERIM AND FINAL ORDERS AUTHORIZING THE EMPLOYMENT AND RETENTION OF PARSONS BEHLE & LATIMER AS ATTORNEYS FOR THE DEBTOR

---

I, DAVID J. GRAY declare as follows:

1.     I am the Manager of Sugarloaf Holdings, LLC, the debtor and debtor in possession ("**Sugarloaf**" or the "**Debtor**") in the above-captioned Chapter 11 case.

2.     I am over the age of 18 and competent to testify as to the matters set forth herein. The facts set forth herein are based upon my personal knowledge.

3.     I submit this Declaration in support of the following motions by the Debtor Sugarloaf, Inc. (the "**Debtor**" or "**Sugarloaf**") for first-day relief:

    a.   Application for Interim and Final Orders Authorizing the Employment and Retention of Parsons Behle & Latimer as Attorneys for the Debtor and for Approval of Compensation Procedures (the "**Parsons Behle Retention Application**")

    b.   Motion for Entry of an Order Authorizing the Debtor to Maintain Existing Insurance Policies And Pay all Policy Premiums Arising Thereunder (the "**Insurance Motion**")

    c.   Motion for Interim and Final Orders under 11 U.S.C. § 363 Authorizing Use of Cash Collateral and Approval of Budget (the "**Cash Collateral Motion**")

    d.   Motion for an Order (1) Authorizing But Not Requiring the Debtor to Pay Utility Providers, (2) Determining and Approving Adequate Assurance of Payment for Future Utility Services, (3) Prohibiting Utility Providers from Disconnecting or Refusing to Provide Service, and (4) Granting Related (the "**Utility Motion**")

    e.   Ex Parte Motion Requesting (1) an Expedited Hearing on the First-Day Motions, (2) Shortening of Time for Notice and Objection to the Interim Relief Requested in the First-Day Motions or Finding that no Further Notice Is Necessary, and (3) Scheduling a Final Hearing on the First-Day Motions Within 30 Days and at Least 14 Days Following the Organizational Meeting of the Creditors' Committee Under Section 1102 of the Bankruptcy Code (the "**Ex Parte Hearing Motion**")

(the "**First-Day Motions**")

## I.    OVERVIEW OF SUGARLOAF HOLDINGS, LLC

    4.    The Debtor is a diversified and technologically advanced farming and ranching operation headquartered in Lehi, Utah with primary Debtor's farming and ranching operations in Millard County, Utah. The Debtor's farming operations produce legumes, small grains, and animal feed. Its ranching operations raise and sell beef cattle for market. The Debtor's operations span approximately 7,164.38 acres owned in fee simple, and more than 51,044.30 acres leased for grazing from the U.S. Bureau of Land Management ("**BLM**"), comprising nearly 80 square miles of agricultural operations, an area approximately the size of the Salt Lake Valley. The Debtor is not highly leveraged, and has substantial and valuable real estate and equipment holdings. The Debtor filed this chapter 11 Case primarily because of a few complex and costly multi-party

4846-7527-6920v1

lawsuits relating to a single water right (the "**Water Right Lawsuit**," as described in detail below) and aggressive adverse actions taken by the Debtor's primary secured creditor, Bank of the West ("**BOW**"), on the ostensible basis that it felt its collateral is imperiled.  The Debtor requires the breathing spell of the automatic stay to reorganize its operations, resolve the lawsuit, and pay its creditors.

A.      **Farming and Ranching Operations and Assets**

5.      Sugarloaf's agricultural operations span 7,164.38 acres in Millard County, Utah. The Debtor also leases from BLM more than 51,044.30 acres leased for grazing from BLM. Sugarloaf has made heavy investments in agricultural technology.  The technology includes automatic irrigation technology including soil and water sensors that provide real time data to the operator, internet-over-satellite controlled start and stop/flow control/fertilization capability, and new efficient pivot sprinklers.  The Debtor's technology allows it to sustain agricultural operations with very few employees, which reduces labor costs.  Some seasonal employees or third-party contracts are required during certain times of the year such as crop harvests or transporting cattle to stockyards for auction.

6.      Sugarloaf's primary valuable assets are its real property and associated water rights, which were appraised in 2017 by appraisers hired by its primary secured creditor BOW.  The 2017 Appraisal Report, attached as Exhibit A hereto, found a market value of the property as of May 1-3, 2017 to be $14,716,000.  (Ex. A, Appraisal Report, at 1.)  Sugarloaf's 25-year BLM leases of 51,044.30 acres leased for grazing are not included in the appraisal, or the asset value considered herein even though they have substantial value for winter grazing.

7.      Sugarloaf's second most valuable asset is its farming equipment, including tractors, trailers, trucks, farm implements, and advanced irrigation equipment, which has an aggregate value of approximately $5.5 million.  Sugarloaf's 19 2017 Zimmatic Pivots, have a value of

3

approximately $4.0 million, and could be sold for more than that amount today because of the increase in steel prices due to the recent imposition by the United States of tariffs on imported steel.

8.      Sugarloaf has inventory including vaccines, feed, wheat hay, and alfalfa/sudex hay valued at approximately $179,000. Sugarloaf has accounts receivable in approximate amount of $38,000. Finally, Sugarloaf is holding proceeds of the sale of substantially all of its remaining beef cattle in the amount of $587,838.40.

9.      Sugarloaf's operations are profitable, and provide sufficient cash flow to meet all of its obligations on a current basis when it is allowed to use its free cash. Sugarloaf intends to refinance or engage in another transaction that will enable it to maintain its assets as a going concern and pay all of its creditors in full. It requires the breathing space of the automatic stay, the ability to use its cash collateral, and the ability to be free from the strangling actions of its secured creditor to accomplish this.

**B.      Capital Structure**

**1.      Bank of the West**

10.      Sugarloaf's primary obligations are to its secured creditor, BOW. Sugarloaf is indebted to BOW under a mortgage, a cattle line of credit ("**LOC**"), and a crop LOC, all in the total amount of approximately $12,464,772.38. BOW only recently extended credit to Sugarloaf, but the relationship has been poor from the beginning.

11.      Sugarloaf, with BOW's consent, used part of the mortgage proceeds to refinance its existing mortgage, and part to purchase neighboring real property to expand its operations. BOW extended the mortgage loan in June, 2016, in the approximate amount of $9.56 million, including a $2 million hold back, to be released on certain conditions. BOW at that time also

4

extended an equipment term note (7 year) to pay for the new pivots, which was drawn across several months as the pivots were delivered and the pressurized irrigation project was constructed.

12.     The first draw against the crops LOC occurred at the closing table for the real estate loan.  BOW failed to account for the nearly $500,000 in early termination fees from Sugarloaf's previous lender and the loan origination and environmental study/cleanup/title riders in the original mortgage account.   When brought to the attention of BOW by both Sugarloaf and the title company, BOW instructed Sugarloaf and the escrow to just take the funds from the crops LOC at closing.  Sugarloaf expressed hesitation that BOW's June 9, 2017 Letter of Intent and subsequent correspondence contained an approximately $10 million real estate note but the final loan document was for around $9.6 million.  BOW gave assurances it would just expand the crops LOC or address this later in the month with cash out of a mortgage holdback.

13.     Sugarloaf moved forward with the loan as to not lose the property it had under contract or slow up the pivot irrigation project in reliance on BOW's assurances this cash shortfall would be address along with the difference in amortization of the $500,000 being originally proposed as 25-year amortized instead of the current 1 year LOC.

14.     The cash crunch occasioned by BOW's error and refusal to address has hobbled Sugarloaf's operational flexibility, causing cash crisis after cash crisis.   In November 2017, Sugarloaf planted 2400 acres in SASW-4 winter forage wheat.  The crops LOC was used to fund the planting of the wheat crop and harvesting of forages crop for winter use in the feedlot.  Because the crops LOC was used to cover closing costs (including the $500,000 pre-payment penalty BOW had failed to account for), there was a reduction in the amount left for planting and harvesting of the wheat crops.

15.     In August 2017, Sugarloaf purchased in excess of $900,000 in cattle from Bowie, Texas and shipped them its Fillmore ranch.  The source of funds for this purchase/handling/and

5

freight came from the cattle LOC.  These cattle were shipped to the ranch in Fillmore between July and Sept 2017.

16.     The equipment term note proceeds were used to purchase the pivots.  Remaining cash on hand was used to pay for labor, operating costs and components of the pressurized irrigation system not covered by the equipment note (*i.e.*, engineering).  Over the course of the fall 2017, contractors installed dozens of miles of waterline, powerline, pivots, and removed an underground fuel storage tank.  Although the tank was exempt from federal and state statutes requiring removal, BOW forced Sugarloaf remove the tank despite requested and provided proof of exemption.  The tank was not leaking nor did it have any damage according to a phase 2 environmental test.  The additional expense of this work, not accounted for in BOW's loans or Sugarloaf's budget, left Sugarloaf extremely cash-poor.  Accordingly, Sugarloaf needed the cash tied up in the real estate note hold back.

17.     The conditions for the hold back were the material completion of the pivot project and the removal and remediation of the underground storage tank.  On or about November 21, 2017, Sugarloaf noticed BOW that it had materially completed the pivot project, removed the storage tank, and completed environmental remediation.  Rather than release the nearly $2 million dollar holdback to cash, BOW swept the holdback to pay off the 7-year equipment term note that was only a few months old.  Because the hold back funds had paid off the equipment term note, in January 2018, BOW released its UCC-1 filings securing the equipment term note on the pivots.

18.     Shortly thereafter, I personally flew to Sacramento to meet with BOW relationship managers Tracy Holmes and Amber Neimeyer to request the equipment term note remain in place for its term and provide the cash out funds on completion of the pivot project as planned.  They refused.  Instead, they mentioned the potential threat of litigation in the Water Right Lawsuits had spooked some at BOW.  Although I again walked them through Sugarloaf's financials and business

6

plan, including stressing the importance of releasing the holdback to allow for available operating capital, they were not sympathetic.  Instead, Ms. Neimeyer and Ms. Holms expressed that "there was nothing they could do" and that BOW would further tighten their position with Sugarloaf.  At that time and from then forward, BOW swept all of Sugarloaf's operating accounts, causing business interruptions including payroll and third party vendor and contractor checks to bounce. The constant disruptions have been costly and damaging to Sugarloaf's credit, reputation, and credibility, and a constant distraction to management.

19.     Because of the difficulties occasioned by BOW's aggressive actions, Sugarloaf began to search for other capital to fund its operations.  After surveying local and area banks, Sugarloaf built relationships with Zions Bank and Brighton Bank, which provided the most favorable terms for operating LOCs.  Zions bank offered a $1.9 million cash infusion with a 7-year term and a $2.5 million LOC with a 3-year term.  Brighton Bank offered a $5 million cash infusion with a 15-year term via a SBA exporter guaranteed loan on the pivots.

20.     While working through these solutions, on May 25, 2018, without notice BOW froze the crop LOC and swept the operating account of approximately $250,000 to zero.  Sugarloaf payroll bounced and word traveled back to Zions Bank and Brighton Bank via the bounced payroll in the community.  The solution to restore cash and remove BOW's LOCs by refinance the pivot equipment disappeared as a direct result of BOW's actions.  Although I wrote to BOW requesting that it restore the swept operating cash, BOW's Ms. Neimeyer simply replied that they would not, and that it would be sending default notices shortly.

