**This order is SIGNED.**


**Dated: February 16, 2022**



KEVIN R. ANDERSON
U.S. Bankruptcy Judge

*slo*

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re: | Bankruptcy Number: 18-27705 |
| SUGARLOAF HOLDINGS, LLC | Chapter 11 |
| Debtor | Hon. Kevin R. Anderson |

## MEMORANDUM DECISION ON FARMS, LLC'S MOTION TO AMEND SALE ORDER (DOCKET NO. 415)

The Chapter 11 trustee sold the Debtor's farm assets under § 363(f). The sale included a water right subject to a pre-petition, state court forfeiture action for nonuse. The purchaser asserts that the free and clear sale vitiated the forfeiture action. In counterpoint, the plaintiffs to the forfeiture action assert that: (1) the sale motion did not provide adequate notice regarding the water right or the forfeiture action; (2) the sale motion neither asserted nor established a basis to sell the water right free and clear under § 363(f); and (3) the forfeiture action is not a property interest that can be affected by § 363(f). The purchaser brought this motion to amend the sale order to state that the water right was sold free and clear of the forfeiture action. For the reasons set forth herein, the Court finds that the water right remains subject to the forfeiture action.

## I.    FACTS

1.      Property of the bankruptcy estate consisted of a 7,000-acre farm in central Utah that included multiple water rights, personal property, farm equipment, and grazing leases (the "Farm").

2.      One of the many water rights associated with the Farm is WRN 67-1752 (the "Water Right") that was accessed through a well on the Farm property until road construction buried it in 1990.[1]

3.      On May 17, 2017, Leslie Mascaro ("Mascaro") filed with the Utah Division of Water Rights a Report of Conveyance asserting a one-fourth interest in the Water Right.[2]

4.      On August 25, 2017, the Debtor filed a complaint in the Utah state court contesting Mascaro's claim to the Water Right and seeking to quiet title in the Debtor's name (the "Quiet Title Action").[3]

5.      In March 2018, other water right holders in proximity to the Farm (the "Pahvant Parties") filed a lawsuit in the Utah state court seeking a determination that the Debtor had forfeited or abandoned the Water Right under Utah Code Ann. § 73-1-4 (the "Forfeiture Action").[4] The complaint alleged that the Water Right had not been put to a beneficial use for a period of at least 25 years (1990 through 2015).

6.      On the same day, the Pahvant Parties also filed a motion in the Forfeiture Action for a preliminary injunction to prevent the Debtor from pumping water under the Water Right.[5]

---

[1] ECF No. 422, Ex. 1, Utah state court findings in *Sugarloaf Holdings LLC v. UDOT*, Civil No. 160700001.

[2] ECF No. 391 at p. 68-70.

[3] ECF No. 379 at p. 1; *Sugarloaf Holdings LLC, v. Leslie Mascaro*, Civil No. 170700036, before Judge Anthony L. Howell in the Fourth Judicial District Court, Fillmore Dept., Millard County, State of Utah.

[4] ECF No. 415, Ex. 1; Double O Pahvant Properties LLC, Leo Stott, Elizabeth Stott, Clark Thomas, Demar Iverson and Matthew Kesler v. Sugarloaf Holdings, LLC, et al., Civil No. 180700008, before Judge Anthony L. Howell in the Fourth Judicial District Court, Fillmore Dept., Millard County, State of Utah.

[5] ECF No. 422, Ex. 2.

7.     On June 8, 2018, the Debtor filed an answer and asserted 28 counterclaims against the various Pahvant Parties (the "Pahvant Counterclaims").[6]

8.     On October 15, 2018, the Debtor filed this Chapter 11 bankruptcy case.

9.     Thereafter, the Debtor and the Pahvant Parties reached stipulations that the Debtor would not use the Water Right for the 2018 and 2019 irrigation season, and the Pahvant Parties would stay their prosecution of the Forfeiture Action and the preliminary injunction.[7]

10.     On December 4, 2019, the Debtor filed a motion to sell the Farm.[8] The motion disclosed that "the disputed water right, no. 67-1752, is not included in the sale." This sale never closed.

11.     In the spring of 2020, the Debtor began pumping water from the well but without the required measuring equipment to ensure that the Debtor was not exceeding the Water Right's allocated usage.[9]

12.     Other water users noticed a decline in their water availability and contacted the Utah Division of Water Rights ("DWR") to investigate.[10]

13.     The Pahvant Parties then filed a motion for relief from the bankruptcy stay to prosecute their pending motion for a preliminary injunction in the Forfeiture Action. The Bankruptcy Court granted the Pahvant Parties relief from stay with an effective date of June 24, 2020.[11]

---

[6] ECF No. 415, Ex. 2 at p. 25.
[7] ECF No. 422, Ex. 4.
[8] ECF No. 169.
[9] ECF No. 422, Ex. 7, Notice of Investigation issued by the Utah Division of Water Rights on May 28, 2020.
[10] *Id*.
[11] ECF No. 243.