21.     Through August 2018, Sugarloaf had been current on all of its obligations with BOW, and BOW's loans were fully performing despite BOW's continually sweeping all of Sugarloaf's operating accounts.  Nevertheless, at that point, Ms. Neimeyer informed me that

Sugarloaf would be placed into special asset servicing, and its new relationship manager would be

James Salisbury.

22.     Sugarloaf has attempted to continue to do business despite its highly restricted cash

position caused by BOW's breaches of its agreements and unwarranted actions.  Sugarloaf raised

its beef cattle and sold them in the ordinary course of business.  See the details in the table below:

|  |  | Head | Amount |
|---|---|---|---|
| Jan - Mar | Western Slopes Cattlemen's, CO | 552 | $    394,501.87 |
| April | Torrinton, WY | 290 | $    246,351.08 |
| May | CS Beef, ID | 146 | $    126,162.08 |
| May | Pirvate Party Sale via Broker at the ranch | 370 | $    342,250.00 |
| June | Ogalalla Livestock, Nebraska | 500 | $    587,838.40 |
|  | Total | 1858 | $  1,697,103.43 |

The proceeds for all of these sales were deposited into BOW's checking account, and BOW

immediately swept the proceeds to pay down the LOCs.

23.     After the defaults, Sugarloaf was forced to prematurely sell its remaining pregnant

cattle herd, and it received a check for $587,838.40, which it still has.  The check is jointly made

to Bank of the West and Sugarloaf.  The Debtor has only six remaining beef calves.  The herd the

Debtor sold would have given birth to more than 500 calves within 45 days of the sale, but BOW's

strangling cash sweeps left Sugarloaf with no choice but to sell.

## 2.     Other Secured Creditors

24.     Sugarloaf has equipment LOCs owed to John Deere Financial ($291,895.74), Farm

Credit Leasing ($297,408.16) and AGCO Finance LLC ($540,837.81).

## II.   WATER RIGHT LAWSUITS

25.     In late August 2017, Sugarloaf received notice from the Utah Division of Water

Rights that there was a competing claim to title over one of Sugarloaf's water rights and that

Sugarloaf would need to seek resolution with the competing party in the courts.  The water right

8

at issue is water right 67-1752, which it had acquired in 2013. Sugarloaf immediately notified its BOW contact, Amber Neimeyer, of the water right issue, and then filed the Water Right Lawsuit to protect its rights. BOW was at all times kept informed of the suit and at that time merely asked Sugarloaf to keep it updated as to progress.

26.     Shortly thereafter, Sugarloaf's neighbors brought suit against Sugarloaf to forfeit the same water right for nonuse.

27.     The Water Right Lawsuits have been extraordinarily expensive, and Sugarloaf owes its attorneys, Kirton McConkie, more than $257,000.

## III.     INFORMATION RELATING TO FIRST-DAY MOTIONS

### A.     **Parsons Behle Retention Application**

28.     Additional information supporting the Debtor's Application to Employ and Retain Parsons Behle & Latimer as chapter 11 attorney for the Debtor is in the Declaration of David J. Gray in Support of the Parsons Behle Retention Application, filed on the Petition Date.

### B.     **Insurance Motion**

29.     In the ordinary course of the Debtor's business, the Debtor maintains the Policies providing coverage for vehicle, property/liability, personal and farm/ranch and umbrella coverage, all set forth in Exhibit A to the Insurance Motion. All of the Policies are maintained by Farm Bureau Property & Casualty Insurance Company. The Policies are essential to preservation of the Debtor's business, properties, and assets, and, in many cases, such insurance coverages are required by regulations, laws, contracts, and the United States Trustee Operating Guidelines and Reporting Requirements for Chapter 11 Cases.

30.     The Debtor believes it is in the best interest of its estate to permit the Debtor to honor its obligations under its current Policies. Any other alternative would likely require

considerable additional cash expenditures and would be detrimental to the Debtor's effort to preserve and maximize the value of its estate.

31.    At this time, the Debtor has no crops in the ground, and therefore carries no crop insurance.  When the Debtor plants its crops, presumably in November, the Debtor will then buy crop insurance.  The premium for crop insurance is determined by the insurer (under a joint program between Farm Bureau and USDA) at the time the crops are planted.  In addition, the Debtor in the ordinary course of business insures its livestock and harvested commodities (including hay).  By this Motion, the Debtor also requests permission to purchase crop insurance, livestock insurance, and harvested commodity insurance when and if such coverages become applicable.

### C.    Cash Collateral Motion

32.    As of the Petition Date, the Debtor had approximately $13,594,914 in total secured debt obligations and $2,106,231 in total general unsecured claims.

33.    The Debtor's primary sources of first-lien secured funding are as follows:

   a.    Bank of the West.  BOW holds a first position Deed of Trust, secured by the Debtor's real property.  The current amount owed is approximately $9,565,400.

   b.    Bank of the West.  BOW holds a lien secured by the Debtor's "accounts, chattel paper, goods, inventory, equipment, farm products, instruments, investment property, documents, commercial tort claims, deposit accounts, letter-of-credit rights, general intangibles, supporting obligations, and records of, accession to and proceeds and products of the foregoing." The current amount owed is approximately $2,899,372.

34.    In addition, the Debtor has also received additional secured financing as follows:

   a.    AGCO Finance LLC.  AGCO holds a lien secured by certain items of equipment. The amount owed is approximately $540,838.

   b.    Farm Credit Leasing Services Corp.  Farm Credit Leasing holds a lien secured by certain items of equipment. The amount owed is approximately $297,408.

     c.    <u>John Deere</u>.  John Deere holds a lien secured by titled vehicles and equipment. The amount owed is approximately $291,896.

35.    In the ordinary course of its businesses, the Debtor incurs trade debt for goods and services, suppliers, and independent contractors.

     a.    <u>Farm Operations and Labor</u>  Among the Debtor's most urgent needs, is the requirement to prepare for future growing. The Debtor is currently facing an imperative need to plant and prepare future crops, the lifeblood of its operations.

     b.    <u>Other Professional Services</u>  The Debtor has necessary fees for legal representation. Additionally, the Debtor requires the use of professionals, including engineers.

36.    In November of 2016, BOW ordered an appraisal of the Debtor's real property. BOW's appraisal estimated the value of the Debtor's property at $14,716,000.  The Debtor believes this appraisal is extremely conservative, and that its property could be sold for substantially more.  In addition, the value does not take into account the Debtor's 25-year BLM grazing leases, which have substantial value.  The Debtor owns additional personal property worth approximately $6,351,619.  The total value of the Debtor's assets as of the petition date is $21,067,619.  The Debtor's total liabilities are $15,716,413.  The Debtor's total equity is <u>conservatively</u> $5,351,206—or 25.4%.

37.    As of the Petition Date, the Debtor is in possession of a check for $568,359.  The check represents proceeds from the sale of cattle and is made out to both the Debtor and BOW (the "**Cattle Proceeds**").  The Debtor has minimal accounts receivable and little cash on hand.  The Debtor requires the Cattle Proceeds immediately, as future revenues depend on planting and maintaining operations now.  The Debtor believes, based on multiple past experiences, that if it were to deposit the Cattle Proceeds, BOW would sweep the account and leave the Debtor without cash or the ability to pay expenses until it was potentially too late.  This would likely force the Debtor to liquidate, where it otherwise seeks to reorganize.  The Debtor seeks an order from the

Court requiring BOW to endorse the check, execute any documents required to release the Cattle Proceeds, and allow the funds to be deposited in the debtor-in-possession account.

38.      Under the BOW Agreement, all cash in the Debtor's accounts is "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code (the "**Cash Collateral**"). Accordingly, the Debtor cannot use the cash in its bank accounts or the Cattle Proceeds without permission from BOW or Court approval under section 363(b)(2) of the Bankruptcy Code. BOW does not consent to the Debtor's use of Cash Collateral. Accordingly, by the Cash Collateral Motion, the Debtor is requesting authorization under section 363(b)(2) of the Bankruptcy Code to use Cash Collateral in the ordinary course of its business and to fund its chapter 11 case.

     **D.**     **Utility Motion**

39.      In the ordinary course of business, the Debtor incurs expenses for electricity and other similar utility services provided by utility providers (as such term is used in Bankruptcy Code Section 366, collectively, the "**Utility Providers**"), a list of which is attached as <u>Exhibit C</u> to the Utility Motion (the "**Utility Service List**").

40.      The Debtor pays for the Utility Providers to provide the utilities necessary for farming, including electricity and fuel.

41.      Uninterrupted utility services at the Debtor's farming and ranching operations is essential to the Debtor's ongoing operations and, therefore, to the success of this Case. In the Debtor's farming and ranching business, uninterrupted electrical, water, and fuel supplies are crucial to maintain the Debtor's crops and livestock. Indeed, any interruption of any of the Debtor's utility services, even for a brief period of time, would negatively affect the Debtor's operations and its ability to maintain its crops and livestock for the operations of its business. It is therefore critical that utility services continue uninterrupted during this Case.

4846-7527-6920v1

42.     Flowell Electric Association ("**Flowell**") required that the Debtor provide pre-paid funds in the amount of $85,947.88 (the "**Flowell Deposit**") in order to install new electrical service for the Debtor's 20 pivots and associated wells and infrastructure.  Flowell required the Debtor to pay the Flowell Deposit despite the fact that Flowell's publicly filed tariff with the State of Utah Public Utilities commission requires Flowell to fund new infrastructure to route power to new customers at its own expense.  The funds were remitted on September 11, 2017, with reservation of rights under Flowell's filed tariff.  Over the course of the winter, electrical service infrastructure was partially installed but not completed by Flowell.  The Debtor installed nearly 10 miles of its own infrastructure in reliance on Flowell providing utility service.  Nevertheless, Flowell only provided electrical service to 8 of the Debtor's 20 pivots and only one of Sugarloaf multiple pumps that required a 3 phase connection.  In addition, Flowell refused to electrify the connections to these 8 pivots until well after the irrigation season had ended.  Even though Flowell installed the infrastructure, Flowell refused to connect the fuses on the service side of the transformers until after surface irrigation season ended in the Spring.  Flowell refused to provide any explanation for its actions.

43.     Just after remitting to Flowell the funds in September 2017, Sugarloaf planted 2,400 acres of winter wheat in reliance on Flowell turning on the power .  Sugarloaf's farm experienced a historic drought over the winter of 2017-2018.  Nevertheless, Flowell refused to electrify the pivots.  Without electricity, Sugarloaf was not able to water its wheat crop at the critical time, and the entire wheat crop failed.

44.     Although Flowell refused to provide any explanation, the Debtor suspects that Flowell's actions are a result of individuals who are involved in the Water Right Lawsuits improperly using their positions to put pressure on the Debtor.  One of the board members at Flowell, Leo Stott, is a plaintiff and counterclaim defendant in the Water Right Litigations.  He

13

installed a pivot across the street from Sugarloaf in the same time frame and was immediately supplied with power.

45.     The loss of the crop from the lack of power was nearly catastrophic.  By this Motion, Sugarloaf requests that Flowell be prohibited from disconnecting, discontinuing, or refusing to provide electrical service to the Debtor.