14.     On June 25, 2020, the DWR issued a cease and desist order against the Debtor regarding the Water Right.[12]

15.     On July 17, 2020, the Utah state court granted a preliminary injunction finding that because it was "very familiar" with the history of the Water Right, "there is a substantial likelihood that the [Pahvant Parties] will proceed[13] on the merits of their claims." The specifics of the preliminary injunction included the following:

> Mr. Gray and Sugarloaf and their officers, agents, servants, employees, attorneys, and anyone in active concert or participation with them who receive notice of this order are **ENJOINED** from diverting and using water under Water Right Numbers 67-489 and 67-1752 [the Water Right] while this case remains pending. Those "in active concert or participation" with Mr. Gray and Sugarloaf include, without limitation, Mark McDougal and Triple C Farms, LLC, such that this injunction is binding upon them once they receive notice of the order.[14]

16.     On August 5, 2020, the Court granted a motion to appoint a trustee because the Debtor, *inter alia*, was unable to successfully prosecute the Chapter 11 case.[15] The U.S. Trustee appointed David L. Miller as the Chapter 11 trustee (the "Trustee").[16]

17.     On January 8, 2021, the Trustee filed a motion to sell the Farm real property and related assets (the "Purchased Assets") free and clear of any interest under § 363(f) (the "Sale Motion").[17] The buyer was Farms, LLC, an entity organized in Idaho (hereinafter "Idaho Farms"), who had previously acquired the primary lien against the Farm from Bank of the West. The Sale Motion only asserted a single basis to sell the Purchased Assets free and clear of interests under § 363(f)(2):

---

[12] ECF No. 422, Ex. 8.

[13] The Court interprets this as meaning the Pahvant Parties will "prevail" on the merits.

[14] ECF No. 415, Ex. 4, Order Granting Preliminary Injunction at p. 3-4 (emphasis in original).

[15] ECF No. 281.

[16] ECF No. 282.

[17] ECF No. 343.

Trustee is only aware of the [Idaho] Farms Lien against the Purchased Assets. Since [Idaho] Farms is the purchaser of the Purchased Assets and consents to the proposed sale, 11 U.S.C. § 363(f)(2) is satisfied and the sale may be consummated free and clear of all liens, interests, and encumbrances.[18]

18.     The Sale Motion provided that the estate would convey a "[f]ee simple interest in various water rights" listed on Exhibit 3, which listed around 30 water rights, including the Water Right at issue (#67-1752). This is the only specific reference in the Sale Motion to the Water Right.

19.     The Asset Purchase Agreement attached to the Sale Motion states that the sale is "'AS IS,' 'WHERE IS,' 'IF IS,' and 'WITH ALL FAULTS.'"[19] It also states that the Trustee is not making any warranties as to "the quality or right to use any . . . water right, point of diversion, flow rate, or any other aspect or characteristic of the Purchased Assets."[20]

20.     As to the due diligence of Idaho Farms, the Asset Purchase Agreement represents:

Purchaser [Idaho Farms] has conducted an independent inspection and investigation of the physical condition of all portions [of] the Purchased Assets and all such other matters relating to or affecting or comprising the Purchased Assets and/or the Assumed Liabilities as Purchaser deemed necessary or appropriate and that in proceeding with the Contemplated Transactions, Purchaser is doing so based solely upon such independent inspections and investigations.[21]

21.     The Sale Motion was noticed to the mailing matrix, and no objections were filed. Based on the negative noticing procedures of the Court, the hearing was stricken. On February 9, 2021, the Court entered its order approving the sale pursuant to the terms of the Asset Purchase Agreement (the "Sale Order").[22]

---

[18] ECF No. 282.
[19] *Id*. at p. 36.
[20] *Id*.
[21] *Id*.
[22] ECF No. 357.