46.     To the extent that the Debtor subsequently identifies additional providers of utility services, the Debtor hereby seeks authority to amend the Utility Service List to add or remove any Utility Provider.  The Debtor will amend the Utility Service List by notifying the added Utility Provider in writing that the Debtor has added it to the Utility Service List.  The Debtor further requests that the Interim Order and Final Order apply to any such subsequently identified Utility Provider as provided in the Adequate Assurance Procedures, regardless of when each Utility Provider was added to the Utility Service List.  With respect to any subsequently identified Utility Provider, the Proposed Adequate Assurance shall be deemed adequate assurance of payment for any Utility Provider that does not make an Additional Assurance Request within 21 days of receiving a copy of the Interim Order, Final Order, or the Motion (each of which fully recite the Adequate Assurance Procedures).  The Debtor shall have the period specified in the proposed Adequate Assurance Procedures to seek to resolve any subsequently added Utility Provider's Additional Assurance Request by mutual agreement with the Utility Provider without further order of the Court or to schedule a Determination Hearing with the Court to determine the adequacy of assurance of payment with respect to such Utility Provider in accordance with such Adequate Assurance Procedures.

47.     The Debtor requests that all Utility Providers, including subsequently added Utility Providers, be prohibited from altering, refusing, or discontinuing utility services to the Debtor

4846-7527-6920v1

absent further order of the Court, and that the Utility Providers not prevent the Debtor from accessing utility services.

48.    The Debtor pays Utility Providers on a periodic basis based on each Utility Provider's billing cycle.  The Debtor has no defaults with the Utility Providers, and has a history of prompt and complete payment of all utilities.  The Debtor believes it is substantially current within one billing cycle with all of its Utility Providers.

49.    The Debtor submits that it would be administratively burdensome to segregate pre-petition amounts from post-Petition Date amounts owing to each Utility Provider on each account where the billing cycles do not coincide with the Petition Date (and most, if not all, will not).  Accordingly, the Debtor requests that the Court authorize, but not require, the Debtor to pay all pre-petition amounts owing to Utility Providers in the ordinary course of its business for administrative convenience and to ensure that the Utility Providers do not cease provision of the utility services as a result of non-payment.  In addition, failure to pay pre-petition amounts could result in Utility Providers requesting a higher Adequate Assurance Deposit or to take action to terminate utility services, resulting in a greater cost to the estate than if payments from the Debtor continued uninterrupted.

### E.    Motion for Expedited Hearing on First-Day Motions

50.    The Debtor filed the First-Day Motions to ensure that it is in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the U.S. Trustee Guidelines and still able to maintain its operations.  For the reasons described in each of the First-Day Motions, the expedited relief is required if the Debtor is to operate its business, maintain its insurance coverage, be able to use Utility Services, have adequate (or any) representation, and perform its obligations as a debtor in possession under the Bankruptcy Code.  The procedure for interim and final relief is required by the Bankruptcy Code and Bankruptcy

4846-7527-6920v1

Rules in order to ensure that all parties in interest have an adequate opportunity to consider, brief,

and argue their positions with respect to the relief requested.

\*    \*    \*

51.    Accordingly, the Debtor requests that the Court grant the relief requested in the

First-Day Motions on an interim and final basis as requested therein.

*I, David J. Gray, hereby declare, under penalty of perjury, pursuant to 28 U.S.C. § 1746,*

*that the foregoing is true and correct.*

DATED this 15th day of October, 2018.

_____
**David J. Gray**
Manager
Sugarloaf Holdings, LLC

16

## EXHIBIT 2

4832-7517-6339v5

**DEBTOR:** Sugarloaf Holdings LLC

**CASE NUMBER:** 18-27705 UT

**MONTHLY OPERATING REPORT**
CHAPTER 11

## Form 2-A
## COVER SHEET

For Period Ending May 31, 2019

**Accounting Method:** [✓] Accrual Basis  [ ] Cash Basis

### *THIS REPORT IS DUE 14 DAYS AFTER THE END OF THE MONTH*

Mark One Box for Each
Required Document:

Debtor must attach each of the following reports/documents unless the U. S. Trustee
has waived the requirement in writing.  File the original with the Clerk of Court.
Submit a duplicate, with original signature, to the U. S. Trustee.

| Report/Document Attached | Previously Waived | REQUIRED REPORTS/DOCUMENTS |
|---|---|---|
| [✓] | [ ] | 1. Cash Receipts and Disursements Statement (Form 2-B) |
| [✓] | [ ] | 2. Balance Sheet (Form 2-C) |
| [✓] | [ ] | 3. Profit and Loss Statement (Form 2-D) |
| [✓] | [ ] | 4. Supporting Schedules (Form 2-E) |
| [✓] | [ ] | 5. Quarterly Fee Summary (Form 2-F) |
| [✓] | [ ] | 6. Narrative (Form 2-G) |
| [✓] | [ ] | 7. Bank Statements for All Bank Accounts |
|     |     |     IMPORTANT: Redact account numbers and remove check images |
| [✓] | [ ] | 8. Bank Statement Reconciliations for all Bank Accounts |

*I declare under penalty of perjury that the following Monthly Operating Report, and any attachments thereto are true, accurate and correct to the best of my knowledge and belief.*

Executed on: 6/18/2019

Print Name: David J. Gray

Signature:

Title: Manager

Rev. 12/10/2009

**DEBTOR:** Sugarloaf Holdings LLC          **CASE NO:**   18-27705 UT

### Form 2-B
### CASH RECEIPTS AND DISBURSEMENTS STATEMENT
For Period: 5/1/2019 to 5/31/2019

**CASH FLOW SUMMARY**

|  | | Current Month | | | Accumulated | |
|---|---|---|---|---|---|---|
| 1. **Beginning Cash Balance** | $ | 12,885.88 | (1) | $ | 587,124.40 | (1) |
| 2. Cash Receipts | | | | | | |
| Operations | | | | | | |
| Sale of Assets | | | | | | |
| Loans/advances | | | | | | |
| Other | | | | | 11,283.03 | |
| Total Cash Receipts | $ | 0.00 | | $ | 11,283.03 | |
| 3. Cash Disbursements | | | | | | |
| Operations | | 5,521.10 | | | 524,878.56 | |
| Debt Service/Secured loan payment | | | | | | |
| Professional fees/U.S. Trustee fees | | 0.0 | | | 66,128.00 | |
| Other | | | | | 36.09 | |
| Total Cash Disbursements | $ | 5,521.10 | | $ | 591,042.65 | |
| 4. Net Cash Flow (Total Cash Receipts less Total Cash Disbursements) | | (5,521.10) | | | (579,759.62) | |
| 5 **Ending Cash Balance (to Form 2-C)** | $ | 7,364.78 | (2) | $ | 7,364.78 | (2) |

**CASH BALANCE SUMMARY**

|  | Financial Institution | Book Balance |
|---|---|---|
| Petty Cash | | $ |
| DIP Operating Account | Wells Fargo | 7,364.78 |
| DIP State Tax Account | | |
| DIP Payroll Account | | |
| Other Operating Account | | |
| Other Interest-bearing Account | | |
| TOTAL (must agree with Ending Cash Balance above) | | $   7,364.78   (2) |

*(1) Accumulated beginning cash balance is the cash available at the commencement of the case.*
*Current month beginning cash balance should equal the previous month's ending balance.*
*(2) All cash balances should be the same.*

DEBTOR:   **Sugarloaf Holdings LLC**            **CASE NO:**   18-27705 UT

### Form 2-B
**CASH RECEIPTS AND DISBURSEMENTS STATEMENT**
For Period: 5/1/2019 to 5/31/2019

**CASH RECEIPTS DETAIL**                  **Account No:**   9806925138
*(attach additional sheets as necessary)*

| Date | Payer | Description | Amount |
|------|-------|-------------|--------|
|      |       |             | $      |

**Total Cash Receipts**                  $ _____ (1)

*(1) Total for all accounts should agree with total cash receipts listed on Form 2-B, page 1*

Page 2 of 3
Rev. 12/10/2009

**DEBTOR:** Sugarloaf Holdings LLC                    **CASE NO:** 18-27705 UT

### Form 2-B
### CASH RECEIPTS AND DISBURSEMENTS STATEMENT
For Period:   5/1/2019   to 5/31/2019

**CASH DISBURSEMENTS DETAIL**                    **Account No:** 9806925138
*(attach additional sheets as necessary)*

| Date | Check No. | Payee | Description (Purpose) | Amount |
|------|-----------|-------|----------------------|--------|
| | | | | $ |
| 5/2/2019 | ***3786 | LBIsat | Utility | 350.40 |
| 5/3/2019 | ***3786 | Mountainland Supply | Farming supplies | 975.90 |
| 5/8/2019 | ***3786 | Oversons Farm Center | Farming supplies | 3,877.98 |
| 5/22/2019 | ***3786 | Oversons Farm Center | Farming supplies | 316.82 |

**Total Cash Disbursements**   $ 5,521.10   (1)

*(1) Total for all accounts should agree with total cash disbursements listed on Form 2-B, page 1*

Page 3 of 3
Rev. 12/10/2009

**DEBTOR:** Sugarloaf Holdings LLC                    **CASE NO:** 18-27705 UT

Form 2-C
## COMPARATIVE BALANCE SHEET
For Period Ended: May 31, 2019

|  | Current Month | Petition Date (1) |
|---|---|---|
| **ASSETS** | | |
| Current Assets: | | |
| Cash (from Form 2-B, line 5) | $ 7,364.78 | $ 587,838.40 |
| Accounts Receivable (from Form 2-E) | 93,960.00 | 38,000.00 |
| Receivable from Officers, Employees, Affiliates | | |
| Inventory | | |
| Other Current Assets :(List)   Farming and fishing related assets | 5,843,895.17 | 5,599,233.16 |
| Deposits and prepayments | 95,947.88 | 95,947.88 |
| Total Current Assets | $ 6,041,157.83 | $ 6,321,019.44 |
| Fixed Assets: | | |
| Land | $ 14,716,000.00 | $ 14,716,000.00 |
| Building | | |
| Equipment, Furniture and Fixtures | 30,600.00 | 30,600.00 |
| Total Fixed Assets | 14,746,600.00 | 14,746,600.00 |
| Less: Accumulated Depreciation | ( ) | ( ) |
| Net Fixed Assets | $ 14,746,600.00 | $ 14,746,600.00 |
| Other Assets (List): | | |
| | | |
| **TOTAL ASSETS** | $ 20,787,757.83 | $ 21,067,619.44 |
| **LIABILITIES** | | |
| Post-petition Accounts Payable (from Form 2-E) | $ | $ |
| Post-petition Accrued Profesional Fees (from Form 2-E) | | |
| Post-petition Taxes Payable (from Form 2-E) | | |
| Post-petition Notes Payable | | |
| Other Post-petition Payable(List): | | |
| | | |
| Total Post Petition Liabilities | $ | $ |
| Pre Petition Liabilities: | | |
| Secured Debt | 13,084,316.97 | 13,084,316.97 |
| Priority Debt | | |
| Unsecured Debt | 2,348,332.57 | 2,348,332.57 |
| Total Pre Petition Liabilities | $ 15,432,649.54 | $ 15,432,649.54 |
| **TOTAL LIABILITIES** | $ 15,432,649.54 | $ 15,432,649.54 |
| **OWNERS' EQUITY** | | |
| Owner's/Stockholder's Equity | $ 5,355,108.29 | $ 5,634,969.90 |
| Retained Earnings - Prepetition | | |
| Retained Earnings - Post-petition | | |
| **TOTAL OWNERS' EQUITY** | $ 5,355,108.29 | $ 5,634,969.90 |
| **TOTAL LIABILITIES AND OWNERS' EQUITY** | $ 20,787,757.83 | $ 21,067,619.44 |

*(1) Petition date values are taken from the Debtor's balance sheet as of the petition date or are the values
listed on the Debtor's schedules.*