22.    On April 15, 2021, the Trustee filed a motion to also sell to Idaho Farms both the Quiet Title Action against Mascaro and the Pahvant Counterclaims.[23] There were no objections, and the Court approved the sale of the claims.[24]

23.    However, Mascaro thereafter contacted the Trustee and challenged the sale of the claims to Idaho Farms because the notice was not mailed to her correct address. The parties worked out a settlement whereby the Trustee held an auction and Mascaro ended up purchasing the Debtor's claim against her as asserted in the Quiet Title Action.[25]

24.    On June 8, 2021, Mascaro filed a motion to set aside the Farm Sale Order on the same grounds that notice of the motion was not mailed to her correct address. The Court held a hearing on Mascaro's motion, but the parties thereafter resolved the matter by submitting a stipulated, amended order. That amended order carved out Mascaro's asserted, one-fourth interest in the Water Right, with that interest to be subsequently decided in the state court Quiet Title Action.[26]

25.    But this did not resolve all issues regarding the Water Right. On May 10, 2021, Triple C Farms and Mark McDougal (parties subject to the state court's Preliminary Injunction), filed a motion in the Forfeiture Action to discharge the Preliminary Injunction. At the hearing on June 2, 2021, Judge Howell ruled that he did "not interpret the [bankruptcy] sale order as vitiating the preliminary injunction that [he] issued and the effective encumbrance on those water rights."[27]

---

[23] ECF No. 369.

[24] ECF No. 374.

[25] ECF No. 385.

[26] ECF No. 409.

[27] ECF No. 415 at p. 212.

26.     On December 17, 2021, Idaho Farms filed this motion to amend the Farm Sale Order to clarify that the sale of the Water Right was free and clear of the Pahvant Parties' Forfeiture Action and Preliminary Injunction.[28]

## II.   ANALYSIS

### A.   Introduction

Section 363(f)[29] is one of the most powerful provisions in the Bankruptcy Code in that it can authorize a sale of estate property free and clear of interests, with such interests to attach to the sale proceeds. This allows property subject to liens, interests, and disputes to be quickly returned to its intended, productive purpose, with interests in the property being transferred to the sale proceeds. The claims of interest holders in the sale proceeds can then be resolved in the bankruptcy court (or other forums) without leaving the property in litigation limbo. Thus, while § 363(f) has the power to sell property free and clear, it does not alter or extinguish the value of a party's property interests but "preserves all parties' rights by simply transferring interests from property to dollars that represent its value."[30]

In this case, Idaho Farms asserts that the § 363(f) sale conveyed the Water Right free and clear of the Forfeiture Action. But the interests of the Pahvant Parties in the Forfeiture Action cannot be transferred to the sale proceeds due to the unique property characteristics of a Utah water right. Thus, a § 363(f) sale of the Water Right would not preserve the Pahvant Parties' rights under the Forfeiture Action. Indeed, Idaho Farms asserts that the sale extinguished the Forfeiture Action.

Idaho Farms further asserts that the Pahvant Parties did not object to the Sale Motion. Thus, they are deemed to have consented to the sale of the Water Right free and clear of the Forfeiture

---

[28] ECF No. 415.

[29] All subsequent statutory references are to Title 11 of the U.S. Code unless otherwise specified.

[30] *In re Dewey Ranch Hockey, LLC*, 414 B.R. 577, 590-91 (Bankr. D. Ariz. 2009) (citing *In re Clark*, 266 B.R. 163 (9th Cir. B.A.P. 2001)).

Action pursuant to § 363(f)(2). In response, the Pahvant Parties assert that the Sale Motion did not

contain sufficient information to give them adequate notice that the Water Right was being sold

free and clear of the Forfeiture Action. Consequently, its failure to object to the sale cannot be

considered consent under § 363(f)(2). The Pahvant Parties further argue that the Sale Motion

neither asserted nor established a specific basis under § 363(f)(2) to sell the Water Right free and

clear of the Forfeiture Action.

For the reasons set forth below, the Court finds that the sale of the Water Right under §

363 did not extinguish the Forfeiture Action. As a result, Idaho Farms acquired the Water Right

subject to the Forfeiture Action.

**B.     The Sale Motion did not Provide Adequate Notice to the Pahvant Parties, and
It did not State a Specific Basis Under § 363(f) to Sell the Water Right Free
and Clear of the Forfeiture Action.**

The Sale Motion proposed to sell the Purchased Assets, including the Water Right, free

and clear of interests under § 363(f). Because a § 363 sale impacts the rights of parties asserting

an interest in the property, strict compliance with the noticing requirements of Bankruptcy Rules

2002, 6004, 9014, and 7004 is mandatory. Impacted parties are not only entitled to adequate notice

of the motion and hearing,[31] but also adequate notice as to how the sale will affect their rights:

> [T]he motion [to sell] served on the secured creditor must be sufficient to place
> the creditor on notice that his lien is at issue. The lien should be reasonably
> identified. The relief requested and the basis for the relief requested should be
> plainly stated.
> . . .
> Constitutional due process is not simply satisfied by properly placing a piece of
> paper in the hands of the respondent. The paper served must contain adequate
> information. The content must be reasonably calculated to put the respondent on
> notice. The person whose interests are sought to be affected should be identified.
> In this case, both the [§ 363] motion and the notice were designed for the general
> creditor body. Neither identified any individual secured creditor. The liens in

---

[31] *Mullane v. Central Hanover Bank & Trust*, 339 U.S. 306, 314 (1950).

jeopardy were not identified. Both reasonable identification of the creditors and their liens in issue are necessary elements of a proper motion. [32]

In addition, the Sale Motion fails to state any specific basis to sell the Water Right free and clear under § 363(f):

> Closely related to the failure to identify the secured creditors who are at risk and the challenged liens is the failure to assert sufficient grounds upon which relief may be granted. The trustee stated that he "questioned the validity of certain liens, and requests, therefore, that the sale be free and clear of liens, and that the liens attach to those proceeds." The secured creditor is entitled to some information as to why the lien is challenged so that he may defend his interests appropriately. Merely reciting this conclusion does not suffice to apprise the secured creditor of the basis for that conclusion.[33]

In this case, the Sale Motion makes the single assertion that Idaho Farms holds a lien in the Purchased Assets and consents to the sale under § 363(f)(2):

> Trustee asserts that a free and clear sale of the Property is appropriate under 11 U.S.C. § 363(f)(2). Trustee is only aware of the [Idaho] Farms Lien against the Purchased Assets. Since [Idaho] Farms is the purchaser of the Purchased Assets and consents to the proposed sale, 11 U.S.C. § 363(f)(2) is satisfied and the sale may be consummated free and clear of all liens, interests, and encumbrances.[34]

The Sale Motion does not mention the Water Right except to list it on Exhibit 3 along with 30 other water rights to be included in the sale. The Sale Motion does not identify the Pahvant Parties or disclose the pending Forfeiture Action. It does not state how the sale will affect the Forfeiture Action or the Pahvant Parties. And most problematic, it does not state a specific basis under § 363(f) to sell the Water Right free and clear of the Forfeiture Action.

The failure of the Sale Motion to address the Forfeiture Action cannot be because it was unknown, as its existence is obvious to anyone looking at the bankruptcy case docket. Specifically,

---

[32] *In re Takeout Taxi Holdings, Inc.*, 307 B.R. 525, 532-33 (Bankr. E.D. Va. 2004).

[33] *Id.* at 533 (internal citations omitted).

[34] ECF No. 343 at p. 16.

the Forfeiture Action was listed in the Debtor's Statement of Financial Affairs.[35] The Pahvant

Parties appeared in the bankruptcy case seeking relief from stay to pursue the Forfeiture Action.[36]

The Court granted the motion for relief from stay[37] so the Pahvant Parties could obtain the

Preliminary Injunction in the Forfeiture Action.[38] In addition, Idaho Farms asserted in the Asset

Purchase Agreement that it conducted its own independent inspection and investigation of the

Purchased Assets. Based on these facts, the Court cannot find that the Forfeiture Action was

omitted from the Sale Motion because it was unknown.

Further, Idaho Farms asserts that the acquisition of the Water Right free and clear of the

Forfeiture Action was essential to its purchase. It is then curious that Idaho Farms was not more

engaged in ensuring that the Sale Motion addressed the Water Right, the Pahvant Parties, and the

Forfeiture Action. In addition, Idaho Farms purchased the Farm assets "as, where is, if is, and with

all faults."[39] This same paragraph in the Sale Agreement also states that the Trustee is not making

any representations or warranties to Idaho Farms as to the "quality, or right to use any . . . water

right, point of diversion, flow rate, or any other aspect or characteristics of the Purchased Assets."

While it was the Trustee's burden to establish cause to sell the Water Right free and clear under §

363, it was the burden of Idaho Farms to ensure that the terms of the sale, as set forth in the Asset

Purchase Agreement and the Sale Motion, accurately reflected its understanding of what it was

buying. As explained above, the Court must assume that Idaho Farms knew about the Forfeiture

Action before the entry of the Sale Order. The Court has not heard a satisfactory explanation from

---

[35] ECF Nos. 28 (Statement of Financial Affairs) at p. 24, 219-20.
[36] ECF No. 219 and 220.
[37] ECF No. 243.
[38] ECF No. 415, Ex. 4.
[39] ECF No. 343 at p. 36.

Idaho Farms as to why it failed to seek clarification of this "essential" Water Right in the Trustee's Sale Motion.