**DEBTOR:** <u>Sugarloaf Holdings LLC</u>          **CASE NO:** <u>18-27705</u> UT

### Form 2-D
### PROFIT AND LOSS STATEMENT
**For Period** <u>5/1/2019</u> **to** <u>5/31/2019</u>

| | Current Month | Accumulated Total (1) |
|---|---|---|
| Gross Operating Revenue | $ 0.00 | $ 55,950.00 |
| Less:  Discounts, Returns and Allowances | ( 0.00 ) | ( 0.00 ) |
| **Net Operating Revenue** | $ 0.00 | $ 55,950.00 |
| Cost of Goods Sold | | |
| **Gross Profit** | $ 0.00 | $ 55,950.00 |
| Operating Expenses | | |
| Officer Compensation | $ 0.00 | $ 0.00 |
| Selling, General and Administrative | 5,521.10 | 342,344.55 |
| Rents and Leases | | 0.00 |
| Depreciation, Depletion and Amortization | 0.00 | 0.00 |
| Other (list): _____ | 0.00 | 0.00 |
| | 0.00 | 0.00 |
| Total Operating Expenses | $ 5,521.10 | $ 342,344.55 |
| **Operating Income (Loss)** | $ (5,521.10) | $ (286,394.55) |
| Non-Operating Income and Expenses | | |
| Other Non-Operating Expenses | $ 0.00 | $ (36.09) |
| Gains (Losses) on Sale of Assets | 0.00 | 0.00 |
| Interest Income | 0.00 | 0.00 |
| Interest Expense | 0.00 | 0.00 |
| Other Non-Operating Income | 0.00 | 2,645.00 |
| Net Non-Operating Income or (Expenses) | $ 0.00 | $ 2,608.91 |
| Reorganization Expenses | | |
| Legal and Professional Fees | $ 0.00 | $ 0.00 |
| Other Reorganization Expense | 0.00 | 0.00 |
| Total Reorganization Expenses | $ 0.00 | $ 0.00 |
| **Net Income (Loss) Before Income Taxes** | $ (5,521.10) | $ (283,785.64) |
| Federal and State Income Tax Expense (Benefit) | 0.00 | 0.00 |
| **NET INCOME (LOSS)** | $ (5,521.10) | $ (283,785.64) |

*(1) Accumulated Totals include all revenue and expenses since the petition date.*

**DEBTOR:** Sugarloaf Holdings LLC                     **CASE NO:** 18-27705 UT

### Form 2-E
### SUPPORTING SCHEDULES
For Period:  5/1/2019  to  5/31/2019

## POST PETITION TAXES PAYABLE SCHEDULE

| | Beginning Balance (1) | Amount Accrued | Amount Paid | Date Paid | Check Number | Ending Balance |
|---|---|---|---|---|---|---|
| Income Tax Withheld: | | | | | | |
| Federal | $ 0.00 | $ 0.00 | $ 0.00 | | $ | 0.00 |
| State | 0.00 | 0.00 | 0.00 | | | 0.00 |
| FICA Tax Withheld | 0.00 | 0.00 | 0.00 | | | 0.00 |
| Employer's FICA Tax | 0.00 | 0.00 | 0.00 | | | 0.00 |
| Unemployment Tax | | | | | | |
| Federal | 0.00 | 0.00 | 0.00 | | | 0.00 |
| State | 0.00 | 0.00 | 0.00 | | | 0.00 |
| Sales, Use & Excise Taxes | 0.00 | 0.00 | 0.00 | | | 0.00 |
| Property Taxes | 0.00 | 0.00 | 0.00 | | | 0.00 |
| Accrued Income Tax: | | | | | | |
| Federal | 0.00 | 0.00 | 0.00 | | | 0.00 |
| State | 0.00 | 0.00 | 0.00 | | | 0.00 |
| Other: | 0.00 | 0.00 | 0.00 | | | 0.00 |
| TOTALS | $ 0.00 | $ 0.00 | $ 0.00 | | $ | 0.00 |

*(1) For first report, Beginning Balance will be $0; thereafter, Beginning Balance will be Ending Balance from prior report.*

## INSURANCE SCHEDULE

| | Carrier | Amount of Coverage | Expiration Date | Premium Paid Through |
|---|---|---|---|---|
| Workers' Compensation | | $ | | $ |
| General Liability | Farm Bureau | $ 4,000,000.00 | December 2019 | $ June 30, 2019 |
| Property (Fire, Theft) | Farm Bureau | $ Per schedule | Per schedule | $ June 30, 2019 |
| Vehicle | Farm Bureau | $ Per schedule | Per schedule | $ June 30, 2019 |
| Other (list): | Farm Bureau | $ Per schedule | Per schedule | $ June 30, 2019 |
| | | $ | | $ |

Page 1 of 2
Rev. 12/10/2009

**DEBTOR:** Sugarloaf Holdings LLC                    **CASE NO:** 18-27705 UT

Form 2-E
SUPPORTING SCHEDULES
For Period: 5/1/2019 to 5/31/2019

## ACCOUNTS RECEIVABLE AND POST PETITION PAYABLE AGING

| Due | Accounts Receivable | Post Petition Accounts Payable |
|---|---|---|
| Under 30 days | $ 0.00 | $ |
| 30 to 60 days | 0.00 | |
| 61 to 90 days | 32,350.00 | |
| 91 to 120 days | 99,600.00 | |
| Over 120 days | | |
| **Total Post Petition** | 55,950.00 | |
| **Pre Petition Amounts** | 76,000.00 | |
| Total Accounts Receivable | $ 131,950.00 | |
| Less: Bad Debt Reserve | (38,000.00) | |
| **Net Accounts Receivable (to Form 2-C)** | $ 93,950.00 | |
| | | **Total Post Petition Accounts Payable** $ |

*\* Attach a detail listing of accounts receivable and post-petition accounts payable*

### SCHEDULE OF PAYMENTS TO ATTORNEYS AND OTHER PROFESSIONALS

| | Month-end Retainer Balance | Current Month's Accrual | Paid in Current Month | Date of Court Approval | Month-end Balance Due * |
|---|---|---|---|---|---|
| Debtor's Counsel | $ 0.00 | $ 0.00 | $ 0.00 | | $ 0.00 |
| Counsel for Unsecured Creditors' Committee | 0.00 | 0.00 | 0.00 | | 0.00 |
| Trustee's Counsel | 0.00 | 0.00 | 0.00 | | 0.00 |
| Accountant | 10,000.00 | 0.00 | 0.00 | | 0.00 |
| Other: | 0.00 | 0.00 | 0.00 | | 0.00 |
| Total | $ 0.00 | $ 0.00 | $ | | $ |

*Balance due to include fees and expenses incurred but not yet paid.

### SCHEDULE OF PAYMENTS AND TRANSFERS TO PRINCIPALS/EXECUTIVES**

| Payee Name | Position | Nature of Payment | Amount |
|---|---|---|---|
| | | | $ |
| | | | |
| | | | |

**List payments and transfers of any kind and in any form made to or for the benefit of any proprietor, owner,
partner, shareholder, officer or director.

**DEBTOR:**  Sugarloaf Holdings LLC                    **CASE NO:** 18-27705 UT

### Form 2-F
### QUARTERLY FEE SUMMARY *
### For the Month Ended: May 31, 2019

| Month | Year | Cash Disbursements ** | Quarterly Fee Due | Check No. | Date Paid |
|---|---|---|---|---|---|
| January | 2019 | $   59,589.10 | | | |
| February | 2019 | 306,373.40 | | | |
| March | 2019 | 43,446.36 | | | |
| TOTAL 1st Quarter | | $   409,408.86 | $   4,875.00 | 1025 | 4/15/2019 |
| April | 2019 | $   99,608.15 | | | |
| May | 2019 | 5,521.10 | | | |
| June | | | | | |
| TOTAL 2nd Quarter | | $   105,129.25 | $   975.00 | | |
| July | | $ | | | |
| August | | | | | |
| September | | | | | |
| TOTAL 3rd Quarter | | $ | $ | | |
| October | | $ | | | |
| November | | | | | |
| December | | | | | |
| TOTAL 4th Quarter | | $ | $ | | |

### FEE SCHEDULE (as of JANUARY 1, 2008)
*Subject to changes that may occur to 28 U.S.C. §1930(a)(6)*

| Quarterly Disbursements | Fee | Quarterly Disbursements | Fee |
|---|---|---|---|
| $0 to $14,999................... | $325 | $1,000,000 to $1,999,999.............. | $6,500 |
| $15,000 to $74,999.......... | $650 | $2,000,000 to $2,999,999.............. | $9,750 |
| $75,000 to $149,999........ | $975 | $3,000,000 to $4,999,999.............. | $10,400 |
| $150,000 to $224,999...... | $1,625 | $5,000,000 to $14,999,999 ....... | $13,000 |
| $225,000 to $299,999...... | $1,950 | $15,000,000 to $29,999,999.... | $20,000 |
| $300,000 to $999,999...... | $4,875 | $30,000,000 or more | $30,000 |

\*   This summary is to reflect the current calendar year's information cumulative to the end of the reporting period

\*\*  Should agree with line 3, Form 2-B.  Disbursements are net of transfers to other debtor in possession bank accounts

*Failure to pay the quarterly fee is cause for conversion or dismissal of the chapter 11 case. [11 U.S.C. Sec. 1112(b)(10)]*
*In addition, unpaid fees are considered a debt owed to the United States and will be assessed interest under 31 U.S.C. §3717*

**DEBTOR:** Sugarloaf Holdings LLC          **CASE NO:** 18-27705 UT

Form 2-G
## NARRATIVE
For Period Ending  May 31, 2019

Please provide a brief description of any significant business and legal actions taken by the debtor, its creditors, or the court during the reporting period, any unusual or non-recurring accounting transactions that are reported in the financial statements, and any significant changes in the financial condition of the debtor which have occurred subsequent to the report date.

The debtor commenced its Chapter 11 petition on October 15, 2018.
The debtor remains in possession of its estate.

- The crops are planted and growing.  Growing conditions are exceptional.
- The debtor is continuing to work through alternative financing to Bank of the West.
- The stocker cattle are on deep grass and making large gains.

# Wells Fargo Simple Business Checking



May 31, 2019 ■ Page 1 of 4

SUGARLOAF HOLDINGS LLC
DEBTOR IN POSSESSION
CH11 CASE #18-27705 (UT)
1471 N 900 W
LEHI UT 84043-1098

## Questions?

*Available by phone 24 hours a day, 7 days a week:*
Telecommunications Relay Services calls accepted
**1-800-CALL-WELLS**   (1-800-225-5935)

*TTY: 1-800-877-4833*
*En español: 1-877-337-7454*

*Online:* wellsfargo.com/biz

*Write:* Wells Fargo Bank, N.A. (119)
P.O. Box 6995
Portland, OR 97228-6995

## Your Business and Wells Fargo

Since August 2003, the Wells Fargo/Gallup Small Business Index has surveyed small business owners on current and future perceptions of their business financial situation. View the latest results at wellsfargoworks.com.