For these reasons, the Court finds that the Sale Motion does not contain adequate notice as to the Pahvant Parties to make the Sale Order effective as to them. Further, the Sale Motion neither states nor establishes a basis under § 363(f) to sell the Water Right free and clear of the Forfeiture Action. Therefore, the Court will deny the motion of Idaho Farms to amend the Sale Order and clarify that the Water Right was sold subject to the Forfeiture Action.

1.  <u>Did the Pahvant Parties Consent to the Sale by Not Filing an Objection to the Motion?</u>

Regardless of the omissions in the Sale Motion, Idaho Farms asserts that the sale of the Water Right was free and clear of the Forfeiture Action for the following reasons: (1) the Pahvant Parties did not object to the Sale Motion, so they are deemed to have consented to the sale of the Water Right free of the Forfeiture Action under § 363(f)(2); and/or (2) the Water Right is subject to a bona fide dispute as evidenced by the Forfeiture Action under § 363(f)(4).

It is true that failure to object to a § 363 sale may constitute consent. But this requires that the notice be constitutionally adequate to advise the party that its interest in the property is about to be extinguished or exchanged for an interest in the sale proceeds.[40] While there is a split of authority whether a party's failure to object to a sale is the equivalent of "consent" for purposes of § 363(f)(2),[41] the majority view is that consent is implied.

---

[40] *Future Source LLC v. Reuters Ltd.*, 312 F.3d 281, 285 (7th Cir. 2002) ("It is true that the Bankruptcy Code limits the conditions under which an interest can be extinguished by a bankruptcy sale, but one of those conditions is the consent of the interest holder, and lack of objection (provided of course there is notice) counts as consent.").

[41] *See, e.g., In re DeCelis*, 349 B.R. 465, 468 (Bankr. E.D. Va. 2006) ("The distinction between silence and consent is clear. Unless there is a duty to speak, silence signifies nothing."); *In re Roberts*, 249 B.R. 152, 155 (Bankr. W.D. Mich. 2000) (determining that silence is not the equivalent of consent for purposes of § 363(f)(2)).

Nonetheless, in determining whether acquiescence equals consent under § 363(f)(2), the Court will consider and balance the following factors: (1) the nature of the party's asserted interest in the property to be sold; (2) the seller's and/or buyer's actual or imputed awareness of the interest; (3) the adequacy of notice and information in the sale motion as to the sale's impact on the interest; (4) the adequacy of service of the motion and notice of hearing on the interest holder; and (5) if the Court were to find silence to be consent, the resulting consequences of a free and clear sale on the buyer, the seller, and the interest holder.

As explained more fully below, the Forfeiture Action seeks neither a monetary nor equitable remedy. It entails a unique outcome that results in a return of the Water Right to the public pool for subsequent appropriation. This is not an interest that can be transferred to the sale proceeds. Next, the existence of the Forfeiture Action was open and notorious, and the Trustee and Idaho Farms knew or should have known about it. Thus, it should have been specifically addressed in the Sale Motion, but it was not. While the Pahvant Parties were served with the motion, the Court has already found that the notice therein regarding the Forfeiture Action was inadequate. Further, if the Court rules that the sale extinguished the Forfeiture Action, it not only terminates the rights of the Pahvant Parties under the Forfeiture Action, but it also prevents the unused Water Right from returning to the public body of water for subsequent, beneficial use pursuant to the priorities of the forfeiture statute. Consequently, a sale of the Water Right free and clear goes beyond impacting the Pahvant Parties; it impinges on Utah's water law policy that determines how, where, and by whom its public water is used.[42] Lastly, while the Forfeiture Action may ultimately result in Idaho Farms losing the Water Right, it is not without a possible remedy as it

---

[42] *See Wash. Cnty. Water Conservancy Dist. v. Morgan*, 82 P.3d 1125, 1129 (Utah 2003) ("The purpose of the forfeiture statute is to benefit the public generally by promoting the beneficial and efficient use of water.").

could seek to reclaim the Water Right from the public pool by making an application for appropriation. Based on these factors, the Court cannot find that the failure of the Pahvant Parties to object to the sale can or should constitute consent to the sale of the Water Right under § 363(f)(2).

> ## 2. Is the Forfeiture Action Subject to a Bona Fide Dispute Under § 363(f)(4)?

"The trustee bears the burden of showing that a bona fide dispute exists."[43] Yet, the Sale Motion makes no mention of the Forfeiture Action, let alone that it is subject to a bona fide dispute under § 363(f)(4). Therefore, the Court cannot use this basis to retroactively deem the sale of the Water Right free and clear of the Forfeiture Action under § 363(f)(4). To do so would violate the due process rights of the Pahvant Parties.