## Account options

*A check mark in the box indicates you have these convenient services with your account(s). Go to wellsfargo.com/biz or call the number above if you have questions or if you would like to add new services.*

| | |
|---|---|
| Business Online Banking | ✓ |
| Online Statements | ✓ |
| Business Bill Pay | ☐ |
| Business Spending Report | ✓ |
| Overdraft Protection | ☐ |

## Activity summary

| | |
|---|---|
| Beginning balance on 5/1 | $12,885.88 |
| Deposits/Credits | 9,543.53 |
| Withdrawals/Debits | - 15,064.63 |
| **Ending balance on 5/31** | **$7,364.78** |
| Average ledger balance this period | $8,529.33 |

Account number: ████████████

**SUGARLOAF HOLDINGS LLC**
**DEBTOR IN POSSESSION**
**CH11 CASE #18-27705 (UT)**

*Utah account terms and conditions apply*

For Direct Deposit use
Routing Number (RTN): 124002971

For Wire Transfers use
Routing Number (RTN): 121000248

**Overdraft Protection**

This account is not currently covered by Overdraft Protection. If you would like more information regarding Overdraft Protection and eligibility requirements please call the number listed on your statement or visit your Wells Fargo store.

WELLS
FARGO

## Transaction history

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|---|---|---|---|---|---|
| 5/2 | | Purchase authorized on 05/01 Lbisat LLC 801-5019090 UT S309121562464407 Card 3786 | | 350.40 | 12,535.48 |
| 5/3 | , | Purchase authorized on 05/02 Mountainland Suppl 435-726-0019 UT S389122660364123 Card 3786 | | 975.90 | 11,559.58 |
| 5/8 | | Purchase authorized on 05/06 Oversons Farm Cent Delta UT S469126578134480 Card 3786 | | 3,877.98 | 7,681.60 |
| 5/10 | | Zamp Hr Invoice 190510 H021445 Sugarloaf Holdings LLC | 9,543.53 | | |
| 5/10 | < | Business to Business ACH Debit - Zamp Hr Invoice 190510 H021404 Sugarloaf Holdings LLC | | 9,543.53 | 7,681.60 |
| 5/22 | | Purchase authorized on 05/20 Oversons Farm Cent Delta UT S469140557881412 Card 3786 | | 316.82 | 7,364.78 |
| Ending balance on 5/31 | | | | | 7,364.78 |
| Totals | | | $9,543.53 | $15,064.63 | |

*The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.*

*< Business to Business ACH:If this is a business account, this transaction has a return time frame of one business day from post date. This time frame does not apply to consumer accounts.*

## Monthly service fee summary

For a complete list of fees and detailed account information, see the Wells Fargo Account Fee and Information Schedule and Account Agreement applicable to your account (EasyPay Card Terms and Conditions for prepaid cards) or talk to a banker. Go to wellsfargo.com/feefaq for a link to these documents, and answers to common monthly service fee questions.

| Fee period 05/01/2019 - 05/31/2019 | Standard monthly service fee $10.00 | You paid $0.00 |
|---|---|---|
| How to avoid the monthly service fee | Minimum required | This fee period |
| Have any **ONE** of the following account requirements | | |
| · Average ledger balance | $500.00 | $8,529.00 ☑ |
| C1/C1 | | |

## Account transaction fees summary

| Service charge description | Units used | Units included | Excess units | Service charge per excess units ($) | Total service charge ($) |
|---|---|---|---|---|---|
| Cash Deposited ($) | 0 | 3,000 | 0 | 0.0030 | 0.00 |
| Transactions | 2 | 50 | 0 | 0.50 | 0.00 |
| **Total service charges** | | | | | **$0.00** |

# IMPORTANT ACCOUNT INFORMATION

Effective June 24, 2019, the cash deposited fee will be renamed to cash deposit processing fee. There is no change to the amount of cash you can deposit to your account each month at no charge. In addition, the fee assessed for exceeding the amount of cash deposited each month with no fee will remain the same. To review the amount of cash deposits processed each month with no fee

**WELLS FARGO**

and any cash deposit processing fees, please refer to Cash Deposited Information in the "Account transaction fees summary" section of your statement.

If you have questions, please contact your local banker or call the phone number listed at the top of your statement. We appreciate your business and look forward to continuing to serve your financial needs.

**WELLS FARGO**

---

## General statement policies for Wells Fargo Bank

■ **Notice:** Wells Fargo Bank, N.A. may furnish information about accounts belonging to individuals, including sole proprietorships, to consumer reporting agencies. If this applies to you, you have the right to dispute the accuracy of information that we have reported by writing to us at: Overdraft Collections and Recovery, P.O. Box 5058, Portland, OR 97208-5058.

You must describe the specific information that is inaccurate or in dispute and the basis for any dispute with supporting documentation. In the case of information that relates to an identity theft, you will need to provide us with an identity theft report.

---

## Account Balance Calculation Worksheet

1. Use the following worksheet to calculate your overall account balance.

2. Go through your register and mark each check, withdrawal, ATM transaction, payment, deposit or other credit listed on your statement. Be sure that your register shows any interest paid into your account and any service charges, automatic payments or ATM transactions withdrawn from your account during this statement period.

3. Use the chart to the right to list any deposits, transfers to your account, outstanding checks, ATM withdrawals, ATM payments or any other withdrawals (including any from previous months) which are listed in your register but not shown on your statement.

**ENTER**

**A.** The ending balance
shown on your statement . . . . . . . . . . . . . . . . . . . . . $ _____

**ADD**

**B.** Any deposits listed in your         $ _____
register or transfers into                  $ _____
your account which are not            $ _____
shown on your statement.            + $ _____

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . TOTAL $ _____

**CALCULATE THE SUBTOTAL**
(Add Parts A and B)

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . TOTAL $ _____

**SUBTRACT**

**C.** The total outstanding checks and
withdrawals from the chart above . . . . . . . . . . . . - $ _____

**CALCULATE THE ENDING BALANCE**
(Part A + Part B - Part C)
This amount should be the same
as the current balance shown in
your check register . . . . . . . . . . . . . . . . . . . . . . $ . _____

| Number | Items Outstanding | Amount |
|--------|-------------------|--------|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  | **Total amount** $ _____ |

©2010 Wells Fargo Bank, N.A. All rights reserved. Member FDIC. NMLSR ID 399801

**DEBTOR:** Sugarloaf Holdings LLC

**MONTHLY OPERATING REPORT**
CHAPTER 11

**CASE NUMBER:** 18-27705 UT

Form 2-A
**COVER SHEET**

For Period Ending April 30, 2019

**Accounting Method:**  ☑ Accrual Basis   ☐ Cash Basis

*THIS REPORT IS DUE 14 DAYS AFTER THE END OF THE MONTH*

Mark One Box for Each
Required Document:

Debtor must attach each of the following reports/documents unless the U. S. Trustee
has waived the requirement in writing.  File the original with the Clerk of Court.
Submit a duplicate, with original signature, to the U. S. Trustee.

| Report/Document Attached | Previously Waived | REQUIRED REPORTS/DOCUMENTS |
|---|---|---|
| ☑ | ☐ | 1. Cash Receipts and Disursements Statement (Form 2-B) |
| ☑ | ☐ | 2. Balance Sheet (Form 2-C) |
| ☑ | ☐ | 3. Profit and Loss Statement (Form 2-D) |
| ☑ | ☐ | 4. Supporting Schedules (Form 2-E) |
| ☑ | ☐ | 5. Quarterly Fee Summary (Form 2-F) |
| ☑ | ☐ | 6. Narrative (Form 2-G) |
| ☑ | ☐ | 7. Bank Statements for All Bank Accounts<br>IMPORTANT: Redact account numbers and remove check images |
| ☑ | ☐ | 8. Bank Statement Reconciliations for all Bank Accounts |

*I declare under penalty of perjury that the following Monthly Operating Report, and any
attachments thereto are true, accurate and correct to the best of my knowledge and belief.*

Executed on: 5/15/2019   Print Name: David J. Gray

Signature:

Title:   Manager

Rev. 12/10/2009

**DEBTOR:** Sugarloaf Holdings LLC          **CASE NO:**      18-27705 UT

### Form 2-B
### CASH RECEIPTS AND DISBURSEMENTS STATEMENT
For Period: 4/1/2019     to  4/30/2019

**CASH FLOW SUMMARY**

|  | Current Month | Accumulated |
|---|---|---|
| **1. Beginning Cash Balance** | $ 112,494.03 (1) | $ 587,124.40 (1) |
| 2. Cash Receipts | | |
| Operations | | |
| Sale of Assets | | |
| Loans/advances | | |
| Other | | 11,283.03 |
| Total Cash Receipts | $ 0.00 | $ 11,283.03 |
| 3. Cash Disbursements | | |
| Operations | 99,608.15 | 519,357.46 |
| Debt Service/Secured loan payment | | |
| Professional fees/U.S. Trustee fees | 0.0 | 66,128.00 |
| Other | | 36.09 |
| Total Cash Disbursements | $ 99,608.15 | $ 585,521.55 |
| 4. Net Cash Flow (Total Cash Receipts less Total Cash Disbursements) | (99,608.15) | (574,238.52) |
| **5 Ending Cash Balance (to Form 2-C)** | $ 12,885.88 (2) | $ 12,885.88 (2) |

**CASH BALANCE SUMMARY**

| | Financial Institution | Book Balance |
|---|---|---|
| Petty Cash | | $ |
| DIP Operating Account | Wells Fargo | 12,885.88 |
| DIP State Tax Account | | |
| DIP Payroll Account | | |
| Other Operating Account | | |
| Other Interest-bearing Account | | |
| TOTAL (must agree with Ending Cash Balance above) | | $ 12,885.88 (2) |

*(1)  Accumulated beginning cash balance is the cash available at the commencement of the case.*
*Current month beginning cash balance should equal the previous month's ending balance.*
*(2)  All cash balances should be the same.*

Page 1 of 3
Rev. 12/10/2009

**DEBTOR:** Sugarloaf Holdings LLC      **CASE NO:** 18-27705 UT

### Form 2-B
### CASH RECEIPTS AND DISBURSEMENTS STATEMENT
For Period: 4/1/2019 to 4/30/2019

**CASH RECEIPTS DETAIL**      **Account No:** 9806925138
*(attach additional sheets as necessary)*

| Date | Payer | Description | Amount |
|------|-------|-------------|--------|
| | | | $ |

| | | |
|---|---|---|
| **Total Cash Receipts** | $ | (1) |

*(1) Total for all accounts should agree with total cash receipts listed on Form 2-B, page 1*