### C. The Unique Aspects of Utah's Water Law and the Forfeiture Action Preclude the Application of § 363(f).

A forfeiture action for nonuse under Utah law does not readily fit into the normal concepts of "property" under state law or an "interest" in property under § 363(f). As explained in *E. Jordan Irrigation Co. v. Morgan*, 860 P.2d 310, 317-18 (Utah 1993):[44]

> Water is a unique commodity in a desert state such as Utah; society could not survive here on a large scale if people did not capture, divert, and use the small amount of water that is present. Thus, while a water right is considered a "property right," certain legal principles regarding water have developed in the West that differ significantly from the rules regarding other forms of property. First, the law does not allow a private person to really "own" water. All waters in the state belong to the public, Utah Code Ann. § 73-1-1, and one may obtain only the right to use water. Second, as opposed to any other form of private property, one has the right to use water only to the extent that he or she puts it to "beneficial use." Utah Code Ann. § 73-1-3 ("Beneficial use shall be the basis, the measure and the limit of all rights to the use of water in this state."). Third, in accordance with the

---

[43] *In re Railyard Co.*, 572 B.R. 766, 772 (Bankr. D.N.M. 2017) (citation omitted).

[44] Citations to caselaw omitted. While this summary of Utah water law is given in the dissenting opinion, it is not in conflict with the conclusions of law in the majority decision. The dissent is as to the outcome and not the majority's holdings regarding Utah water law.

beneficial use principle, one forfeits his or her rights to water after failing to use it for five [or seven][45] years. Utah Code Ann. § 73-1-4.

Consistent with these unique aspects of a Utah water right, a forfeiture action does not result in the plaintiff receiving the water right or a money judgment.[46] Instead, the water right is returned to the public pool of water to first satisfy "other water rights in the hydrologic system in order of priority date" and then to be appropriated by other water users pursuant to Utah law.[47]

Therefore, if the Pahvant Parties prevail in the Forfeiture Action, they will not receive a money judgment, an equitable remedy, or any other relief that could be satisfied through the payment of money from the sale proceeds.[48] Accordingly, the Pahvant Parties do not hold a bankruptcy claim under § 101(5), which defines such as a "right to payment" or a "right to an equitable remedy for breach of performance." In the context of a free and clear sale under § 363(f), there is a distinction between monetary and non-monetary property interests:

> "Free and clear" should be interpreted as speaking of interests against the property, such as liens or mortgages, which now attach to the proceeds of the sale . . . . Clearly, [363(f)] and Bankruptcy Rule 6004, which refer to the sale of land "free and clear" from these "interests," are not intended to sever easements and other non-monetary property interests that are created by substantive State law.[49]

---

[45] The Forfeiture Action complaint asserts that the Water Right ceased being put to beneficial use in 1990. At that time, the forfeiture period was five years. Utah Code Ann. § 73-1-4(1)(a) (1953). In 2008, the legislature extended the forfeiture period to seven years. 2008 Ut. ALS 380, 2008 Utah Laws 380, 2008 Ut. Ch. 380, 2008 Ut. HB 51.

[46] Idaho Farms asserts that the Pahvant Parties are seeking a money judgment in the form of costs and attorney's fees. One, that claim is only ancillary to the forfeiture cause of action, and two, it is not clear to the Court that there is a statutory basis to recover attorney's fees for bringing a forfeiture action.

[47] Utah Code Ann.§ 73-1-4(2)(c)(iv)(2020) ("If in a judicial action a court declares a water right forfeited, on the date on which the water right is forfeited: (A) the right to beneficially use the water reverts to the public; and (B) the water made available by the forfeiture: (I) first, satisfies other water rights in the hydrologic system in order of priority date; and (II) second, may be appropriated as provided in this title.").

[48] *See Kennedy v. Medicap Pharmacies, Inc. (In re Kennedy)*, 267 F.3d 493, 497 (6th Cir. 2001) (holding that "[t]he right to equitable relief constitutes a [bankruptcy] claim only if it is an alternative to a right to payment or if compliance with the equitable order will itself require the payment of money.").

[49] *Koepp v. Holland*, 688 F. Supp. 2d 65, 92 (N.D.N.Y. 2010) (quoting *In re Oyster Bay Cove, Ltd.*, 196 B.R. 251, 254 (E.D.N.Y. 1996)).