Page 2 of 3
Rev. 12/10/2009

**DEBTOR:** Sugarloaf Holdings LLC                    **CASE NO:** 18-27705 UT

### Form 2-B
### CASH RECEIPTS AND DISBURSEMENTS STATEMENT
For Period: 4/1/2019 to 4/30/2019

**CASH DISBURSEMENTS DETAIL**                    **Account No:** 9806925138
*(attach additional sheets as necessary)*

| Date | Check No. | Payee | Description (Purpose) | Amount |
|------|-----------|-------|----------------------|-------:|
| | | | | $ |
| 4/1/2019 | ***3786 | Royal Electric | Fuses and supplies | 572.57 |
| 4/1/2019 | ***3786 | Rocky Mountain Power | Utilities | 104.95 |
| 4/2/2019 | ***3786 | Metalmart Co. | Supplies | 132.83 |
| 4/3/2019 | ***3786 | Batteries Plus | Farming expense | 295.98 |
| 4/4/2019 | ***3786 | Flying J | Fuel | 43.79 |
| 4/8/2019 | ***3786 | Overson's Farm Center | Farming supplies | 33.66 |
| 4/8/2019 | ***3786 | Utah DMV | Taxes and license | 318.00 |
| 4/8/2019 | ***3786 | Roper Lumber | Irrigation boards | 18.99 |
| 4/8/2019 | ***3786 | IFA | Farming supplies | 764.56 |
| 4/8/2019 | ***3786 | Roper Lumber | Irrigation boards | 50.72 |
| 4/10/2019 | ***3786 | Love's Truck Center | Fuel | 86.12 |
| 4/10/2019 | 1023 | Chad Gardner | Generator service | 2,600.00 |
| 4/10/2019 | 1024 | J. Phillip Cook LLC | Appraisal | 22,510.00 |
| 4/11/2019 | ***3786 | Exxon | Fuel | 42.99 |
| 4/12/2019 | ACH | ZampHR | Payroll | 9,543.53 |
| 4/12/2019 | ACH | Cardwell/Reladyne | Fuel | 10,624.84 |
| 4/15/2019 | ***3786 | Exxon | Fuel | 43.14 |
| 4/15/2019 | 1026 | Chalk Creek Irrigation Co. | Assessment for shares | 1,659.00 |
| 4/18/2019 | ***3786 | Mountainland Supply | Farming expense | 1,762.79 |
| 4/18/2019 | 1027 | Lake Philgas | Utilities | 892.65 |
| 4/18/2019 | 1029 | Parson's Behle Latimer | Legal fees | 28,482.77 |
| 4/19/2019 | ***3786 | LBI Sat | Utilities | 1,401.60 |
| 4/19/2019 | 1028 | Hansen Allen & Luce | Professional services | 632.14 |
| 4/19/2019 | 1025 | US Trustee | Trustee quarterly payment | 4,875.00 |
| 4/23/2019 | ***3786 | Mountainland Supply | Farming expense | 677.15 |
| 4/25/2019 | ***3786 | Exxon | Fuel | 62.65 |
| 4/25/2019 | ***3786 | Mountainland Supply | Farming expense | 182.96 |
| 4/26/2019 | ACH | ZampHR | Payroll | 9,543.53 |
| 4/29/2019 | ***3786 | Dutson Supply Company | Farming expense | 647.00 |
| 4/29/2019 | ***3786 | Mountainland Supply | Farming expense | 783.58 |
| 4/29/2019 | ACH | Farm Bureau | Insurance | 218.66 |

**Total Cash Disbursements**    $ 99,608.15    (1)

*(1) Total for all accounts should agree with total cash disbursements listed on Form 2-B, page 1*

**DEBTOR:**  Sugarloaf Holdings LLC           **CASE NO:**  18-27705 UT

**Form 2-C**
## COMPARATIVE BALANCE SHEET
For Period Ended: April 30, 2019

| | | Current Month | | Petition Date (1) |
|---|---|---|---|---|
| **ASSETS** | | | | |
| Current Assets: | | | | |
| Cash (from Form 2-B, line 5) | | $ 12,885.88 | $ | 587,838.40 |
| Accounts Receivable (from Form 2-E) | | 93,950.00 | | 38,000.00 |
| Receivable from Officers, Employees, Affiliates | | | | |
| Inventory | | | | |
| Other Current Assets :(List)   Farming and fishing related assets | | 5,843,895.17 | | 5,599,233.16 |
| Deposits and prepayments | | 95,947.88 | | 95,947.88 |
| Total Current Assets | | $ 6,046,678.93 | $ | 6,321,019.44 |
| Fixed Assets: | | | | |
| Land | | $ 14,716,000.00 | $ | 14,716,000.00 |
| Building | | | | |
| Equipment, Furniture and Fixtures | | 30,600.00 | | 30,600.00 |
| Total Fixed Assets | | 14,746,600.00 | | 14,746,600.00 |
| Less: Accumulated Depreciation | | ( ) | ( | ) |
| Net Fixed Assets | | $ 14,746,600.00 | $ | 14,746,600.00 |
| Other Assets (List): | | | | |
| **TOTAL ASSETS** | | $ 20,793,278.93 | $ | 21,067,619.44 |
| **LIABILITIES** | | | | |
| Post-petition Accounts Payable (from Form 2-E) | | $ | $ | |
| Post-petition Accrued Profesional Fees (from Form 2-E) | | | | |
| Post-petition Taxes Payable (from Form 2-E) | | | | |
| Post-petition Notes Payable | | | | |
| Other Post-petition Payable(List): | | | | |
| Total Post Petition Liabilities | | $ | $ | |
| Pre Petition Liabilities: | | | | |
| Secured Debt | | 13,084,316.97 | | 13,084,316.97 |
| Priority Debt | | | | |
| Unsecured Debt | | 2,348,332.57 | | 2,348,332.57 |
| Total Pre Petition Liabilities | | $ 15,432,649.54 | $ | 15,432,649.54 |
| **TOTAL LIABILITIES** | | $ 15,432,649.54 | $ | 15,432,649.54 |
| **OWNERS' EQUITY** | | | | |
| Owner's/Stockholder's Equity | | $ 5,360,629.39 | $ | 5,634,969.90 |
| Retained Earnings - Prepetition | | | | |
| Retained Earnings - Post-petition | | | | |
| **TOTAL OWNERS' EQUITY** | | $ 5,460,629.39 | $ | 5,634,969.90 |
| **TOTAL LIABILITIES AND OWNERS' EQUITY** | | $ 20,793,278.93 | $ | 21,067,619.44 |

*(1) Petition date values are taken from the Debtor's balance sheet as of the petition date or are the values
listed on the Debtor's schedules.*

**DEBTOR:** Sugarloaf Holdings LLC      **CASE NO:** 18-27705 UT

### Form 2-D
### PROFIT AND LOSS STATEMENT
For Period  4/1/2019  to  4/30/2019

| | Current Month | Accumulated Total (1) |
|---|---|---|
| Gross Operating Revenue | $ 0.00 | $ 55,950.00 |
| Less: Discounts, Returns and Allowances | ( 0.00 ) | ( 0.00 ) |
| **Net Operating Revenue** | $ 0.00 | $ 55,950.00 |
| Cost of Goods Sold | | |
| **Gross Profit** | $ 0.00 | $ 55,950.00 |
| Operating Expenses | | |
| Officer Compensation | $ 0.00 | $ 0.00 |
| Selling, General and Administrative | 99,608.15 | 336,823.45 |
| Rents and Leases | | 0.00 |
| Depreciation, Depletion and Amortization | 0.00 | 0.00 |
| Other (list): | 0.00 | 0.00 |
| | 0.00 | 0.00 |
| Total Operating Expenses | $ 99,608.15 | $ 336,823.45 |
| **Operating Income (Loss)** | $ (99,608.15) | $ (280,873.45) |
| Non-Operating Income and Expenses | | |
| Other Non-Operating Expenses | $ 0.00 | $ (36.09) |
| Gains (Losses) on Sale of Assets | 0.00 | 0.00 |
| Interest Income | 0.00 | 0.00 |
| Interest Expense | 0.00 | 0.00 |
| Other Non-Operating Income | 0.00 | 2,645.00 |
| Net Non-Operating Income or (Expenses) | $ 0.00 | $ 2,608.91 |
| Reorganization Expenses | | |
| Legal and Professional Fees | $ 0.00 | $ 0.00 |
| Other Reorganization Expense | 0.00 | 0.00 |
| Total Reorganization Expenses | $ 0.00 | $ 0.00 |
| **Net Income (Loss) Before Income Taxes** | $ (99,608.15) | $ (278,264.54) |
| Federal and State Income Tax Expense (Benefit) | 0.00 | 0.00 |
| **NET INCOME (LOSS)** | $ (99,608.15) | $ (278,264.54) |

*(1) Accumulated Totals include all revenue and expenses since the petition date.*

**DEBTOR:** Sugarloaf Holdings LLC                    **CASE NO:** 18-27705 UT

### Form 2-E
### SUPPORTING SCHEDULES
**For Period:** 4/1/2019 **to** 4/30/2019

#### POST PETITION TAXES PAYABLE SCHEDULE

| | Beginning Balance (1) | Amount Accrued | Amount Paid | Date Paid | Check Number | Ending Balance |
|---|---|---|---|---|---|---|
| **Income Tax Withheld:** | | | | | | |
| Federal | $ 0.00 | $ 0.00 | $ 0.00 | | $ | 0.00 |
| State | 0.00 | 0.00 | 0.00 | | | 0.00 |
| **FICA Tax Withheld** | 0.00 | 0.00 | 0.00 | | | 0.00 |
| **Employer's FICA Tax** | 0.00 | 0.00 | 0.00 | | | 0.00 |
| **Unemployment Tax** | | | | | | |
| Federal | 0.00 | 0.00 | 0.00 | | | 0.00 |
| State | 0.00 | 0.00 | 0.00 | | | 0.00 |
| **Sales, Use & Excise Taxes** | | 0.00 | 0.00 | | | 0.00 |
| **Property Taxes** | 0.00 | 0.00 | 0.00 | | | 0.00 |
| **Accrued Income Tax:** | | | | | | |
| Federal | 0.00 | 0.00 | 0.00 | | | 0.00 |
| State | 0.00 | 0.00 | 0.00 | | | 0.00 |
| Other:_____ | 0.00 | 0.00 | 0.00 | | | 0.00 |
| **TOTALS** | $ 0.00 | $ 0.00 | $ 0.00 | | $ | 0.00 |

*(1) For first report, Beginning Balance will be $0; thereafter, Beginning Balance will be Ending Balance from prior report.*

#### INSURANCE SCHEDULE

| | Carrier | Amount of Coverage | Expiration Date | Premium Paid Through |
|---|---|---|---|---|
| Workers' Compensation | | $ | $ | |
| General Liability | Farm Bureau | $ 4,000,000.00 | December 2019 $ | June 30, 2019 |
| Property (Fire, Theft) | Farm Bureau | $ Per schedule | Per schedule $ | June 30, 2019 |
| Vehicle | Farm Bureau | $ Per schedule | Per schedule $ | June 30, 2019 |
| Other (list): | Farm Bureau | $ Per schedule | Per schedule $ | June 30, 2019 |
| | | $ | $ | |

Page 1 of 2
Rev. 12/10/2009

DEBTOR: Sugarloaf Holdings LLC        CASE NO: **18-27705 UT**

### Form 2-E
### SUPPORTING SCHEDULES
For Period: 4/1/2019 to 4/30/2019

### *ACCOUNTS RECEIVABLE AND POST PETITION PAYABLE AGING*

| Due | Accounts Receivable | Post Petition Accounts Payable |
|---|---|---|
| Under 30 days | $ 0.00 | $ |
| 30 to 60 days | 0.00 | |
| 61 to 90 days | 32,350.00 | |
| 91 to 120 days | 99,600.00 | |
| Over 120 days | | |
| **Total Post Petition** | 55,950.00 | |
| **Pre Petition Amounts** | 76,000.00 | |
| Total Accounts Receivable | $ 131,950.00 | |
| Less: Bad Debt Reserve | (38,000.00) | |
| **Net Accounts Receivable (to Form 2-C)** | $ 93,950.00 | |

Total Post Petition
Accounts Payable $ _____

*\* Attach a detail listing of accounts receivable and post-petition accounts payable*

### *SCHEDULE OF PAYMENTS TO ATTORNEYS AND OTHER PROFESSIONALS*

| | Month-end Retainer Balance | Current Month's Accrual | Paid in Current Month | Date of Court Approval | Month-end Balance Due * |
|---|---|---|---|---|---|
| Debtor's Counsel | $ 0.00 | $ 0.00 | $ 0.00 | | $ 0.00 |
| Counsel for Unsecured Creditors' Committee | 0.00 | 0.00 | 0.00 | | 0.00 |
| Trustee's Counsel | 0.00 | 0.00 | 0.00 | | 0.00 |
| Accountant | 10,000.00 | 0.00 | 0.00 | | 0.00 |
| Other: | 0.00 | 0.00 | 0.00 | | 0.00 |
| Total | $ 0.00 | $ 0.00 | $ | | $ |

*Balance due to include fees and expenses incurred but not yet paid.