In this case, the Forfeiture Action is a non-monetary cause of action that is solely a creation of substantive state law.[50]

Therefore, based on the facts of the case and the unique legal attributes of both a Utah water right and the outcome of a forfeiture action, the Court finds that § 363(f) cannot and did not result in a sale of the Water Right free and clear of the Forfeiture Action under Utah Code Ann. § 73-1-4 for the alleged  nonuse.

### D.    The Bankruptcy Court Lacks Jurisdiction to Enter an Order That has the Effect of Extinguishing the State Court Forfeiture Action.

Finally, the Court questions its jurisdictional authority under these circumstances to interpret § 363(f) in a manner that terminates the Forfeiture Action. The effect of such a holding would be the equivalent of this Court mandating that the Utah state court dismiss the Forfeiture Action for a failure to state a claim upon which relief can be granted (i.e., because the Water Right was sold free and clear of the Forfeiture Action). As held by Judge Gorsuch (now Justice Gorsuch):

> [*Stern v. Marshall*] held that when a "claim is a state law action . . . and not necessarily resolvable by a ruling on the creditor's proof of claim in bankruptcy," it implicates private rights and thus is not amenable to final resolution in bankruptcy court. . . . [Thus,] cases properly in federal court but arising under state law and not necessarily resolvable in the claims allowance process trigger Article III's protections.[51]

First, as noted above, the Pahvant Parties as plaintiffs to the Forfeiture Action do not hold a monetary or equitable "claim" against the bankruptcy estate. Second, the Sale Motion does not implicate the claims' allowance process under § 502. Third, the Forfeiture Action arises under

---

[50] The common-law claim of abandonment of a water right is different than the forfeiture of a water right that is a creation of statute and involves "the involuntary or forced loss of the right, caused by the failure of the appropriator or owner to do or perform some act required by the statute*." Delta Canal Co. v. Frank Vincent Fam. Ranch, LC*, 420 P.3d 1052, 1062 (Utah 2013) (citation omitted).

[51] *Loveridge v. Hall (In re Renewable Energy Dev. Corp.*), 792 F.3d 1274, 1281 (10th Cir. 2015) (quoting *Stern v. Marshall*, 131 S. Ct. 2594, 2611 (2011)).

state law, and it is not before this Court. Thus, under the direction of the Tenth Circuit, the bankruptcy court lacks jurisdiction to enter an order that results in the termination of the state court Forfeiture Action.

In addition, the Water Right remains subject to the state court's Preliminary Injunction. Under the *Rooker–Feldman* Doctrine, a bankruptcy court order cannot have the effect of reversing or terminating Judge Howell's Preliminary Injunction order.[52] That must be done through a state court appeal.[53] Likewise, under concepts of comity and giving full faith and credit[54] to state court orders, coupled with a recognition that Utah water law is best interpreted by a Utah state court, this Court should not intrude on the primary jurisdiction of the Utah state court:

> Allowing lower federal courts to review the judgments of state lower courts is as intrusive and as likely to breed antagonism between state and federal systems as allowing federal court review of the judgments of the states' highest courts. Indeed, if *Rooker-Feldman* only barred federal review of judgments which had been fully appealed through the state system, it would foster federal/state rivalry by creating incentives for disappointed state court appellants to forum-shop, jumping over to federal courts instead of appealing their cases to the states' highest tribunals.[55]

Based on these considerations, the Court likewise finds it improper to enter an order that effectively extinguishes the state court Preliminary Injunction and the Forfeiture Action.

Further, while the Court questions whether the Forfeiture Action is an interest in property under § 363(f), Idaho Farms asserts that the free and clear sale effectively extinguished the Forfeiture Action. As a matter of jurisdictional caution, it seems this result is the equivalent of a

---

[52] *See Kenmen Eng'g v. City of Union*, 314 F.3d 468, 474 (10th Cir. 2002) (holding that the *Rooker-Feldman* Doctrine "does not distinguish between 'temporary' and 'final' orders.").

[53] *Water & Energy Sys. Tech., Inc. v. Keil*, 48 P.3d 888 (Utah 2002) (establishing that a preliminary injunction is subject to an interlocutory appeal).

[54] *See* 28 U.S.C. § 1738, State and Territorial Statutes and Judicial Proceedings; Full Faith and Credit.

[55] *Kenmen*, 314 F.3d at 474 (quoting *Texaco, Inc. v. Pennzoil Co.*, 784 F.2d 1133, 1142-43 (2d Cir. 1986), *rev'd on other grounds*, 481 U.S. 1 (1987)).

proceeding under Bankruptcy Rule 7001(2) "to determine the validity, priority, or extent of a lien or other interest in property . . .", which would require the filing of an adversary proceeding. Such relief cannot be accomplished through a motion to sell.