### *SCHEDULE OF PAYMENTS AND TRANSFERS TO PRINCIPALS/EXECUTIVES\*\**

| Payee Name | Position | Nature of Payment | Amount |
|---|---|---|---|
| | | | $ |
| | | | |
| | | | |

**\*\*List payments and transfers of any kind and in any form made to or for the benefit of any proprietor, owner, partner, shareholder, officer or director.**

Page 2 of 2
Rev. 12/10/2009

**DEBTOR:** Sugarloaf Holdings LLC                    **CASE NO:** 18-27705 UT

### Form 2-F
### QUARTERLY FEE SUMMARY *
### For the Month Ended: April 30, 2019

| Month | Year | | Cash Disbursements ** | Quarterly Fee Due | Check No. | Date Paid |
|---|---|---|---|---|---|---|
| January | 2019 | $ | 59,589.10 | | | |
| February | 2019 | | 306,373.40 | | | |
| March | 2019 | | 43,446.36 | | | |
| TOTAL 1st Quarter | | $ | 409,408.86 | $ 4,875.00 | 1025 | 4/15/2019 |
| April | 2019 | $ | 99,608.15 | | | |
| May | | | | | | |
| June | | | | | | |
| TOTAL 2nd Quarter | | $ | 99,608.15 | $ 975.00 | | |
| July | | $ | | | | |
| August | | | | | | |
| September | | | | | | |
| TOTAL 3rd Quarter | | $ | | $ | | |
| October | | $ | | | | |
| November | | | | | | |
| December | | | | | | |
| TOTAL 4th Quarter | | $ | | $ | | |

### FEE SCHEDULE (as of JANUARY 1, 2008)
*Subject to changes that may occur to 28 U.S.C. §1930(a)(6)*

| Quarterly Disbursements | Fee | Quarterly Disbursements | Fee |
|---|---|---|---|
| $0 to $14,999................... | $325 | $1,000,000 to $1,999,999.............. | $6,500 |
| $15,000 to $74,999.......... | $650 | $2,000,000 to $2,999,999.............. | $9,750 |
| $75,000 to $149,999........ | $975 | $3,000,000 to $4,999,999.............. | $10,400 |
| $150,000 to $224,999...... | $1,625 | $5,000,000 to $14,999,999 ....... | $13,000 |
| $225,000 to $299,999...... | $1,950 | $15,000,000 to $29,999,999.... | $20,000 |
| $300,000 to $999,999...... | $4,875 | $30,000,000 or more | $30,000 |

\*   This summary is to reflect the current calendar year's information cumulative to the end of the reporting period

\*\*  Should agree with line 3, Form 2-B.  Disbursements are net of transfers to other debtor in possession bank accounts

*Failure to pay the quarterly fee is cause for conversion or dismissal of the chapter 11 case. [11 U.S.C. Sec. 1112(b)(10)]*
*In addition, unpaid fees are considered a debt owed to the United States and will be assessed interest under 31 U.S.C. §3717*

Page 1 of 1
Rev. 12/10/2009

DEBTOR: __Sugarloaf Holdings LLC__          CASE NO: __18-27705 UT__

### Form 2-G
### NARRATIVE
For Period Ending __April 30, 2019__

**Please provide a brief description of any significant business and legal actions taken by the debtor, its creditors, or the court during the reporting period, any unusual or non-recurring accounting transactions that are reported in the financial statements, and any significant changes in the financial condition of the debtor which have occurred subsequent to the report date.**

The debtor commenced its Chapter 11 petition on October 15, 2018.
The debtor remains in possession of its estate.

- 10 of the 20 pivots are planted and sprouted and growing.  Field conditions continue to be wet and favorable.  The remaining farm should be planted in the next few weeks.
- The debtor is continuing to work through alternative financing to Bank of the West.
- The stocker cattle are on deep grass and making large gains.

# Wells Fargo Simple Business Checking



Account number: ●●●●●●●●●●   ■   April 1, 2019 - April 30, 2019   ■   Page 1 of 5

SUGARLOAF HOLDINGS LLC
DEBTOR IN POSSESSION
CH11 CASE #18-27705 (UT)
1471 N 900 W
LEHI UT 84043-1098

### Questions?

*Available by phone 24 hours a day, 7 days a week:*
Telecommunications Relay Services calls accepted

**1-800-CALL-WELLS**  (1-800-225-5935)

*TTY:* 1-800-877-4833
*En español:* 1-877-337-7454

*Online:* wellsfargo.com/biz

*Write:* Wells Fargo Bank, N.A. (119)
P.O. Box 6995
Portland, OR  97228-6995

## Your Business and Wells Fargo

Visit wellsfargoworks.com to explore videos, articles, infographics, interactive tools, and other resources on the topics of business growth, credit, cash flow management, business planning, technology, marketing, and more.

### Account options

*A check mark in the box indicates you have these convenient services with your account(s). Go to wellsfargo.com/biz or call the number above if you have questions or if you would like to add new services.*

| | |
|---|---|
| Business Online Banking | ✓ |
| Online Statements | ✓ |
| Business Bill Pay | ☐ |
| Business Spending Report | ✓ |
| Overdraft Protection | ☐ |

## Activity summary

| | |
|---|---|
| Beginning balance on 4/1 | $112,494.03 |
| Deposits/Credits | 0.00 |
| Withdrawals/Debits | - 99,608.15 |
| **Ending balance on 4/30** | **$12,885.88** |
| Average ledger balance this period | $60,929.22 |

Account number: ●●●●●●●●●●

**SUGARLOAF HOLDINGS LLC**
**DEBTOR IN POSSESSION**
**CH11 CASE #18-27705 (UT)**
*Utah account terms and conditions apply*

For Direct Deposit use
Routing Number (RTN):  124002971

For Wire Transfers use
Routing Number (RTN):  121000248

**Overdraft Protection**

This account is not currently covered by Overdraft Protection.  If you would like more information regarding Overdraft Protection and eligibility requirements please call the number listed on your statement or visit your Wells Fargo store.

Account number: ████████    ■ April 1, 2019 - April 30, 2019    ■ Page 2 of 5



## Transaction history

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|------|-------------|-------------|-------------------|---------------------|---------------------|
| 4/1 | | Purchase authorized on 03/28 5561 Ced 801-7565555 UT S589087803912392 Card 3786 | | 572.57 | |
| 4/1 | | Purchase authorized on 03/29 Rocky Mountain Pow 888-221-7070 OR S589088550277879 Card 3786 | | 104.95 | 111,816.51 |
| 4/2 | | Purchase authorized on 04/01 Metalmart CO Lehi UT S309091529426958 Card 3786 | | 132.83 | 111,683.68 |
| 4/3 | | Purchase authorized on 04/03 Batteries Plus #0848 Lehi UT P00469093691995013 Card 3786 | | 295.98 | 111,387.70 |
| 4/4 | | Purchase authorized on 04/03 Flying J #510 Scipio UT P00389094175092369 Card 3786 | | 43.79 | 111,343.91 |
| 4/8 | | Purchase authorized on 04/04 Oversons Farm Cent Delta UT S469094858200630 Card 3786 | | 33.66 | |
| 4/8 | | Purchase authorized on 04/05 Utah-Dmv Offices Salt Lake Cit UT S389095540796345 Card 3786 | | 318.00 | |
| 4/8 | | Purchase authorized on 04/05 Roper Lumber Fillmore UT S589095557030463 Card 3786 | | 18.99 | |
| 4/8 | | Purchase authorized on 04/05 Ifa Delta Delta UT S469095831741310 Card 3786 | | 764.56 | |
| 4/8 | | Purchase authorized on 04/06 Roper Lumber Fillmore UT S469096613166073 Card 3786 | | 50.72 | 110,157.98 |
| 4/10 | | Purchase authorized on 04/08 Loves Country 0000 Cedar City UT S389099068383247 Card 3786 | | 86.12 | |
| 4/10 | 1023 | Check | | 2,600.00 | |
| 4/10 | 1024 | Check | | 22,510.00 | 84,961.86 |
| 4/11 | | Purchase authorized on 04/11 Round Up #1 Lehi UT P00000000139354212 Card 3786 | | 42.99 | 84,918.87 |
| 4/12 | < | Business to Business ACH Debit - Zamp Hr Invoice 190412 H020800 Sugarloaf Holdings LLC | | 9,543.53 | |
| 4/12 | < | Business to Business ACH Debit - Reladyne West Spt ACH Sugarloaf 04/11/19 | | 10,624.84 | 64,750.50 |
| 4/15 | | Purchase authorized on 04/15 Round Up #1 Lehi UT P00000000776097915 Card 3786 | | 43.14 | |
| 4/15 | 1026 | Check | | 1,659.00 | 63,048.36 |
| 4/18 | | Purchase authorized on 04/17 Mountainland Suppl 855-331-3931 UT S389107768609722 Card 3786 | | 1,762.79 | |
| 4/18 | 1027 | Check | | 892.65 | |
| 4/18 | 1029 | Check | | 28,482.77 | 31,910.15 |
| 4/19 | | Purchase authorized on 04/18 Lbisat LLC 801-5019090 UT S589108670485124 Card 3786 | | 1,401.60 | |
| 4/19 | 1028 | Check | | 632.14 | |
| 4/19 | 1025 | Check | | 4,875.00 | 25,001.41 |
| 4/23 | | Purchase authorized on 04/22 Mountainland Suppl Orem UT S389112519003328 Card 3786 | | 677.15 | 24,324.26 |
| 4/25 | | Purchase authorized on 04/23 Exxonmobil 4803 Preston ID S309114112873166 Card 3786 | | 62.65 | |
| 4/25 | | Purchase authorized on 04/24 Mountainland Suppl 435-896-9606 UT S309114508895988 Card 3786 | | 182.96 | 24,078.65 |
| 4/26 | < | Business to Business ACH Debit - Zamp Hr Invoice 190426 H021078 Sugarloaf Holdings LLC | | 9,543.53 | 14,535.12 |
| 4/29 | | Purchase authorized on 04/26 Sq *Dutson Supply Delta UT S389116702988880 Card 3786 | | 647.00 | |

Account number: ▓▓▓▓▓▓▓▓▓ ■ April 1, 2019 - April 30, 2019 ■ Page 3 of 5



## Transaction history (continued)

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|------|-------|-------------|--------|-----------|---------|
| 4/29 | | Purchase authorized on 04/26 Mountainland Suppl 435-725-0019 UT S309116794775300 Card 3786 | | 783.58 | |
| 4/29 | | Fb P-C Ins Payment 190426 Fbmins020773425 Sugarloaf Holdings, Ll | | 218.66 | 12,885.88 |
| Ending balance on 4/30 | | | | | 12,885.88 |
| Totals | | | $0.00 | $99,608.15 | |

The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted.  If you had insufficient available funds when a transaction posted, fees may have been assessed.

<   *Business to Business ACH:* If this is a business account, this transaction has a return time frame of one business day from post date. This time frame does not apply to consumer accounts.