Lastly, Idaho Farms raised several arguments at the hearing regarding the Water Right's creation and lineage, the Pahvant Parties' prior sale of an interest in the Water Right to the Debtor, and the state court's prior holdings involving the Water Right. While these arguments may be relevant to the merits and defenses in the Forfeiture Action, the Court finds they are not relevant to the Sale Motion's adequacy of notice, the establishment of cause under § 363(f)(2) and (4), or this Court's authority to sell the Water Right free and clear of the Forfeiture Action.

## III.   CONCLUSION

For the reasons set forth above, the Court makes the following findings. The Sale Motion lacked sufficient notice and cause under § 363(f) to sell the Water Right free and clear of the Forfeiture Action or the Preliminary Injunction. The absence of an objection from the Pahvant Parties does not constitute their consent to the sale. The Forfeiture Action is not the type of interest in property that is subject to the free and clear power of § 363(f). Based on the limitations of bankruptcy court jurisdiction, the *Rooker-Feldman* Doctrine, the full faith and credit requirements of 28 U.S.C. § 1738, and concepts of comity with state courts, the Court cannot enter an order that would effectively extinguish the Forfeiture Action and the Preliminary Injunction. Finally, Idaho Farms purchased the Water Right as is, where is, if is, and with all faults, and with no representations or warranties as to the quality or right to use any water right, point of diversion, flow rate, and any other aspect or characteristic of the Water Right. Therefore, the Court rules that Idaho Farms took title to the Water Right subject to the Forfeiture Action and the Preliminary Injunction.

———oooOooo———

## DESIGNATION OF PARTIES TO RECEIVE NOTICE

Service of the foregoing **MEMORANDUM DECISION ON FARMS, LLC'S MOTION TO AMEND SALE ORDER (DOCKET NO. 415)** shall be served to the parties and in the manner designated below.

**By Electronic Service:** I certify that the parties of record in this case as identified below, are registered CM/ECF users:

- Troy J. Aramburu taramburu@swlaw.com,
  jritchie@swlaw.com,docket_slc@swlaw.com,awayne@swlaw.com
- David P. Billings dbillings@fabianvancott.com, mbeck@fabianvancott.com
- Darwin H. Bingham dbingham@scalleyreading.net, cat@scalleyreading.net
- Michael Ronald Brown mbrown@parsonsbehle.com
- Ryan C. Cadwallader rcadwallader@kmclaw.com, twhite@kmclaw.com
- P. Matthew Cox mw@scmlaw.com, ec@scmlaw.com
- Matthew A. Gold courts@argopartners.net
- Michael R. Johnson mjohnson@rqn.com, docket@rqn.com;ASanchez@rqn.com
- Blake D. Miller bmiller@aklawfirm.com,
  millermobile@gmail.com;miller.blaked@gmail.com
- David L. Miller tr davidlmillerpc@msn.com, ut09@ecfcbis.com;dlm@trustesolutions.net
- David W. Newman tr David.W.Newman@usdoj.gov,
  Lindsey.Huston@usdoj.gov;James.Gee@usdoj.gov;Rinehart.Peshell@usdoj.gov;Rachell
  e.D.Armstrong@usdoj.gov;Brittany.Eichorn@usdoj.gov
- Sherilyn A. Olsen solsen@hollandhart.com,
  intaketeam@hollandhart.com;cfries@hollandhart.com
- Grace S. Pusavat gpusavat@parsonsbehle.com
- Mark C. Rose mrose@mbt-law.com, markcroselegal@gmail.com
- Brian M. Rothschild brothschild@parsonsbehle.com,
  ecf@parsonsbehle.com;docket@parsonsbehle.com
- Stephen W. Rupp tr rupptrustee@mbt-law.com, UT03@ecfcbis.com
- James A Sorenson jsorenson@rqn.com, docket@rqn.com;asanchez@rqn.com
- Grant M. Sumsion grant@sumsionsteele.com,
  jason@sumsionsteele.com;chantel@sumsionsteele.com;dan@sumsionsteele.com
- Gerald H. Suniville gsuniville@fabianvancott.com, nnelson@fabianvancott.com
- United States Trustee USTPRegion19.SK.ECF@usdoj.gov
- Melinda Willden tr melinda.willden@usdoj.gov,
  Lindsey.Huston@usdoj.gov;James.Gee@usdoj.gov;Rinehart.Peshell@usdoj.gov;Rachell
  e.D.Armstrong@usdoj.gov;Brittany.Eichorn@usdoj.gov

**By U.S. Mail:** In addition to the parties of record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

None.