### Summary of checks written   (checks listed are also displayed in the preceding Transaction history)

| Number | Date | Amount | Number | Date | Amount | Number | Date | Amount |
|--------|------|--------|--------|------|--------|--------|------|--------|
| 1023 | 4/10 | 2,800.00 | 1026 | 4/15 | 1,659.00 | 1028 | 4/19 | 632.14 |
| 1024 | 4/10 | 22,510.00 | 1027 | 4/18 | 892.65 | 1029 | 4/18 | 28,482.77 |
| 1025 | 4/19 | 4,875.00 | | | | | | |

### Monthly service fee summary

For a complete list of fees and detailed account information, see the Wells Fargo Account Fee and Information Schedule and Account Agreement applicable to your account (EasyPay Card Terms and Conditions for prepaid cards) or talk to a banker. Go to wellsfargo.com/feefaq for a link to these documents, and answers to common monthly service fee questions.

| Fee period 04/01/2019 - 04/30/2019 | Standard monthly service fee $10.00 | You paid $0.00 |
|---|---|---|
| How to avoid the monthly service fee | Minimum required | This fee period |
| Have any ONE of the following account requirements | | |
| · Average ledger balance | $500.00 | $60,929.00 ☑ |

C1/C1

### Account transaction fees summary

| Service charge description | Units used | Units Included | Excess units | Service charge per excess units ($) | Total service charge ($) |
|---|---|---|---|---|---|
| Cash Deposited ($) | 0 | 3,000 | 0 | 0.0030 | 0.00 |
| Transactions | 11 | 50 | 0 | 0.50 | 0.00 |
| Total service charges | | | | | $0.00 |

 # IMPORTANT ACCOUNT INFORMATION

Effective June 24, 2019, the cash deposited fee will be renamed to cash deposit processing fee. There is no change to the amount of cash you can deposit to your account each month at no charge. In addition, the fee assessed for exceeding the amount of cash deposited each month with no fee will remain the same. To review the amount of cash deposits processed each month with no fee

Account number: ▓▓▓▓▓▓▓▓▓   ■ April 1, 2019 - April 30, 2019   ■ Page 4 of 5



and any cash deposit processing fees, please refer to Cash Deposited information in the "Account transaction fees summary" section of your statement.

If you have questions, please contact your local banker or call the phone number listed at the top of your statement. We appreciate your business and look forward to continuing to serve your financial needs.

Account number:   ■ April 1, 2019 - April 30, 2019  ■ Page 5 of 5



**General statement policies for Wells Fargo Bank**

■ **Notice:** Wells Fargo Bank, N.A. may furnish information about accounts belonging to individuals, including sole proprietorships, to consumer reporting agencies. If this applies to you, you have the right to dispute the accuracy of information that we have reported by writing to us at: Overdraft Collections and Recovery, P.O. Box 5058, Portland, OR 97208-5058.

You must describe the specific information that is inaccurate or in dispute and the basis for any dispute with supporting documentation. In the case of information that relates to an identity theft, you will need to provide us with an identity theft report.

**Account Balance Calculation Worksheet**

1. Use the following worksheet to calculate your overall account balance.

2. Go through your register and mark each check, withdrawal, ATM transaction, payment, deposit or other credit listed on your statement. Be sure that your register shows any interest paid into your account and any service charges, automatic payments or ATM transactions withdrawn from your account during this statement period.

3. Use the chart to the right to list any deposits, transfers to your account, outstanding checks, ATM withdrawals, ATM payments or any other withdrawals (including any from previous months) which are listed in your register but not shown on your statement.

**ENTER**
**A.** The ending balance
shown on your statement . . . . . . . . . . . . . . . . . . . . . $ _____

**ADD**
**B.** Any deposits listed in your          $ _____
register or transfers into          $ _____
your account which are not          $ _____
shown on your statement.          + $ _____

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . TOTAL $ _____

**CALCULATE THE SUBTOTAL**
(Add Parts A and B)

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . TOTAL $ _____

**SUBTRACT**
**C.** The total outstanding checks and
withdrawals from the chart above . . . . . . . . . . . . . - $ _____

**CALCULATE THE ENDING BALANCE**
(Part A + Part B - Part C)
This amount should be the same
as the current balance shown in
your check register . . . . . . . . . . . . . . . . . . . . . . . $ . _____

| Number | Items Outstanding | Amount |
|--------|-------------------|--------|
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        | Total amount      | $      |

©2010 Wells Fargo Bank, N.A. All rights reserved. Member FDIC. NMLSR ID 399801

## EXHIBIT 3

4832-7517-6339v5

## Liquidation Analysis of Sugarloaf Holdings, LLC

| | Chapter 11 Plan | Chapter 7 Liquidation Proceeds | Notes |
|---|---|---|---|
| Cash | | 7,365 | (a) |
| Accounts Receivable | | 93,950 | |
| Deposits and Prepayments | | 95,948 | |
| Cattle | | 200,000 | |
| Personal Property | | 1,136,500 | (b) |
| Real Property | | 15,230,800 | (c) |
| | | | |
| Total Assets Value | | 16,764,563 | |
| Liquidation Discount | | 15% | |
| Total Proceeds of Estate Liquidation of Assets | N/A | 14,249,878 | |
| Administrative Claims: | | | |
|     Farm Credit Leasing Services Corporation | (65,536) | | |
|     Accounting Fees | (15,000) | (40,000) | (d) |
|     Attorney Fees | (35,000) | (35,000) | |
|     US Trustee Fees | (900) | (900) | |
| | | | |
|     Total | (116,436) | (75,900) | |
| | | | |
| Net Proceeds | (116,436) | 14,173,978 | |

All payments below funded through operations

| Type of allowed claim or Equity Interest | Claim Amount | Recovery Amount | Recovery % | Claim Amount | Recovery Amount | Recovery % |
|---|---|---|---|---|---|---|
| 1 - Bank of the West Claims | 12,652,955 | 17,972,888 | 142% | 12,652,955 | 12,652,955 | 100% |
| 2 - AgCo Claims | 512,091 | 572,771 | 112% | 512,091 | 512,091 | 100% |
| 3 - General Unsecured Claims | 1,576,582 | 1,672,395 | 106% | 1,642,118 | 1,008,932 | 61% (f) |
| 4- Insider General Unsecured Claims | 1,075,200 | - | 0% | 1,075,200 | - | |
| 5 - Equity Interests in the Debtor | - | - | | - | - | |
|     Total | 15,816,828 | 20,218,054 | -- | 15,882,364 | 14,173,978 | -- |
| | - | | | | | |

Notes:
(a) as of May 31, 2019; cash on hand will vary depending on cash receipts and disbursements between now and the Effective Date.
(b) personal property based on scheduled value of assets (does not included leased equipment, pivot irrigation system, genetic material, or anticipated harvested crop
(c) based on findings of the Court dated December 7, 2018, includes pivot irrigation system
(d) The chapter 7 trustee would likely retain its own professionals (law firms, accounting firms, investment bankers, etc.) to assist in the liquidation and wind down of the Debtors' estates.

## Schedule of Assets of Sugarloaf Holdings, LLC

**Current Cash and Accounts**

| | |
|---|---:|
| Cash | 7,365 |
| Accounts Receivable | 93,950 |
| Cattle | 200,000 |
| Deposits | 95,948 |
| Total Current Cash and Accounts | 397,263 |

**Fixed Assets**

Equipment, Fixtures & Vehicles

| | |
|---|---:|
| Maverick 27' Stock Trailer | 15000.00 |
| Goosneck 27" Stock Trailer | 17500.00 |
| E-Z Ration Feed Truck | 88000.00 |
| Powder River Crowd tub and Chute | 24000.00 |
| Silencer Chute | 19600.00 |
| 2017 Sitrex Pro/17 rake | 19500.00 |
| 2017 EZ400 Grain Tender Cart | 12200.00 |
| Handling Equipment | 24000.00 |
| Flat Deck Trailer | 9000.00 |
| John Deer Tractor | 22000.00 |
| Implements | 3000.00 |
| F-350 King Ranch | 15600.00 |
| JD 20/20 | 10000.00 |
| 2012 VW | 15000.00 |
| track hoe | 80000.00 |
| Challenger WR9870 | 155000.00 |
| Challenger 9195 | 33000.00 |
| Massey Ferguson 2270 | 145000.00 |
| Challenger MT0645D | 155000.00 |
| Challenger MT0645D | 141000.00 |
| Landoll 5211 | 57500.00 |
| Great Plains 2400 Turbo Max | 45000.00 |
| 2012 VW Jetta | 15000.00 |
| 2005 Ford F350 | 15600.00 |
| | |
| Total | 1,136,500 |
| | |
| Land and Building | 15,230,800 |
| | 15,230,800 |
| | |
| Total Assets | 16,764,563 |

**AgCo Security Interest**

| | |
|---|---:|
| Challenger WR9870 | 155,000 |
| Challenger 9195 | 33,000 |
| Massey Ferguson 2270 | 145,000 |
| Challenger MT0645D | 155,000 |
| Challenger MT0645D | 141,000 |
| Landoll 5211 | 57,500 |
| Great Plains 2400 Turbo Max | 45,000 |
| | |
| Total | 731,500 |

## Schedule of Liabilities & Equity of Sugarloaf Holdings, LLC

| | | |
|---|---|---|
| **Bank of the West** | | |
| | 12,652,955 | Class |
| Total | 12,652,955 | 1 |
| | | |
| **AgCo Claims** | | |
| | 512,091 | |
| Total | 512,091 | 2 |
| | | |
| **Other Liabilities** | | |
| IRS | 3,846 | |
| Hansen, Allen & Luce | 23,175 | |
| Scales NW | 5,112 | |
| Wells Fargo | 15,267 | |
| John Deere Financial | 295,684 | |
| PacifiCorp dba Rocky Mountain Power | 368 | |
| Kirton McKonkie | 313,327 | |
| Farm Credit Leasing Services Corporation | 304,566 | |
| TNT General Contractors LLC | 134,811 | |
| Cardwell Distributors | 3,332 | |
| Clay Palfreman Trucking | 6,101 | |
| Farm Bureau | 7,862 | |
| Flowell Electric | 22,270 | |
| Fulmers | 23,508 | |
| Garnder Brothers Drilling | 385,140 | |
| Hermansen's Mill | 8,670 | |
| Hoffman AI Breeders | 254 | |
| Lake PhilGas | 926 | |
| Moyle Irrigation | 86,885 | |
| Overson Farm Center | 1,014 | |
| Total | 1,642,118 | 3 |
| | | |
| **Insider Liabilities** | | |
| Gray Holdings Corp. | 1,075,200 | |
| Total | 1,075,200 | 4 |
| | | 5 |
| | | |
| **Toal Liabilities** | 15,882,364 | |
| | | |
| **Equity Interest in the Debtor** | 882,199 | |
| | | |
| **Total Liabilities & Equity** | 16,764,563 | |

## PROOF OF SERVICE

I hereby certify that on this 8th day of July 2019, I electronically filed the foregoing **DEBTOR'S DISCLOSURE STATEMENT** as follows:

I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

- David P. Billings    dbillings@fabianvancott.com,
  jwinger@fabianvancott.com;mdewitt@fabianvancott.com
- Darwin H. Bingham    dbingham@scalleyreading.net, cat@scalleyreading.net
- P. Matthew Cox    bankruptcy_pmc@scmlaw.com
- Michael R. Johnson    mjohnson@rqn.com, docket@rqn.com;dburton@rqn.com
- John T. Morgan tr    john.t.morgan@usdoj.gov,
  James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov
- Gerald H. Suniville    gsuniville@fabianvancott.com, nnelson@fabianvancott.com
- United States Trustee    USTPRegion19.SK.ECF@usdoj.gov

/s/ Michael R. Brown
Michael R. Brown
**PARSONS BEHLE & LATIMER**

2